**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY** | ) | |
| **COMMISSION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 2:23-cv-02599-JPM-tmp** |
| **v.** | ) | |
| | ) | |
| **AARON THOMAS COMPANY, INC.,** | ) | |
| **and SUPREME STAFFING LLC** | ) | **JURY DEMAND** |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT SUPREME STAFFING'S**
**BRIEF IN SUPPORT OF MOTION TO DISMISS**

**ZACHARY B. BUSEY**
Tennessee Bar No. 29763
zbusey@bakerdonelson.com

**MARY KATHERINE SMITH**
Tennessee Bar No. 35328
mkcampion@bakerdonelson.com

**WHITNEY M. DOWDY**
Tennessee Bar No. 24985
wdowdy@bakerdonelson.com

**DEAN J. SHAUGER**
Tennessee Bar No. 39746
dshauger@bakerdonelson.com

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
(901) 526-2000 – telephone

*Attorneys for Defendant Supreme Staffing LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

I.    MR. ALVAREZ'S CHARGE & THE EEOC'S (NOW) THREE LAWSUITS ................................. 1

      A.    Mr. Alvarez, a Hispanic Male, filed a charge of discrimination against Supreme
            Staffing for National Origin discrimination and retaliation .................................. 1

      B.    No charge of Race discrimination was ever filed against Supreme Staffing .......... 2

      C.    The EEOC never notified Supreme Staffing about an investigation into individuals
            charging Race discrimination .................................................................................. 2

      D.    The EEOC sued Supreme Staffing for Race discrimination in 2022 ...................... 3

      E.    The EEOC sued Supreme Staffing for a second time in 2023 ................................ 4

      F.    In this lawsuit, the third lawsuit, the EEOC sues Supreme Staffing for the same
            Race discrimination alleged in the first lawsuit ..................................................... 5

II.   LEGAL STANDARDS ....................................................................................................... 6

III.  ARGUMENTS & AUTHORITIES ........................................................................................ 7

      A.    Although alleged against Supreme Staffing, Count III should be dismissed because
            it contains no factual allegation involving Supreme Staffing ................................ 7

      B.    All Counts—and this lawsuit—should be dismissed with prejudice for claim
            splitting ................................................................................................................... 7

            1.    The issues in this lawsuit are being litigated in the first lawsuit, and could
                  have been litigated in the first or second lawsuit ......................................... 9

            2.    There is identity of the causes of action between this lawsuit and the earlier
                  lawsuits ...................................................................................................... 11

      C.    All Counts—and this lawsuit—should be dismissed with prejudice based on Title
            VII's statute of limitations .................................................................................... 13

            1.    The filing of this lawsuit sets the limitations period ................................. 14

            2.    No Count is based on an allegedly discriminatory act within the limitations
                  period .......................................................................................................... 17

            3.    Nothing about the nature of this action alters the statute of limitations nor
                  whether it applies ....................................................................................... 18

IV.   CONCLUSION ............................................................................................................... 18

<u>**TABLE OF AUTHORITIES**</u>

<u>**Cases**</u>

*Adam v. Jacobs,*
    950 F.2d 89 (2d Cir. 1991)..................................................................................... 12

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................................... 9, 10, 11

*Begala v. PNC Bank, Ohio, Nat. Ass'n,*
    214 F.3d 776 (6th Cir. 2000) ................................................................................ 10

*Bittinger v. Tecumseh Prod. Co.,*
    123 F.3d 877 (6th Cir. 1997) .......................................................................... 12, 15

*Buck v. Thomas M. Cooley Law School,*
    597 F.3d 812 (6th Cir. 2010) ................................................................................ 10

*Buff City Soap LLC v. Bynum,*
    2022 WL 1285045 (W.D. Tenn. Apr. 29, 2022)............................................... 15, 16

*Colorado River Water Conservation Dist. v. United States,*
    424 U.S. 800 (1976)............................................................................................... 11

*Creelgroup, Inc. v. NGS Am., Inc.,*
    518 F. App'x 343 (6th Cir. 2013).......................................................................... 19

*DirecTV, Inc. v. Treesh,*
    487 F.3d 471 (6th Cir. 2007) ................................................................................ 10

*E.E.O.C. v. A'GACI, LLC,*
    84 F. Supp. 3d 542 (W.D. Tex. 2015).................................................................... 18

*E.E.O.C. v. Burlington Med. Supplies, Inc.,*
    536 F. Supp. 2d 647 (E.D. Va. 2008) .................................................................... 22

*E.E.O.C. v. Freeman,*
    2010 WL 1728847 (D. Md. Apr. 27, 2010) ........................................................... 22

*E.E.O.C. v. Shell Oil Co.,*
    466 U.S. 54 (1984)........................................................................................... 19, 20

*E.E.O.C. v. USF Holland, LLC,*
    2021 WL 4497490 (N.D. Miss. Sept. 30, 2021) .................................................... 22

*EEOC v. Freeman,*
    2011 WL 337339 (D. Md. Jan. 31, 2011) ............................................................. 20

*EEOC v. Princeton Healthcare System*,
  2012 WL 5185030 (D. N.J. Oct. 18, 2012) .......................................................................... 20

*Ellis v. Gallatin Steel Co.*,
  390 F.3d 461 (6th Cir. 2004) ............................................................................................. 11

*Heike v. Cent. Michigan Univ. Bd. of Trustees*,
  573 F. App'x 476 (6th Cir. 2014) .......................................................................... 13, 15, 16

*Heyliger v. State Univ. & Cmty. Coll. Sys. of Tennessee*,
  126 F.3d 849 (6th Cir. 1997) ............................................................................................. 15

*Katz v. Gerardi*,
  655 F.3d 1212 (10th Cir. 2011) ......................................................................................... 12

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
  342 U.S. 180 (1952) ........................................................................................................... 12

*Norfolk S. Corp.*,
  2018 WL 4334615 (W.D. Penn. Sept. 11, 2018) ................................................................ 20

*Palka v. City of Chicago*,
  662 F.3d 428 (7th Cir. 2011) ............................................................................................. 15

*Trustees of Operating Engineers Local 234 Pension Fund v. Bourdow Contracting*,
  919 F.3d 368 (6th Cir. 2019) ............................................................................................. 16

*Turner v. DeJoy*,
  2022 WL 1817752 (W.D. Tenn. Mar. 15, 2022) ................................................................ 16

*Waad v. Farmers Ins. Exch.*,
  762 F. App'x 256 (6th Cir. 2019) ................................................................................. 11, 12

*Weiner v. Klais and Co., Inc.*,
  108 F.3d 86 (6th Cir. 1997) ............................................................................................... 10

*White v. Mid-South Transportation Management, Inc.*,
  2010 WL 2985709 (W.D. Tenn. July 26, 2010) ................................................................. 14

*Wilkins v. Jakeway*,
  183 F.3d 528 (6th Cir. 1999) ............................................................................................. 13

*Winget v. JP Morgan Chase Bank*,
  537 F.3d 565 (6th Cir. 2008) ............................................................................................. 15

******************

**Statutes**

42 U.S.C. § 2000e-5(e)(1)................................................................................................. 18

**Rules**

Fed. R. Civ. P. 8(a)(2)..................................................................................................... 10

Fed. R. Civ. P. 12(b)(6).............................................................................................Motion

**Other Authorities**

Restatement of Judgments (Second) § 24 (1982) ....................................................... 11

*******************

4885-5987-7521

## I.   MR. ALVAREZ'S CHARGE & THE EEOC'S (NOW) THREE LAWSUITS

### A.   Mr. Alvarez, a Hispanic Male, filed a charge of discrimination against Supreme Staffing for National Origin discrimination and retaliation.

Francisco Alvarez previously worked for Supreme Staffing, "a staffing company."

(Amended Complaint, Doc. 16, ¶ 4.) On April 11 2019, Mr. Alvarez filed a charge and named

Supreme Staffing:

| Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.) | | |
|---|---|---|
| Name<br>**SUPREME STAFFING** | No. Employees, Members<br>**15 - 100** | Phone No. (Include Area Code)<br>**(901) 425-5546** |

(*See* Charge, Exhibit 1, p.1.) In his Charge, Mr. Alvarez, a Hispanic Male, alleged discrimination

based on his National Origin and retaliation:

DISCRIMINATION BASED ON (Check appropriate box(es).)

RACE ☐   COLOR ☐   SEX ☐   RELIGION ☐   NATIONAL ORIGIN ☒

RETALIATION ☒   AGE ☐   DISABILITY ☐   GENETIC INFORMATION ☐

OTHER (Specify) ☐

(*See id*.) He alleged this discrimination and retaliation to have taken place between July 1, 2018,

and March 22, 2019:

DATE(S) DISCRIMINATION TOOK PLACE

Earliest **07-01-2018**   Latest **03-22-2019**

☐ CONTINUING ACTION

(*See id*.) Mr. Alvarez did not allege his (or any) discrimination to be occurring on a continuing

basis; he did not check that box. As for the details of his discrimination and retaliation, Mr.

Alvarez wrote the following:

> I was hired in February 2018, as an Account Supervisor. In January 2019, I was removed from the On-Site Supervisor position at the Barrett Distributions Center because I complained of race discrimination. On March 22, 2019, I was discharged. I am aware that Black job applicants were turned away from seeking employment and the open jobs were given to Hispanics. I believe I was discriminated against because of my National Origin (Hispanic) and retaliated against for my complaints, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(*See id.*) For context, Barrett Distributions Center is one of Supreme Staffing's clients. The Charge did not say to whom Mr. Alvarez made any alleged complaint nor the details of it, like where "job applicants" were applying or for what positions. Mr. Alvarez, in fact, would never provide these details. He never amended nor supplemented the Charge, and the Amended Complaint does not allege otherwise.

There is much more to say about Mr. Alvarez's Charge and, for example, why Mr. Alvarez was terminated from Supreme Staffing. But this lawsuit makes no claim on his behalf, and it seeks no relief on his behalf. Mr. Alvarez is not even mentioned in the Amended Complaint's catch-all "prayer for relief." (*See* Amended Complaint, pp. 15-17.) This lawsuit is not about Mr. Alvarez or his Charge. It is about an entirely separate group of individuals; largely unidentified individuals alleging Race discrimination. Those individuals never filed a charge of discrimination. No one has ever charged Supreme Staffing with Race discrimination, and the Amended Complaint does not allege otherwise.

**B.    No charge of Race discrimination was ever filed against Supreme Staffing.**

No charge of Race discrimination has been filed against Supreme Staffing, and the Amended Complaint does not allege otherwise. The only charge filed against Supreme Staffing is the Charge filed by Mr. Alvarez. It did not charge Supreme Staffing with Race discrimination. No individual identified in the Amended Complaint (*see, e.g.*, Amended Complaint, pp. 6-15) has ever charged Supreme Staffing with Race discrimination. None of them ever filed a charge of discrimination at all. The Amended Complaint does not allege otherwise.

**C.    The EEOC never notified Supreme Staffing about an investigation into individuals charging Race discrimination.**

The EEOC never notified Supreme Staffing of an investigation into any individual charging Race discrimination. The Amended Complaint does not say when any such

4885-5987-7521

investigation began. But, at some point, the EEOC began investigating a charge (or charges) of Race discrimination and the Race-based allegations of the individuals identified in the Amended Complaint. None of these individuals ever filed a charge of discrimination against Supreme Staffing, and no charge of discrimination was ever filed on their behalf. The Amended Complaint does not allege otherwise. The EEOC likewise never notified Supreme Staffing about these individuals, nor that an investigation was underway with regard to their (alleged) Race-based claims. The Amended Complaint does not allege otherwise.

### D.     The EEOC sued Supreme Staffing for Race discrimination in 2022.

On September 29, 2022, the EEOC sued Supreme Staffing and two of its affiliate companies, Better Placements Personnel LLC and Inspire Hotel Staffing. The lawsuit is pending here in the Western District, Civil Action Number 2-22-cv-2668-SHL-tmp. The operative complaint from the lawsuit, the "2668 Lawsuit," is attached as Exhibit 2.

Like this lawsuit, the 2668 Lawsuit arises out of Mr. Alvarez's Charge, according to the EEOC. (2668 Operative Complaint, Exhibit 2, ¶ 11; Amended Complaint, Doc. 16, ¶ 9.) Like this lawsuit, the 2668 Lawsuit makes no claim on Mr. Alvarez's behalf and seeks no relief on his behalf, not in whole or in part. Instead, like this lawsuit, the 2668 Lawsuit alleges Title VII Race discrimination (Black/African American). (2668 Operative Complaint, p.1 ("unlawful employment practices based on race"); Amended Complaint, p.1 ("unlawful employment practices based on race").) Like this lawsuit, 2668 Lawsuit seeks relief on behalf of an alleged class of current and former Black applicants and employees. (*See, e.g.*, 2668 Operative Complaint, ¶ 60 ("Aggrieved Individuals, consisting of Black applicants and employees"); Amended Complaint, ¶ 47 ("aggrieved individuals, consisting of African American applicants and employees").) Finally, like this lawsuit, Tyrus Braddox is one of the named individuals on

whose behalf the EEOC seeks relief. (2668 Operative Complaint, ¶¶ 51-53; Amended

Complaint, Doc. 16, ¶¶ 36-38.)

The 2668 Lawsuit has been pending since September 2022. The defendants, including

Supreme Staffing, moved to dismiss it—first in 2022 (*see* 2-22-cv-2668, Doc. 15) and again in

2023 in response to the EEOC filing an amended complaint (*id*., Doc. 45). The court denied the

defendants' motion in August 2023. (*Id*., Doc. 52.) The defendants then moved the court to

reconsider or, in the alternative, certify questions for interlocutory appeal. (*Id*. Doc. 66.) That

motion remains pending. Also pending in the 2668 Lawsuit are substantive disputes regarding

discovery (*id*., Docs. 32-35) and even whether the proceeding should be bifurcated in whole or in

part (*id*., Docs. 56, 60, 61, 65).

> **E.    The EEOC sued Supreme Staffing for a second time in 2023.**

On August 15, 2023, the EEOC again sued Supreme Staffing. The lawsuit is pending

here in the Western District, Civil Action Number 2:23-cv-02507-SHL-tmp. The operative

complaint from the lawsuit, the "2507 Lawsuit," is attached as Exhibit 3. Like this lawsuit, the

2507 Lawsuit arises out of Mr. Alvarez's Charge, according to the EEOC. (2507 Operative

Complaint, Exhibit 3, ¶ 8; Amended Complaint, Doc. 16, ¶ 9.) Unlike this lawsuit, the 2507

Lawsuit brings retaliation claims on Mr. Alvarez's behalf (but not any claim of National Origin

discrimination). The 2507 Lawsuit does not make claims on behalf of current and former Black

applicants and employees. The EEOC decided to split Mr. Alvarez's claims into a separate

lawsuit. It has provided no reason or justification for this decision.

> **F.    In this lawsuit, the third lawsuit, the EEOC sues Supreme Staffing for the
> same Race discrimination alleged in the first lawsuit.**

On September 21, 2023, one year after filing the 2668 Lawsuit, the EEOC filed this

lawsuit. Like the two earlier lawsuits, this lawsuit arises out of Mr. Alvarez's Charge, according

to the EEOC. (Amended Complaint, Doc. 16, ¶ 9.) Like the 2668 Lawsuit, this lawsuit makes no

claim on Mr. Alvarez's behalf and seeks no relief on his behalf, not in whole or in part. Instead,

like the 2668 Lawsuit, this lawsuit alleges Title VII Race discrimination (Black/African

American). (Amended Complaint, Doc. 16, p.1 ("unlawful employment practices based on

race").) Like the 2668 Lawsuit, this lawsuit seeks relief on behalf of an alleged class of current

and former Black applicants and employees. (*See, e.g.*, Amended Complaint, ¶ 47 ("aggrieved

individuals, consisting of African American applicants and employees").) Also, like the 2668

Lawsuit, Tyrus Braddox is one of the named individuals on behalf of the EEOC seeks relief. (*See*

Amended Complaint, Doc. 16, ¶¶ 36-38.)

On the whole, the allegations in this lawsuit and the 2668 Lawsuit are substantively the

same.[1] This lawsuit then pleads three counts of Race discrimination. Count I (failure to hire) and

Count II (failure to place) are identical to Counts I and II in the 2668 Lawsuit.[2,3] Count III

(termination) is not pleaded in the 2668 Lawsuit.[4] It likewise is not pleaded against Supreme

Staffing in this lawsuit. Count III, although *alleged* against Supreme Staffing, contains no factual

allegation pleaded as to Supreme Staffing. (*See* Amended Complaint, pp. 12-15.) Count III

---

[1] *Compare* 2668 Operative Complaint, ¶ 59 ("The unlawful employment practices described
above disproportionately exclude Black employees from employment and constitute a pattern or
practice of discrimination against Black employees based on race.") *with* Amended Complaint, ¶
46 ("The unlawful employment practices described above disproportionately exclude African
American employees from employment and constitute a pattern or practice of discrimination
against African American employees based on race.); *compare also* ¶ 41 *with* AC, ¶ 30; ¶ 20
*with* AC, ¶ 21; ¶ 39 *with* AC, ¶ 29; ¶ 40 *with* AC, ¶ 60.

[2] *Compare* 2668 Operative Complaint, Count I, ¶ 20 ("failing to select, refer, and/or place Black
applicants") *with* Amended Complaint, Count I, ¶ 21 ("failing to hire, select, refer, or place
African American applicants").

[3] *Compare* 2668 Operative Complaint, Count II, ¶ 64 ("assigning Black employees into less
desirable and lower-paying positions") *with* Amended Complaint, Count II, ¶ 51 ("segregating
African American employees by placing them into less desirable and lower-paying positions").

[4] The 2668 lawsuit, however, contains similar "adverse action" allegations. (*See* 2668 Operative
Complaint, ¶ 71 ("adversely affect their status as employees because of their race").)

4885-5987-7521

should therefore be dismissed as to Supreme Staffing. All Counts, moreover, should be

dismissed for claim splitting. All Counts should likewise be dismissed as time barred. As to

Supreme Staffing, all Counts—and this lawsuit—should be dismissed with prejudice.

## II.   LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion, the complaint

must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face." *Id*. Courts may apply this standard liberally, but "more than bare assertions of legal

conclusions is ordinarily required to satisfy federal notice pleading requirements." *Begala v.

PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776, 779 (6th Cir. 2000). A plaintiff, therefore, must

allege material facts to support recovery under some viable legal theory. *Id*.

When applying this standard, courts must "construe the complaint in the light most

favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in

favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). "Although

typically courts are limited to the pleadings when faced with a motion under Rule 12(b)(6), a

court may take judicial notice of other court proceedings without converting the motion into one

for summary judgment." *Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 816 (6th Cir.

2010). Courts may also take note of documents that a defendant attaches to a motion to dismiss

as part of the pleadings if they are referred to in the plaintiff's complaint and are central to its

claim. *See Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (adopting position that

district courts can rely on documents offered by a defendant if they are "pertinent" to a plaintiff's

complaint; "[o]therwise, a plaintiff with a legally deficient claim could survive a motion to

dismiss simply by failing to attach a dispositive document upon which it relied.").

Ultimately, "where the well-plead facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Ashcroft*, 556 U.S. at 679. (quoting Fed. R. Civ. P. 8(a)(2)). In such cases, like in this case, a court should grant the Rule 12(b)(6) motion.

## III. ARGUMENTS & AUTHORITIES

### A. Although alleged against Supreme Staffing, Count III should be dismissed because it contains no factual allegation involving Supreme Staffing.

As pleaded, all of the allegations in Count III are based on actions or inactions by Defendant Aaron Thomas. (*See* Amended Complaint, pp. 12-15.) Count III contains no factual allegations against Supreme Staffing. *But see Iqbal*, 556 U.S. at 678 (affirming that a plaintiff "must plead [] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged") (quoting *Twombly*, 550 U.S. at 556)). As to Supreme Staffing, Court III should be dismissed with prejudice.

### B. All Counts—and this lawsuit—should be dismissed with prejudice for claim splitting.

Courts have long disfavored duplicative and overlapping litigation. *See, e.g.*, *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (invoking the "general principle [] to avoid duplicative litigation."). It is this principle that underlies the prohibition against claim splitting. "Claim-splitting and duplicative litigation are variations of res judicata. Res judicata—here, to be specific, claim preclusion—bars subsequent litigation of causes of action where a court has already issued a final decision on the merits in an earlier case and the causes of action were, or should have been, litigated in the earlier case between the same parties." *Waad v. Farmers Ins. Exch.*, 762 F. App'x 256, 260 (6th Cir. 2019) (citation omitted). "In a similar vein, the doctrine of duplicative litigation allows a district court to stay or dismiss a suit that is duplicative of another federal court suit using its general power to administer its

docket." *Id.* (citations and quotations omitted). Indeed, the Sixth Circuit has acknowledged that "a plaintiff must join all claims arising from the same set of facts in a single proceeding and cannot split them across multiple fora." *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 479 (6th Cir. 2004) (citing Restatement of Judgments (Second) § 24 (1982)).

The power to dismiss a duplicative lawsuit is meant to foster judicial economy and the "comprehensive disposition of litigation." *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952). The doctrine is also meant to protect parties from "the vexation of concurrent litigation over the same subject matter." *Adam v. Jacobs*, 950 F.2d 89, 93 (2d Cir. 1991). The difference between claim splitting and duplicative litigation is in name only; the two doctrines are functionally the same. *See Waad*, 762 F. App'x at 260.

"[T]he test for claim splitting is not whether there is finality of judgment, but whether the first suit, assuming it were final, would preclude the second suit." *Waad*, 762 F. App'x at 260 (citing *Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011)). "Essentially, claim splitting is the same as res judicata, but with a presumption of a final judgment instead of an actual final judgment." *Id.* (citing *Katz*, 655 F.3d at 1218). Accordingly, to evaluate whether claim splitting has occurred, a court looks to and applies the same test as if it were evaluating the applicability of res judicata.

The Sixth Circuit utilizes a four-element test for the application of res judicata: "[A] claim will be barred by prior litigation if the following elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action. *Bittinger v. Tecumseh Prod. Co.*, 123 F.3d 877, 880 (6th Cir. 1997).

Because a final decision in the second action is assumed for the purposes of a claim splitting analysis, only the later three elements are at issue. *See Waad*, 762 F. App'x at 260. Moreover, here, the second element cannot be disputed: this is a subsequent action between the same parties, the EEOC and Supreme Staffing. This leaves only the third and fourth elements. Both are present in this proceeding. Having met all four elements, all Counts—and this lawsuit—should be dismissed with prejudice.

> 1.    **The issues in this lawsuit are being litigated in the first lawsuit, and *could* have been litigated in the first or second lawsuit.**

The allegations in this lawsuit and the first lawsuit, the 2668 Lawsuit, are substantively the same.[5] This lawsuit then pleads three counts of Race discrimination. Count I (failure to hire) and Count II (failure to place) are identical to Counts I and II in the 2668 Lawsuit.[6,7] Counts I and II are being "actually litigated" in 2668 Lawsuit. Count III (termination) it not pleaded in the 2668 Lawsuit. It likewise is not pleaded against Supreme Staffing in this lawsuit, as explained above. Count III, however, presumably could have been pleaded in the 2668 Lawsuit, the first lawsuit, or the second lawsuit, the 2507 Lawsuit. Both of which accuse Supreme Staffing of Title VII violations.

The "actually litigated" element of the res judicata analysis "not only prohibits parties from bringing claims they already have brought, but also from bringing those claims they *should* have brought." *See Heike v. Cent. Michigan Univ. Bd. of Trustees*, 573 F. App'x 476, 482 (6th Cir. 2014) (emphasis in original); *see also Wilkins v. Jakeway*, 183 F.3d 528, 535 (6th Cir. 1999) ("[B]y bringing two different suits which present two different theories of the case arising from

---

[5] *Compare* 2668 Operative Complaint, ¶ 59 *with* Amended Complaint, ¶ 46; *see also above*, n.1.

[6] *Compare* 2668 Operative Complaint, Count I, ¶ 20 *with* Amended Complaint, Count I, ¶ 21.

[7] *Compare* 2668 Operative Complaint, Count II, ¶ 64 *with* Amended Complaint, Count II, ¶ 51.

the same factual situation, counsel has engaged in the precise behavior the doctrine res judicata seeks to discourage."). Here, Count III is just another claim for Title VII Race discrimination. This is the same discrimination alleged in the first lawsuit, the 2668 Lawsuit. The EEOC, moreover, included other "termination" claims—Count III is a "termination" claim—in the second lawsuit, the 2507 Lawsuit.[8] All of the lawsuits also arise out of the same charge, Mr. Alvarez's Charge, and the EEOC has provided no reason or justification for splitting its claims over (now) three separate actions. Count III, to the extent pleaded as to Supreme Staffing at all, comes within the "actually litigated" element of the res judicata analysis. *White*, a 2010 ruling from the Western District, supports this conclusion and is a compelling example of when a claim "could have been litigated" in a prior case.

In *White*, the plaintiff's original suit against defendant included "Title VII claims of race discrimination and retaliation and Tennessee state law claims of retaliatory discharge and wrongful termination." *White v. Mid-South Transportation Management, Inc.*, 2010 WL 2985709, at *4 (W.D. Tenn. July 26, 2010). In his second case, the plaintiff included the same claims and added common law claims for "intentional infliction of emotional distress, outrageous conduct, and hostile work environment." *Id.* The court found the Title VII claims in the first and second suit to be "identical" and thus had been "actually litigated." *Id.* As to the new claims, the court admitted that, while "[plaintiff's] new claims are distinct theories of recovery, [plaintiff] fails to explain why his new causes of action should not have been litigated in his prior suit against [defendant]." *Id.* The court based this holding on the fact that "[a]ll of [plaintiff's] claims, old as well as new, relate to his employment as a mechanic with [defendant]," and therefore "all of the facts upon which his claims rest were known to [plaintiff] when he filed his

---

[8] *See* 2507 Operative Complaint, Exhibit 3, ¶¶ 63-64.

first suit against [defendant]." *Id.* Here, as in *White*, the EEOC knew all of the facts upon which

it rests its (now) three lawsuits at the time it filed the first lawsuit, one year ago. There, in turn, is

little doubt that Count III could have been brought in the first lawsuit or the second lawsuit.

Count III, to the extent pleaded as to Supreme Staffing at all, comes within the "actually

litigated" element of the res judicata analysis. *See also Heyliger v. State Univ. & Cmty. Coll. Sys.*

*of Tennessee*, 126 F.3d 849, 854 (6th Cir. 1997) (finding that a plaintiff's THRA claim and Title

VII claims "certainly arose out of the same transaction" and thus "could have been litigated"

together in the first action); *Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011)

(characterizing a plaintiff's subsequent Title VII case as "a quintessential example of claim

splitting" when it was based on the same facts (i.e., his termination) as his original § 1983 case).

      Overall, as to all Counts, the issues in this lawsuit are being litigated in the first lawsuit,

and *could* have been litigated in the first or second lawsuit. The third element—an issue in the

subsequent action which was litigated or which should have been litigated in the prior action—

has been met.

      **2.**      **There is identity of the causes of action between this lawsuit and the earlier lawsuits.**

      The fourth and final element is whether the current and former litigation share "an

identity of the causes of action." *Bittinger*, 123 F.3d at 880. An identity of the causes of action

exists "if the claims arose out of the same transaction or series of transactions, or if the claims

arose out of the same core of operative facts." *Winget v. JP Morgan Chase Bank*, 537 F.3d 565,

580 (6th Cir. 2008); *see also Heike*, 573 F. App'x at 483 ("Causes of action share an identity

where the facts and events creating the right of action and the evidence necessary to sustain each

claim are the same."); *Buff City Soap LLC v. Bynum*, 2022 WL 1285045, at *10 (W.D. Tenn.

Apr. 29, 2022) (McCalla, J.) (analyzing whether "the core facts giving rise" to the plaintiff's

claims in the first lawsuit are the same as those in subsequent lawsuit).

Here, there is identity of the causes of action between this lawsuit and the earlier

lawsuits. To start, as pleaded, all three lawsuits arise out of Mr. Alvarez's Charge. Moreover, the

first lawsuit, the 2668 Lawsuit, is premised on Supreme Staffing's (alleged) Race discrimination

against Black applicants and employees. That is the same as this (the third) lawsuit. The EEOC's

claims against Supreme Staffing arise out of the same operative facts. *See Buff City Soap LLC*,

2022 WL 1285045 at *10 (dismissing a claim for improper claim splitting in part because

"[n]early all the operative facts that Plaintiffs have pled in this case with respect to its [] claims

are also pled in their [previous] complaint.").

By way of example, this case is factually similar to *Turner v. DeJoy*, 2022 WL 1817752

(W.D. Tenn. Mar. 15, 2022). In *Turner*, the plaintiff filed a 2022 lawsuit "alleging that he was

subjected to employment discrimination by Defendant in violation of the Americans with

Disabilities Act of 1990." *Id.* at *1. The plaintiff previously filed a 2020 lawsuit in the Western

District, raising "the same general claims and allegations" that he raised in the 2022 lawsuit. *Id.*

at *2. Like here, both lawsuits referenced the same EEOC charge. *Id.* The *Turner* court ruled that

the plaintiff's claims and allegations in the 2022 case were "substantively identical" to those he

pursued in the 2020 case. *Id.* at *5. The *Turner* Court also noted that, "Though [the plaintiff] has

more clearly articulated his factual allegations in this case, all his claims and allegations in this

case were litigated or could have been litigated in his previous case." *Id.* The same is true here.

Whatever "greater detail" the EEOC may argue in response, all of its claims and allegations

against Supreme Staffing are being litigated (or could have been litigated) in the two previous

cases.

Identity of the causes of action between this lawsuit and the earlier lawsuits is also shown

by the (supposed) evidence on which the EEOC relies. "An identity of causes of action exists if

there is an identity of the facts creating the right of action and of the evidence necessary to

sustain each action." *Trustees of Operating Engineers Local 234 Pension Fund v. Bourdow*

*Contracting*, 919 F.3d 368, 383-84 (6th Cir. 2019); *see also Heike*, 573 Fed. App'x at 483

("Causes of action share an identity where . . . the evidence necessary to sustain each claim are

the same). Recall from above that in both this lawsuit and the first lawsuit, Tyrus Braddox is one

of the named individuals on behalf of the EEOC seeks relief. (2668 Operative Complaint, ¶¶ 51-

53; Amended Complaint, ¶¶ 36-38.) The proof related to him (and others across both lawsuits)

would be the same. The EEOC likewise cites the same "hiring data" in both this lawsuit and the

first lawsuit. (2668 Operative Complaint, ¶¶ 39, 41; Amended Complaint, ¶¶ 29, 30.) And both

lawsuits seek "to correct unlawful employment practices on the basis of race and to provide

appropriate relief to an aggrieved individuals who were adversely affected by such practices"

(2668 Operative Complaint, p.1; Amended Complaint, p.1)—which would again require the

same proof. The overlap in (claimed) evidence further demonstrates identity of the causes of

action between this lawsuit and the earlier lawsuits.

The fourth and final element has been met. Having met all four elements, all Counts—

and this lawsuit—should be dismissed with prejudice for claim splitting.

### C.     All Counts—and this lawsuit—should be dismissed with prejudice based on Title VII's statute of limitations.

Supreme Staffing previously made the dismissal arguments that follow in the 2668

Lawsuit. (*See* 2-22-cv-2668, Docs. 15, 45.) The 2668 court denied the motion to dismiss. (*Id*.,

Doc. 52.) The defendants, including Supreme Staffing, then moved the court to reconsider or, in

the alternative, certify questions for interlocutory appeal. (*Id*., Doc. 66.) That motion remains

pending. What the EEOC has attempted in the 2668 lawsuit—and again now in this lawsuit—is

an unprecedented expansion of Title VII's statute of limitations. The issue has only been

addressed by four district courts. The first three courts rejected any expansion of Title VII's

statute of limitations. The 2668 court was the first to allow it and rule in the EEOC's favor.

Again, Supreme Staffing has asked the 2668 court to reconsider its decision or, in the alternative,

certify questions for interlocutory appeal. In the meantime, Supreme Staffing again asserts that

the Race-based claims alleged in this lawsuit do not come within Title VII's statute of

limitations. They are time barred.

### 1.    The filing of this lawsuit sets the limitations period.

Title VII, by its plain language, has a 180-day statute of limitations. *See* 42 U.S.C. §

2000e-5(e)(1). This statute of limitations, although forward looking, is practically applied as a

"look back" period. Taking a filing date, one looks back 180 days. For Mr. Alvarez, that filing

date was the day he filed the Charge, April 11, 2019. Were his claims before the Court, that

filing date would set the limitations period. But neither his National Origin discrimination claim

nor his retaliation claim is before the Court. There, as mentioned, is no claim on behalf of Mr.

Alvarez; this lawsuit, like the others, is not about him at all. It is about an entirely separate group

of individuals.

This separate group of individuals—the group of individuals now identified in the

Amended Complaint—never filed a charge of discrimination, much less one for Race

discrimination. The Amended Complaint does not allege otherwise. But it does *suggest*

otherwise; it suggests the new individuals can borrow Mr. Alvarez's Charge and substitute it for

their own. This suggestion is implausible. To start, Mr. Alvarez also did not generally allege that

Supreme Staffing "violated Title VII," like the Amended Complaint states. (*Compare* Charge,

p.1 *with* Amended Complaint, ¶ 9.) Mr. Alvarez alleged (or, to use the statutory verb, he

charged) National Origin discrimination and retaliation. (Charge, p.1.) He did not charge Race

discrimination. He said he "complained of race discrimination." (*Id*.) But he did not charge it.

What he charged is relevant; what he supposedly complained of is not. "[T]he Court agrees with

[the employer] that whether or not [it] actually engaged in unlawful employment practices is

irrelevant to [the employee's] charge of retaliation." *E.E.O.C. v. A'GACI, LLC*, 84 F. Supp. 3d

542, 552 (W.D. Tex. 2015) (alterations added). In fact, when investigating a charge of

retaliation, the EEOC does not even consider the validity or truthfulness of the employee's

complaint.[9] Mr. Alvarez's alleged complaint is not relevant. What he charged is relevant and

controlling. He charged Supreme Staffing with National Origin discrimination and retaliation.

He did not charge Supreme Staffing with Race discrimination. His Charge, therefore, cannot

plausibly substitute for a charge filed by one, some, or all of the individuals now identified in the

Amended Complaint. Those individuals cannot substitute Mr. Alvarez's Charge for their own.

Any suggestion to that effect is implausible.[10]

     The filing of a charge, to be sure, is critically important. It notifies the charged employer

of the asserted violation. Indeed, when Congress amended Title VII in 1972, it specifically

required that employers be so notified and given "fair notice of the existence and nature of the

charges against them." *E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54, 77 (1984). Prior to 1972, the

---

[9] "[R]egardless of the validity or reasonableness of the original allegation of discrimination," the EEOC makes clear in its Compliance Manual, "[a]n individual is protected against retaliation for participation in the charge process." "An individual," the EEOC continues, "need not establish a violation of the underlying statute to be afforded protection from retaliation." *See* EEOC Compliance Manual, § 2-II at 5, https://www.eeoc.gov/laws/guidance/section-2-threshold-issues#2-II-A-5 (last accessed November 15, 2023).

[10] The EEOC cannot re-write Mr. Alvarez's Charge with this lawsuit. *See, e.g.*, *Creelgroup, Inc. v. NGS Am., Inc.*, 518 F. App'x 343, 347 (6th Cir. 2013) (internal quotation marks omitted) (affirming that a party cannot plead its way around the substance of a document or written instrument properly before the district court).

Supreme Court has explained, the EEOC "had become prone to postponing" notice to employers "until it was ready to begin an investigation." *Id*. at 74-75. "In response to complaints regarding the unfairness of this practice," the Supreme Court continued, Congress amended Title VII not only to reiterate the charge-filing process, but also to adopt "the present requirement that notice be given [by the EEOC] to an accused employer within 10 days of the filing of the charge." *Id*. at 75 (alteration added). But, here, no such charge was ever filed. The Amended Complaint does not allege otherwise.

In the absence of a filed charge, courts look to the date on which the EEOC notified the employer of the charges against it. The reason for this lies at the heart of the 1972 amendments to Title VII. Congress, again, was responding to complaints that the EEOC "had become prone to postponing" notice to employers of the charges against them. *Id*. at 74. That notice, Congress believed, was critical because it: (i) provided employers "fair notice that accusations of discrimination have been leveled against them;" (ii) helped ensure "that fairness and due process are part of the enforcement scheme;" and (iii) protected "the rights of the respondent [employers]." *Id*. at 90 (O'Connor, J., concurring in part) (alteration added). "Experience teaches," Justice O'Connor went on to explain, "that government administrative agency investigations can be prone to abuse." *Id*. Investigations, the Justice continued, "are likely to be conducted more reasonably, more carefully, and more fairly, when the concerned parties are adequately notified of the causes of the investigation that are in progress." *Id*.

Accordingly, in the absence of a filed charge of discrimination, courts look to the date on which the EEOC notified the employer of the charges against it. *See, e.g.*, *EEOC v. Princeton Healthcare System*, 2012 WL 5185030, at *5 (D. N.J. Oct. 18, 2012) (collecting cases and agreeing with courts that for limitations purposes the "filing" date was the date "on which the

EEOC notified defendants that it was expanding its investigation to encompass the additional charges"); *EEOC v. Freeman*, 2011 WL 337339, at *1 (D. Md. Jan. 31, 2011) (the "filing" date was the date on which the EEOC notified the defendant that it was expanding its investigation to encompass the new charges); *E.E.O.C. v. Norfolk S. Corp*., 2018 WL 4334615 (W.D. Penn. Sept. 11, 2018) (holding that for individuals that had not filed charges of discrimination, the statute of limitations ran from the subsequent notice the EEOC provided the defendant-employer regarding the expanded administrative investigation).

In this case, the EEOC never notified Supreme Staffing of an investigation (or expanded investigation) into any individual charging Race discrimination, and it never notified Supreme Staffing of an investigation into any of the individuals identified in the Amended Complaint. The Amended Complaint does not allege otherwise. Notice of both came when the EEOC filed this lawsuit. The filing of this lawsuit, therefore, sets the limitations period.

**2.     No Count is based on an allegedly discriminatory act within the limitations period.**

No allegedly discriminatory act, as pleaded in the Amended Complaint, comes within Title VII's 180-day statute of limitations. Applying the 180-day limitations period begins with the date on which this lawsuit was filed, as explained above. This lawsuit was filed on September 21, 2023. (*See* Doc. 1, Complaint, p.1.) Looking back 180 days sets March 25, 2023, as the outer limit of the limitations period. Here, to be timely pleaded, an allegedly discriminatory act must have occurred after March 25, 2023. Anything alleged to have occurred before March 25, 2023, is time-barred under Title VII and fails to state a claim upon which relief can be granted. The Amended Complaint does not plead an allegedly discriminatory act on or after March 25, 2023. The most recent act occurred in "2022," per the Amended Complaint, with respect to Ms. Kelly. (Amended Complaint, ¶ 47.) As pleaded, no allegedly discriminatory act comes within Title

VII's 180-day statute of limitations.[11] All Counts are time-barred under Title VII. This lawsuit, as to Supreme Staffing, should be dismissed with prejudice.

### 3.    Nothing about the nature of this action alters the statute of limitations nor whether it applies.

The EEOC has filed this lawsuit under Section 706 of Title VII. (*See* Amended Complaint, ¶ 1.) "Nothing in the text of Section 706," one of the most cited cases on the subject made clear, "suggests that the EEOC can recover for individuals whose claims are otherwise time-barred." *E.E.O.C. v. Freeman*, 2010 WL 1728847, at *4 (D. Md. Apr. 27, 2010); *accord E.E.O.C. v. USF Holland, LLC*, 2021 WL 4497490, at *1 (N.D. Miss. Sept. 30, 2021) (citing *Freeman*). "If Congress intended to make an exception for the EEOC to revive stale claims under Sections 706," the *Freeman* court continued, "it should have said so." *Freeman*, 2010 WL 1728847, at *4; *E.E.O.C. v. Burlington Med. Supplies, Inc.*, 536 F. Supp. 2d 647, 658-59 (E.D. Va. 2008) (The "EEOC's special statutory mandate does not entitle it to expand substantive rights, such as reviving stale claims that would not otherwise be actionable under Title VII . . . ."). That the EEOC filed this lawsuit, as opposed to a private litigant, does not alter the statute of limitations nor whether it applies. This lawsuit should be dismissed with prejudice.

## IV.    CONCLUSION

Based on the foregoing arguments and authorities, Supreme Staffing respectfully requests that the Court grant this Motion and dismiss this lawsuit with prejudice. Supreme Staffing requests any additional relief the Court deems warranted under the circumstances.

---

[11] Though Title VII's 180-day statute of limitations can be extended to 300 days in deferral jurisdictions, that extended period does not apply in this case. Here, none of the individuals identified in the Amended Complaint filed anything with any state agency, nor did they contemporaneously file with a state agency and the EEOC. The Amended Complaint does not allege otherwise. Accordingly, the extended 300-day period does not apply in this case. Title VII's 180-day period applies.

Respectfully submitted, this, the 11th day of December, 2023.

s/ Zachary B. Busey
**ZACHARY B. BUSEY**
Tennessee Bar No. 29763
zbusey@bakerdonelson.com

**WHITNEY M. DOWDY**
Tennessee Bar No. 24985
wdowdy@bakerdonelson.com

**MARY KATHERINE SMITH**
Tennessee Bar No. 35328
mkcampion@bakerdonelson.com

**DEAN J. SHAUGER**
Tennessee Bar No. 39746
dshauger@bakerdonelson.com

BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, P.C.
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
(901) 526-2000 – telephone

***Attorneys for Defendant Supreme Staffing LLC***

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the

Court using the ECF system, which sent notification of such filing to all counsel of record.

This, the 11th day of December, 2023.

s/ Zachary B. Busey
**ZACHARY B. BUSEY**