1

1    IN THE UNITED STATES DISTRICT COURT
     FOR THE WESTERN DISTRICT OF TENNESSEE
2              WESTERN DIVISION

3   _____
                                    |
4   EQUAL EMPLOYMENT               |
    OPPORTUNITY COMMISSION,        |
5                                  |
            Plaintiff,             |
6                                  |
    vs.                            |   NO. 23-CV-02599
7                                  |
    AARON THOMAS COMPANY, INC.,    |
8   and SUPREME STAFFING, LLC,     |
                                   |
9           Defendants.            |
                                    |
10  _____

11

12

13    TRANSCRIPT OF THE TELEPHONIC SCHEDULING CONFERENCE

14                 BEFORE THE

15         HONORABLE JON P. MCCALLA

16

17

18                 WEDNESDAY

19             FEBRUARY 7, 2024

20

21

22

23
            TINA DuBOSE GIBSON, RPR, RCR
24               OFFICIAL REPORTER
           FOURTH FLOOR FEDERAL BUILDING
25            MEMPHIS, TENNESSEE 38103


              UNREDACTED TRANSCRIPT

2

1                    A P P E A R A N C E S

2

3       Appearing on behalf of the Plaintiff:

4           ROSLYN N. GRIFFIN-PACK
            MARKEISHA SAVAGE
5           MARYNA JACKSON
            Equal Employment Opportunity Commission
6           1407 Union Avenue
            Suite 901
7           Memphis, Tennessee 38104
            (901) 544-0099
8           roslyn.griffin-pack@eeoc.gov

9

        Appearing on behalf of the Defendants:
10
            AMBER ISOM-THOMPSON
11          MATTHEW G. GALLAGHER
            SEAN O'BRIEN
12          Littler Mendelson, PC
            One Commerce Square
13          40 South Main Street
            Suite 2500
14          Memphis, Tennessee 38103
            aisomthompson@littler.com
15

16      Appearing for Supreme Staffing:

17          MR. ZACHARY B. BUSEY
            Baker Donelson Bearman Caldwell & Berkowitz
18          165 Madison Avenue
            Suite 2000
19          Memphis, Tennessee 38103
            (901) 526-2000
20          zbusey@bakerdonelson.com

21

22

23

24

25

                    UNREDACTED TRANSCRIPT

1                         WEDNESDAY

2                      FEBRUARY 7, 2024

3            ----------------------

4

5            THE COURT:  Well, we're here in connection with a

6    scheduling conference, and we have a draft scheduling order,

7    et cetera, in connection with EEOC v. Aaron Thomas Company

8    and Supreme Staffing.

9            There's also two motions.  There's a motion to

10   dismiss, which was filed on December 27th, by Supreme

11   Staffing, and there -- let me make sure that date is right.

12   I think it's close.

13           And then there's a motion to consolidate cases in

14   connection with a case that's before Judge Lipman.  And that

15   was filed, I believe, on January the 4th.  I'll recheck that.

16           And so who -- we need to remember three things.

17   First of all, is when you speak -- and there are a lot of

18   you, there are different people on the line, I think -- you

19   will need to say your name each time because we can't see

20   you, and we need to have an accurate record.

21           The second thing is that if the court reporter

22   cannot hear you or understand you, the court reporter will

23   say, I cannot hear you or understand you, and you should

24   repeat what you said more clearly and perhaps a little

25   louder.

                    UNREDACTED TRANSCRIPT

1          The third thing is that if there is some

2    overspeaking -- and we may have to do that a little bit just

3    to keep things moving along.  I don't like to do that, but we

4    may have -- I may have to.  She will say I can only take one

5    at a time, and then, of course, we will start over more

6    slowly and in a more orderly fashion.

7          Now, this case is the Aaron Thomas case.  It was

8    filed in August -- I'm sorry, September of last year.  The

9    cases which consolidation appears to be sought is the -- is

10   not an Aaron Thomas case.  It's EEOC v. Supreme Staffing, and

11   they've got Better Placements Personnel and Inspire Hotel

12   Staffing.  And that case was filed in September of 2022.  So

13   it's a year older than this case.

14         Now, you don't need to tell me all about the fact

15   that it's not been scheduled and so forth.  That's not the

16   point.  The point is it is a year older, and it does involve

17   different entities.  We will talk about that, but we need to

18   get that resolved, and we will enter a schedule in the case.

19   That's our anticipated process.

20         Now, who do we have as the lead counsel for the

21   EEOC?  I sort of thought it might be Ms. Williams, but I

22   don't know.

23         MS. GRIFFIN:  Your Honor, this is (inaudible).

24         THE REPORTER:  I'm sorry.

25         THE COURT:  You're very muffled.  We cannot

UNREDACTED TRANSCRIPT

1   understand you.  The court reporter just indicated we

2   couldn't tell what you were saying.  Say again.

3               MS. GRIFFIN:  My name is Roslyn Griffin-Pack.

4   I'll be speaking on behalf of the EEOC this morning.

5               THE COURT:  Okay.

6               MS. GRIFFIN:  Is that better?

7               THE COURT:  It's better.  Absolutely.  I

8   appreciate you doing that.  And let me check one thing there.

9               I'm looking for you on the appearances in the

10  case, and it may well be that you changed names or something

11  to that effect?

12              MS. GRIFFIN:  My name is Roslyn Griffin.

13  My new -- my married name is Pack.

14              THE COURT:  Okay.  Because when you said that, it

15  was confusing.  I have, of course, Ms. Griffin.  You are the

16  lead counsel; is that right?

17              MS. GRIFFIN:  That's right, Your Honor.

18              THE COURT:  All right.  That's fine.

19              Now, is anyone with you today, Ms. Griffin, in

20  this case?

21              MS. GRIFFIN:  Yes.  We should have Gary Sullivan,

22  Markeisha Savage, and Maryna Jackson.

23              THE COURT:  Okay.

24              MS. GRIFFIN:  From the EEOC.

25              THE COURT:  Mr. Sullivan?  Mr. Sullivan, are you

UNREDACTED TRANSCRIPT

1    there?

2              MR. SULLIVAN:  Yes, Your Honor.  Good morning.

3              THE COURT:  Good morning.

4              And then, Ms. Savage, is that right, are you

5    there?

6              MS. SAVAGE:  Good morning, Your Honor.  Yes, I am

7    here.

8              THE COURT:  Okay.  I'm sorry.  There was a third

9    person, I believe, and I may not have written them down.

10             MS. GRIFFIN:  Maryna Jackson.

11             THE COURT:  Okay.

12             MS. GRIFFIN:  I believe is on the line.

13             THE COURT:  Okay.

14             And, Ms. Jackson, are you there?

15             MS. JACKSON:  Yes, Your Honor.  I'm here.  Thank

16   you.

17             THE COURT:  Okay.  Good.

18             All right.  Now, obviously, when the EEOC

19   speaks -- and I think it will be Ms. Griffin -- you do really

20   need to say who it is because we might have a different

21   person speaking.  I take it we probably won't.  The same

22   thing will apply to each of the parties in the case.

23             Now, for Aaron Thomas Company, who is lead

24   counsel for Aaron Thomas?

25             MS. ISOM-THOMPSON:  Your Honor, this is Amber

UNREDACTED TRANSCRIPT

```
1    Isom-Thompson.  I'm lead counsel for the purposes of this
2    scheduling conference.  Matt Gallagher also is somewhat of a
3    lead counsel with me, but he's on the call today and will
4    need to leave at ten o'clock for another call.  I also have
5    Sean O'Brien with me.
6              THE COURT:  Okay.
7              And, Mr. Gallagher, what do you have so important
8    to go for your next call?
9              MR. GALLAGHER:  Your Honor, good morning.  I just
10   have another scheduling conference in another matter, and so
11   I plan to join for the first half hour, and then I've got
12   that call.
13             THE COURT:  Sure.  Which court is that in?
14             MR. GALLAGHER:  It's in the Northern District of
15   Mississippi.
16             THE COURT:  Mississippi, all right.  Well, that's
17   not a problem.
18             And then, I'm sorry, we had Mr. O'Brien; is that
19   right?
20             MR. O'BRIEN:  Yes, Your Honor.  Good morning.
21             THE COURT:  Okay.  Are you staying with us?  Are
22   you going to go somewhere too?
23             MR. O'BRIEN:  I will stay with us today, Your
24   Honor.
25             THE COURT:  Okay.  That's good.  No problem.
```

UNREDACTED TRANSCRIPT

1   Absolutely.  And so we all understand it is important again

2   to say your name when you speak.

3            Okay.  Now, who do we have for Supreme Staffing?

4            MR. BUSEY:  Good morning, Your Honor.  Zachary

5   Busey for Supreme Staffing, and I am the only attorney for

6   Supreme Staffing today.

7            THE COURT:  Okay.  All right.  Are you lead

8   counsel?

9            MR. BUSEY:  I am, Your Honor.

10           THE COURT:  Okay.

11           Ms. Isom-Thompson, you indicated you were not

12   lead counsel, but you were it today.  Is that correct or

13   incorrect?

14           MS. ISOM-THOMPSON:  That's correct.

15           THE COURT:  Who is lead counsel?

16           MS. ISOM-THOMPSON:  Matt Gallagher.

17           THE COURT:  Okay, Mr. Gallagher.  Well, you are

18   lead, so, you know, you need to -- you know, we'll see what

19   we need to do here.  Okay.  By the way, did you -- anyway, we

20   won't go further on that.

21           Now, this case does need to be moved along, and

22   it did not appear that, based on the motion to consolidate,

23   that it was -- that it -- it did not appear to be

24   appropriate.

25           It may be appropriate, and so I'm going to go

UNREDACTED TRANSCRIPT

1    back to Ms. Griffin and say, well, make your best argument on

2    why it may be appropriate to consolidate.  I realize that

3    there are some similarities.  I know you've had an individual

4    that filed a complaint and so forth.  That may be a

5    complicating factor.  You were trying to theoretically reduce

6    cost and discovery, et cetera.  That can be handled in a

7    different way, I think.

8              But why should we consolidate cases that have an

9    inherently different party?  I know some of the facts may be

10   the same, but goodness gracious, we're going to have

11   different witnesses.

12             MS. GRIFFIN:  Your Honor -- thank you, Your

13   Honor.  This is Roslyn Griffin-Pack on behalf of the

14   Commission.  We believe this case is a candidate for

15   consolidation because of the similarities between Supreme One

16   and Aaron Thomas.  Even though Supreme One involved three --

17             THE COURT:  Okay.  You're going to have to -- I'm

18   sorry.  Start over again.

19             So, again, who cares about that?  You've got

20   different claims that are different, don't you?  Isn't that

21   correct?

22             MS. GRIFFIN:  We do have different claims, but

23   they come from the same operative complaint, which is the

24   charging party's --

25             THE COURT:  Okay.  And I understand what you're

UNREDACTED TRANSCRIPT

1  saying, and we've looked through some materials.  So but you

2  do have -- there are differences here, and so wouldn't there

3  be different witnesses or witnesses you wouldn't have in your

4  first case from Aaron Thomas, correct?

5            MS. GRIFFIN:  There will be different witnesses,

6  Your Honor, but the majority of the witnesses will be the

7  same.  One of the biggest facts is Supreme Staffing is --

8  one, the parties at Supreme Staffing.  We believe that that's

9  an integrated enterprise, Supreme Staffing and the other two

10 defendants.  And so there's a commonality between those

11 parties.

12           THE COURT:  Hold on.  Hold on again.  I'm sorry.

13 You're not saying that Supreme Staffing is integrated in any

14 way with Aaron Thomas, though, right?

15           MS. GRIFFIN:  No, Your Honor.  In this case, we

16 allege that the Supreme Staffing is a joint employer with

17 Aaron Thomas.

18           THE COURT:  Well, okay.  So you have a joint

19 employer.  I understand that.  You've got that question.

20 Well, okay.  I mean, I hear kind of what you're saying.

21           Tell me your best point again.  I know that there

22 are some similarities, but that can be handled by dealing

23 with the issue perhaps taking -- sometimes people take, in

24 two cases, a deposition of the same person.  And that might

25 be a more efficient way, and it might bring the case along.

UNREDACTED TRANSCRIPT

1              Would that work in this case, then, Ms. Griffin?

2              MS. GRIFFIN:  Respectfully, Your Honor, we don't

3    think so.  You know, in this case, we've already identified a

4    potential -- 60 potential class members.  We think that with

5    discovery, we'll identify hundreds more, and so that's the

6    problem.  And some of those class members will be relevant

7    class members or have relevant evidence as to Claim 1.

8              And so with the sheer number of people, those

9    witnesses, we think it's better to have a consolidated

10   action.  They won't have to come back to the court twice.

11   They won't have to -- you know, the attorneys won't have to

12   come back.  It's just a cost-saving analysis.

13             THE COURT:  Okay.  All right.

14             Well, let's hear from Aaron Thomas on that.  Is

15   this a good idea?

16             MS. ISOM-THOMPSON:  Aaron Thomas opposes

17   consolidation in this matter because while there may be some

18   overlap between the cases, it's not enough to obviate the

19   prejudice that would be caused to Aaron Thomas by

20   consolidating the actions.

21             The Supreme One, as we're calling it, involves

22   multiple different clients of Supreme and its other

23   codefendants in that first matter.  And Aaron Thomas is only

24   one of that group of clients that is, I guess, involved in

25   the first action.

1          So the -- while the Commission's position is that

2    there are, I guess, commonalties between the aggrieved class

3    members, the subset that would overlap is just not great

4    enough to excuse the prejudice that would be caused by Aaron

5    Thomas having to, for example, be present in a deposition

6    where a witness is speaking to any number of clients of

7    Supreme, and it just -- it gets overly complicated and not

8    efficient and also increases the cost and burden of Aaron

9    Thomas's defense.

10          THE COURT:  Let's hear from counsel for Supreme

11    Staffing on this.

12          MR. BUSEY:  Your Honor, Supreme Staffing agrees

13    with Aaron Thomas in opposing this.  I won't repeat the

14    points that have already been made.  I'll add, though, that

15    the individuals -- I believe -- the EEOC, I believe they're

16    referencing individuals disclosed in initial disclosures, for

17    example, and those individuals are largely disclosed by the

18    EEOC as former Aaron Thomas employees.  So even where we are

19    talking about potential overlap as a hypothetical, we haven't

20    yet seen them, and we don't know what that would be in terms

21    of the overlapping witnesses at the end of the day.

22          THE COURT:  Okay.  Now, this is going to be a --

23    what's going to happen, though, in Supreme One, Mr. Busey?

24    Is that -- it sounds like in Supreme One, they're going to

25    take some of the same information they would need in Supreme

UNREDACTED TRANSCRIPT

1    Two.  This is Supreme Two.

2              MR. BUSEY:  Respectfully, Your Honor, this would

3    be Supreme Three --

4              THE COURT:  Oh, Supreme Three.

5              MR. BUSEY:  -- when it comes to at least to

6    Supreme's standpoint.

7              THE COURT:  It would be Supreme Three.  That's

8    fine.

9              MR. BUSEY:  There may be -- again, to Aaron

10   Thomas's counsel's point, Aaron Thomas is a client of Supreme

11   Staffing.  What we don't yet know from Supreme One is the

12   identity of all of the clients or, for example, the time

13   periods.  Those issues are briefed and scope as well are

14   briefed and pending in Supreme One.

15             So could I tell the Court that there will not be

16   a single witness that might not have relevant information in

17   Supreme One and perhaps Supreme Two and perhaps Supreme

18   Three?  Very well there could be, but there isn't the degree

19   of overlap that would warrant consolidating two out of the

20   three cases.

21             And even where there is, Supreme's position would

22   be it does not weigh -- outweigh the prejudice, for example,

23   to Supreme, of having to litigate in a consolidated

24   proceeding that involves entirely separate claims in this

25   case against Aaron Thomas.

UNREDACTED TRANSCRIPT

1          THE COURT:  Okay.  Do you want to go back through

2     and tell me about Supreme Two just a little bit?

3          I may just go back to Ms. Griffin and let her

4     tell me that.  Tell me about Supreme Two a little bit.

5          MS. GRIFFIN:  Okay, Your Honor.  Supreme Two is

6     an individual action brought on behalf of the charging party,

7     Francisco Alvarez.  The EEOC suid Supreme and Barrett

8     Distribution Centers.

9          Barrett is another client company of Supreme, and

10    we allege that Barrett and Supreme, again, acting as joint

11    employers, retaliated against Mr. Alvarez once they

12    transferred him from Barrett's worksite, and then ultimately

13    terminated him because he complained about national origin

14    and race discrimination.  We've since settled our claims

15    against Barrett, and Supreme is the only remaining defendant

16    in that action.

17         THE COURT:  Right.  Okay.  Let me make sure, so

18    to what degree is national origin going to play a role in

19    Supreme Three, Ms. Griffin?

20         MS. GRIFFIN:  It's not going to play a role in

21    it.  Supreme Three, the action is about --

22         THE COURT:  Right.  Right.  I understand -- I'm

23    sorry.  I'm just trying to get the agreement.  A Rule -- this

24    is a Rule 16 conference, as well as a 26(a)(1) conference.

25    And what we do is we try to sort out facts that are not in

UNREDACTED TRANSCRIPT

```
 1   dispute.  And I understand that's not in dispute.  But I just
 2   want to make sure it's not an issue.
 3              Your point is that this is only about racial
 4   discrimination in Supreme Three; is that correct?
 5              MS. GRIFFIN:  That's correct.
 6              THE COURT:  Okay.  That's fine.  But we want to
 7   make sure that everybody agrees on that.
 8              So I think that Ms. Isom-Thompson, that is
 9   correct, isn't it?
10              MS. ISOM-THOMPSON:  Yes, that is correct, Your
11   Honor.
12              THE COURT:  Okay.  And we just want to make sure
13   from Mr. Busey, that that is -- nobody is disputing that.
14   It's pretty clear from the pleadings, right?
15              MR. BUSEY:  That the claims are race
16   discrimination in Supreme Three, yes, Your Honor.
17              THE COURT:  Okay.  Now, let's go back to Supreme
18   One.  I want to make sure I understand because I looked at
19   Supreme One a little bit.  It does have a different claim --
20   an additional claim.
21              Is that right, Ms. Griffin?
22              MS. GRIFFIN:  Yes, Your Honor.  In Supreme One,
23   we also have a record-keeping violation claim.  We allege
24   that Supreme (inaudible).
25              THE REPORTER:  I'm sorry, Ms. Griffin.  I'm
```

UNREDACTED TRANSCRIPT

```
 1   really struggling understanding you.  It's a little muffled

 2   when you're speaking.  So you could start over with your

 3   answer.  I've got, "Yes, Your Honor, in Supreme One, we also

 4   have . . ."

 5               MS. GRIFFIN:  ". . . a record-keeping violation."

 6               I'm sorry.  I'm trying to talk directly into the

 7   computer.  We have a record-keeping violation.  Can you hear

 8   me?

 9               THE REPORTER:  Yes, ma'am.

10               THE COURT:  Okay.  A record-keeping violation.

11               MS. GRIFFIN:  That's not present in this case.

12               THE COURT:  Sure.  A record-keeping violation.

13   Any other things that are different in Supreme One?

14               MS. GRIFFIN:  Essentially, we have an

15   integrated -- I'm sorry, Your Honor.

16               THE COURT:  No, go ahead.

17               MS. GRIFFIN:  We have an integrated enterprise

18   claim that's present in Supreme One that's not present in

19   Supreme Three.

20               THE COURT:  Okay.  Right.

21               And I think that Mr. Busey agrees with that; is

22   that right?

23               MR. BUSEY:  That's correct, Your Honor.

24               THE COURT:  Okay.

25               And, Ms. Isom, I'm sure you agree with it.
```

UNREDACTED TRANSCRIPT

1          MS. ISOM-THOMPSON:  Yes, Your Honor.

2          THE COURT:  Okay.  Now, where is your Alvarez

3     claim for the Hispanic workers claim?  Where is that?  Is

4     that -- because I haven't looked at Supreme Two at all, so I

5     don't know.

6          MS. GRIFFIN:  That's not present, Your Honor.  We

7     didn't bring the claim.

8          THE COURT:  Okay.  So there's no issue about

9     that, but I think Alvarez may have complained about that at

10    some point; is that right?

11         MS. GRIFFIN:  That's correct.

12         THE COURT:  Okay.  But you didn't -- you

13    didn't --

14         MS. GRIFFIN:  That forms the catalyst of the

15    complaint in Supreme Two.

16         THE COURT:  You chose not to pursue that Alvarez

17    claim?

18         MS. GRIFFIN:  Yes, Your Honor.

19         THE COURT:  Okay.  That's fine.  I just want to

20    sort it out.  I think we've got that straight.

21         Okay.  All right.  Well, that's -- now, I think

22    we can go ahead then, and schedule this case.  It could be

23    that -- well, we'll figure out some internal things about

24    that later.

25         Give me an update status, Mr. Busey, on Supreme

UNREDACTED TRANSCRIPT

1    Two.

2              MR. BUSEY:  Yes, Your Honor.  So that case is

3    largely scheduled as a single plaintiff case.  The parties

4    completed the mandatory ADR requirements.  I believe it was a

5    few weeks ago.  Supreme did not reach a resolution with the

6    EEOC through that process, but the EEOC reached a resolution

7    with the codefendant, Barrett Distribution, in that process.

8    And, otherwise, the parties are in the discovery period for

9    that case.

10             THE COURT:  In that case, then, Mr. Busey, will

11   the witnesses in that case also be witnesses in Supreme One?

12             MR. BUSEY:  I think at a level in terms of some

13   management personnel at Supreme Staffing, perhaps Mr. Alvarez

14   himself.  As far as we -- as far as I know, that would be

15   where I put the overlap.  And then the EEOC personnel that

16   may have been involved in any investigation.

17             THE COURT:  Okay.  Now, so I think we've got it

18   down.  Supreme Two is moving along, then, in an orderly way;

19   is that right?

20             MR. BUSEY:  Yes, Your Honor.

21             MS. GRIFFIN:  Your Honor, I will --

22             THE COURT:  Sure.

23             MS. GRIFFIN:  I will note -- this is Roslyn

24   Griffin.  We do have the pending motion to dismiss that we're

25   still waiting for a ruling on in Supreme Two.

UNREDACTED TRANSCRIPT

1              THE COURT:  Right, right.  I've looked at the

2    schedule.  I've looked at the docket sheet, and I understand

3    you do.

4              Okay.  All right.  This doesn't really look like

5    it's a motion to dismiss case, though, does it,

6    Ms. Isom-Thompson?  I know you're Aaron Thomas.  You'd like

7    it to go away, but it doesn't look like one?

8              MS. ISOM-THOMPSON:  We -- so our -- speaking of

9    our -- the case that we have today in front of you, we have

10   not filed a motion to dismiss.  Aaron Thomas Company has not

11   filed a motion to dismiss.

12             THE COURT:  Right, right.  You chose not to file

13   a motion to dismiss.  The only one I have is from Mr. Busey.

14             So, Mr. Busey, they say they chose not to.

15   Probably a pretty good decision, but you did file one.  So

16   looks like they've got a case here.  It's not really a

17   Rule 12 question, right?

18             MR. BUSEY:  Supreme respectfully disagrees, Your

19   Honor.  I think Supreme Staffing is in a vastly different

20   position in this now third proceeding than Aaron Thomas.  So

21   we do rely on the Rule 12 motion, primarily, the

22   claim-splitting arguments but also because it's a duplication

23   of the claims against us from the first lawsuit.  We felt

24   like we needed to again raise our dismissal arguments or at

25   least for fear of any waiver in the duplication.

1           THE COURT:  Sure.  And, actually, we identified

2    the claim-splitting issue as being a serious issue here.  Do

3    you want to articulate that just a minute so Ms. Griffin can

4    respond?

5           MR. BUSEY:  Yes, Your Honor.  I'll focus just on

6    the claim splitting.  The claim-splitting analysis looks at

7    almost a presumed judgment or final resolution in an earlier

8    proceeding and then analyzes whether it would bar the

9    subsequent proceeding.

10          And in here, I think even as the discussion today

11   has shown, in terms of Supreme Staffing, the race claims from

12   the first lawsuit are actually broader than the race claims

13   here in this third lawsuit.  The race claims in this third

14   lawsuit are a piece of and fall within the umbrella of the

15   race claims from the first lawsuit.  And we, therefore, move

16   to dismiss just based on claim splitting.

17          They're identical claims filed against Supreme

18   Staffing filed in a subsequent proceeding.  And I think by

19   any stretch of the imagination a resolution on the broader

20   umbrella of race claims in the first lawsuit would include

21   the race claims that are filed in this lawsuit.

22          THE COURT:  All right.

23          Ms. Griffin, that sounds pretty correct if you

24   look at the -- I can go back and examine Supreme Two, but I

25   really wasn't directed to do that.  It sounds like it may be

UNREDACTED TRANSCRIPT

1  correct that if you get the relief you're asking for in

2  Supreme One, Supreme Three would be over.

3        MS. GRIFFIN:  Your Honor, respectfully, we

4  disagree.  This case represents a unique situation.  We could

5  not have brought a joint employer claim against Supreme and

6  Aaron Thomas in Supreme One.  We couldn't have brought a

7  claim with Supreme acting as a joint employer with Aaron

8  Thomas discriminated against African Americans because the

9  Aaron Thomas investigation hadn't concluded.  And so it would

10 have been premature to bring it with Supreme One.

11        In fact, that investigation didn't conclude until

12 over a month after the deadline to file joinder in Supreme

13 One was over, and so it was literally impossible.  Those

14 claims weren't ripe for review.  Specifically, the claim that

15 Supreme Staffing acting as a joint employer with Aaron Thomas

16 discriminated against blacks.

17        THE COURT:  Okay.  And I'm going to hear briefly

18 from Mr. Busey on that.  I know you've got the joint employer

19 theory.  I'm going to go back and look.  We've written on

20 that in the past, so I'll do a little extra work on that.

21 Sure.

22        Mr. Busey, what do you want to say about that?

23        MR. BUSEY:  Separate claims, Your Honor.  The

24 claims against Aaron Thomas arise out of the charge of

25 discrimination that was filed against Aaron Thomas.  The

UNREDACTED TRANSCRIPT

1  claims against Supreme Staffing arise out of the separate

2  charge of discrimination that was filed against Supreme

3  Staffing.

4        And there isn't even the allegation that Supreme

5  Staffing was part of the Aaron Thomas investigation or was

6  part of any attempt to conciliate that or was part of this

7  subsequent investigation.  The EEOC is alleging to have sued

8  Supreme Staffing arising out of the charge that was filed

9  against Supreme Staffing; and whatever those claims or

10  allegations were, the EEOC could have filed them in the first

11  lawsuit.

12        THE COURT:  Sure.  I understand.  Okay.  I think

13  we're -- I think we've got that down pretty well.

14        Looks like that we need to go ahead and give you

15  a schedule.  We will move along in the case.  It will have to

16  move pretty rapidly.  I did look at the proportionality

17  information.  This is not as critical in this case as it is

18  in a lot of -- very important.  Don't get me wrong.  But we

19  have taken a look at that.

20        What we're checking usually in proportionality

21  assessment is just to make sure that we don't have such

22  disproportionate entities that we need to adjust schedules

23  and/or amount of discovery or initial discovery based on the

24  disproportionality.

25        In this case, however, as I understand it, Aaron

UNREDACTED TRANSCRIPT

1    Thomas is a substantial company.  Of course, we've got the

2    information there.  And they do have a number of full-time

3    employees located in Memphis.  We have the other information

4    about main office in California and so forth.

5                You've also identified Jennifer White and

6    Ms. Ramirez and Ms. Mayfield as key witnesses in the case.

7    And I understand that is -- that those would be -- tell me

8    again why they're key witnesses.  But I think I understand.

9                Mr. Busey?

10               MR. BUSEY:  Your Honor, forgive me.  Was that

11   Aaron Thomas?

12               THE COURT:  I'm sorry.  I'm sorry.  I'm sorry.

13   Ms. Isom-Thompson, she must be feeling left out.  I'm sorry.

14               MS. ISOM-THOMPSON:  Thank you, Your Honor.  Yes,

15   those witnesses have been identified as key witnesses who

16   would be able to speak to Aaron Thomas Company's policies and

17   practices with regard to placement of temporary workers

18   through Supreme.

19               THE COURT:  Okay.  Of course, the allegation is

20   that Aaron Thomas really asked for, I think, Hispanic

21   employees.

22               Is that right, the allegation, Ms. Isom-Thompson?

23               MS. ISOM-THOMPSON:  I believe that is the

24   allegation, and so they would be able to speak to the fact

25   that that was not the case, that no request for temporary

24

1   workers were made based on race.  They would be able to speak

2   to legitimate nondiscriminitory reasons for the actions

3   taken.  And also just, again, with regard to just their

4   general practices when they request temporary workers, they

5   do not request them to be placed on the basis of race.

6          THE COURT:  How much e-mail discovery has already

7   been made or how much disclosure has been made,

8   Ms. Isom-Thompson?

9          MS. ISOM-THOMPSON:  With regard to our initial

10   disclosures, we have not --

11          THE COURT:  Right.

12          MS. ISOM-THOMPSON:  -- identified -- we have not

13   identified the e-mail communication at this stage.  We rely

14   on the -- primarily, on the documents that are listed on the

15   proportionality assessment form with regard to the invoices

16   regarding the temporary workers who were placed and worked at

17   Aaron Thomas Company and also relevant records relating to

18   Aaron Thomas employees who are alleged to be aggrieved

19   individuals.

20          THE COURT:  Sure.  And I know that you are --

21   will need copies of the entire investigative and conciliation

22   file from the EEOC.

23          And I take it that, Ms. Griffin, that's not a

24   problem, right?

25          MS. GRIFFIN:  That's correct, Your Honor.  We've

UNREDACTED TRANSCRIPT

1    identified the investigation file.  You know, the

2    conciliation documents are a little tricky because we are

3    subject to certain privileges, and so those we -- some of

4    those documents will be withheld, but we'll produce the

5    privilege log to that effect.

6                    THE COURT:  Right.  Exactly.

7                    And so that's one of the first thing that you

8    need, right, Ms. Isom-Thompson?  You're going to take a look

9    at that entire investigative file.  I know there might be --

10   I understand also on the conciliation question, there may be

11   some things that are not properly disclosed.  Is that --

12   that's one of the key things you need, right?

13                   MS. ISOM-THOMPSON:  That's correct, Your Honor.

14   During the conciliation phase, Aaron Thomas Company wasn't

15   made aware of who the alleged aggrieved individuals were, and

16   that was an issue with regard to being able to reach

17   conciliation.  So at this stage now that there's a lawsuit,

18   it's even more important that Aaron Thomas Company be able to

19   identify who the alleged aggrieved individuals were at the

20   charge phase.

21                   THE COURT:  Sure.  Absolutely.

22                   And, Ms. Griffin, those alleged aggrieved

23   individuals, that will all be in the investigative file,

24   right?

25                   MS. GRIFFIN:  Yes, Your Honor.  But the

UNREDACTED TRANSCRIPT

1    Commission does note that the Commission isn't required to

2    identify all potential class members at the conciliation

3    phase.  And so to the extent we've identified a subset of the

4    potential class members that are involved in this lawsuit, of

5    course, we produced those names, no issues; and we've already

6    provided those names through the initial disclosures.

7                    THE COURT:  Okay.  And, Ms. --

8                    MS. GRIFFIN:  But I just want to make --

9                    THE COURT:  No, that's fine.

10                   Ms. Isom-Thompson, you do have an initial set

11   now, is that right?

12                   MS. ISOM-THOMPSON:  Yes, as of Friday afternoon,

13   we do.  Although, I would note, that it is unclear from the

14   initial disclosures which group the alleged individuals -- or

15   aggrieved individuals fall within because the Commission has

16   alleged different sets of alleged aggrieved individuals:

17   Those who were not placed at Aaron Thomas Company, those who

18   were placed but were segregated, and those who were

19   terminated from employment at Aaron Thomas Company.  So it's

20   unclear from the initial disclosures which subset those

21   individuals fall within.

22                   Also, another important fact that Aaron Thomas

23   Company needs to know is who allegedly made the request for

24   discriminatory placement at Aaron Thomas Company, and that's

25   not clear from the initial disclosures that we've received at

UNREDACTED TRANSCRIPT

27

1    this point either.

2              THE COURT:  Well, let's just ask Ms. Griffin.

3    Who made the request for discriminatory placement from Aaron

4    Thomas?  Who did that?  Who is the person?

5              MS. GRIFFIN:  Your Honor, we're not -- we know

6    that one person -- hold on just a minute.  I'll give you her

7    name.

8              THE COURT:  Sure.

9              MS. GRIFFIN:  We identified it in our

10   proportionality statement.  I think the young lady's name

11   is -- I'm sorry, I can't pronounce it.  It starts with an N.

12             THE COURT:  Sure.  And let me go --

13             MS. GRIFFIN:  Nile?

14             THE COURT:  You mean Palacios?

15             MS. GRIFFIN:  Yes, Your Honor.  That's one

16   person, but the Commission knows it needs additional

17   discovery to determine if there's anybody else.  So we're not

18   tied to her.  We know that that's one person who allegedly

19   made a discriminatory request.

20             THE COURT:  Okay.  And when was that made?

21             MS. GRIFFIN:  During the relevant time period.  I

22   can't give you the exact date.  The charging party, Francisco

23   Alvarez, worked on the Aaron Thomas account over a course of

24   several months, and it's an ongoing violation.

25             THE COURT:  Okay.  And --

UNREDACTED TRANSCRIPT

28

1          MS. GRIFFIN:  It was not one specific date.

2          THE COURT:  Well, let's check on that.  So what

3    was the position of the individual?  There's only one

4    individual you know of right now who made a discriminatory

5    request.

6          Is that correct, Ms. Griffin?

7          MS. GRIFFIN:  That's one person that we know of.

8    It's our understanding that it was a general statement from

9    Aaron Thomas as a whole.  We have an e-mail from that

10   particular person where she requests bilingual employees, and

11   so we have that specific information.  But, again, the

12   Commission is going to need discovery from Aaron Thomas to

13   identify there are other individuals who worked in placement,

14   recruiting, and worked with staffing companies such as

15   Supreme to facilitate the discriminatory request for Hispanic

16   workers.

17         THE COURT:  Okay.  Now, was the request for

18   bilingual employees?  Is that what the request was, and not

19   specifically by national origin or race or anything else?

20   Was it for bilingual employees?

21         MS. GRIFFIN:  That's in that specific e-mail.

22   But based on our -- testimony from the charging party,

23   Francisco Alvarez, there were other requests for Hispanics

24   only, and those requests came from people at Aaron Thomas.

25         THE COURT:  Well, you've got to tell me who.  We

UNREDACTED TRANSCRIPT

1  don't get the -- you've got to tell me who.  Who else did

2  Mr. Alvarez say was making these discriminatory requests?

3          MS. GRIFFIN:  He said that it was that particular

4  lady, and then he also said that it was well known from Norma

5  Serato (phonetic), who works at the Supreme Staffing, that

6  the request came from them.  So we'll need discovery from

7  Norma Serato (phonetic) at Supreme Staffing and other

8  recruiters and placement professionals between Supreme and

9  Aaron Thomas to identify those other specific individuals.

10         THE COURT:  You know you won't be able to go

11  anywhere with generally known.  That's not going to be

12  admissible, as you know, right?

13         MS. GRIFFIN:  I know, Your Honor.  That's why we

14  plan to seek discovery to get specific individual names.

15         THE COURT:  Okay.  That's fine.  And so Alvarez

16  says that there was -- that the one person he identified --

17  and this may be incorrect, so tell me if I'm wrong -- was the

18  third person listed on your second page of your

19  proportionality statement, and I may have mispronounced it,

20  but I just said Palacios.  Does anybody know how to pronounce

21  that?

22         Let's go back to Isom-Thompson.  How do you

23  pronounce that name?

24         MS. ISOM-THOMPSON:  I am not 100 percent certain,

25  but Nialie (phonetic), perhaps, Palacios.

UNREDACTED TRANSCRIPT

1        THE COURT:  They've spelled it P-A-L-A-C-I-O-S.

2    Is that the person we're -- that's the person you're aware of

3    that -- is that person still working at Aaron Thomas?

4        MS. ISOM-THOMPSON:  I believe she is currently

5    employed by Aaron Thomas, although she is no longer in

6    Memphis.

7        THE COURT:  Okay.  And what was her position

8    while she was in Memphis during the relevant time period?

9        MS. ISOM-THOMPSON:  I believe she was a warehouse

10   manager at the Mendenhall location.

11        THE COURT:  Okay.  By the way, how many

12   warehouses are there?  Are there two?

13        MS. ISOM-THOMPSON:  Yes, Your Honor.

14        THE COURT:  Okay.  For some reason, I think I

15   read there were two, but -- at the Mendenhall location.  How

16   big is the Mendenhall location?

17        MS. ISOM-THOMPSON:  I believe they have somewhere

18   around 150 employees full-time Aaron Thomas, or full- or

19   part-time Aaron Thomas employees.

20        THE COURT:  Okay.  And then, of course, I may be

21   saying it wrong.  I'm going to get some advice from my

22   language experts over here.  Well, they're not suggesting

23   anything either, so I'm not getting any help there.

24        I'm going to say Ms. Palacios, which I think may

25   be close to right.  Okay.  So she was a warehouse manager; is

1    that right?

2              MS. ISOM-THOMPSON:  That is my understanding,

3    Your Honor.

4              THE COURT:  How many warehouse managers would

5    there be at the Mendenhall location?  I just don't know.

6              MS. ISOM-THOMPSON:  There are various managers at

7    the Mendenhall location, but I believe there, generally, is

8    one warehouse manager.

9              THE COURT:  And so she was it?  She was the boss;

10   is that right?  I don't want to use the wrong term there, but

11   was she the one in charge of everything?

12             MS. ISOM-THOMPSON:  No.  No, Your Honor.  There

13   are several different management positions at that location,

14   and so her position specifically was just over the warehouse.

15             THE COURT:  Okay.  She was -- she was the --

16   well, she was the warehouse manager.  And then tell me a

17   little bit more about the structure, just so I'll understand

18   it.  Real quickly, who else would be at that location that

19   would be in management, and was there someone senior to her?

20             MS. ISOM-THOMPSON:  There would have been, Your

21   Honor.  So I think as we identified in proportionality

22   assessment, there is a VP of operations who is over both

23   warehouses, and then the -- over both locations.

24             And then each location has a general manager.

25   And then underneath the general manager would fall various

UNREDACTED TRANSCRIPT

other managers, including the warehouse manager, a production

manager, and there might be other ones.  Those are the ones

that I'm aware of at this time.

THE COURT:  Right.  So you had Ms. White, who was

the senior most person there, VP for operations over

Mendenhall and Distribution Drive, she's the senior person

here in the Memphis area?  Was that right or wrong?

MS. ISOM-THOMPSON:  That's my understanding, Your

Honor, yes.

THE COURT:  Okay.  And then you have Ms. Ramirez,

who was the general manager at Mendenhall, who was over the

individual that you call the warehouse manager; is that

right?

MS. ISOM-THOMPSON:  That's correct, Your Honor.

THE COURT:  Okay.  And then Ms. Mayfield was a

Distribution Drive general manager.  That's the other

location, right?

MS. ISOM-THOMPSON:  That's correct, Your Honor.

THE COURT:  Now, did we have any indication that

anybody from Distribution Drive requested racial

discriminatory placement, Ms. Griffin?

MS. GRIFFIN:  I'm sorry, Your Honor.  Could you

repeat that, please?

THE COURT:  Do you have any information that a

management person at Distribution Drive requested racially

UNREDACTED TRANSCRIPT

1    discriminatory placement?

2                  MS. GRIFFIN:  Yes, Your Honor.  The charging

3    party generally alleges that the request came from Aaron

4    Thomas as a whole.  Where the particular people were housed,

5    I'm not --

6                  THE COURT:  I'm sorry.  I'm sorry, but that's not

7    responsive to my question.  You're either saying that you

8    don't have anybody, or you're still looking for somebody.

9    Which is it?

10                 MS. GRIFFIN:  We're still looking for all of the

11   alleged perpetrators who made the discriminatory request,

12   Your Honor.

13                 THE COURT:  Okay.  But you only have identified a

14   single one; is that correct?  I mean, maybe I'm wrong.

15                 MS. GRIFFIN:  We have -- I want to be careful in

16   how I answer, Your Honor.  We had an e-mail from that

17   particular person who made the discriminatory request.  We

18   believe, generally, that other people at Aaron Thomas made --

19   also had that discriminatory request in mind.  Do we have

20   that specific name at this point?  No, Your Honor.  We need

21   to conduct additional discovery --

22                 THE COURT:  Okay.

23                 MS. GRIFFIN:  -- to identify every single person

24   who made the request.

25                 THE COURT:  Well, you don't know if anyone else

UNREDACTED TRANSCRIPT

34

1    did, right?  I want to make sure I understand this.

2                    MS. GRIFFIN:  That's correct.

3                    THE COURT:  Okay.  That's okay.  And the person

4    that you have identified and it's the individual who is third

5    on the list, and it's Ms. -- I'm not sure, Palacios, right?

6                    MS. GRIFFIN:  Correct.

7                    THE COURT:  Okay.  Now, did you get a statement

8    from Palacios about what happened?  Was she interviewed?

9                    MS. GRIFFIN:  We don't have an official statement

10   from her, and I need to check our records.  I don't think

11   that -- I don't believe that she was interviewed yet, but we

12   would seek a deposition from her.

13                   THE COURT:  Absolutely.  Absolutely.  It sounds

14   like a key deposition to me.  Does it seem like one to you?

15                   MS. GRIFFIN:  Yes, Your Honor.

16                   THE COURT:  Okay.

17                   Now, let me go back to Ms. Isom-Thompson.  Where

18   is this individual now?

19                   MS. ISOM-THOMPSON:  I believe she's now located

20   in Texas.

21                   THE COURT:  That's a pretty big place.  Can you

22   be more specific?

23                   MS. ISOM-THOMPSON:  At Aaron Thomas's facility in

24   Texas, and I'm not exactly sure of the city at this moment.

25                   THE COURT:  Do they have more than one in Texas?

UNREDACTED TRANSCRIPT

1              MS. ISOM-THOMPSON:  I -- I am -- I'm not as

2    familiar with their Texas facilities.  I apologize, Your

3    Honor.

4              THE COURT:  You don't know.  That's the answer,

5    right?  It's okay.

6              MS. ISOM-THOMPSON:  Not off the top of my head.

7    I apologize.

8              THE COURT:  No, it's okay not to know.  But,

9    obviously, I'm going to talk about 26(a)(1) disclosure.

10   We're not going to go on forever because I've got some other

11   things I've got to do today.

12             But the purpose of the conference is to emphasize

13   the amount of disclosure that has to be made in the early

14   stages in the case, and we want to really get a lot of good

15   early disclosure.  I do understand that Alvarez is key.

16             Now, where is Alvarez now working, Ms. Griffin?

17             MS. GRIFFIN:  He has his own company in Memphis,

18   Tennessee.

19             THE COURT:  Okay.  Well, what is it?

20             MS. GRIFFIN:  He has a construction company, and

21   he also does consulting for staffing companies.

22             THE COURT:  Okay.  And that's not enough.  What's

23   the name of the company?

24             MS. GRIFFIN:  Hold on just a minute, Your Honor.

25   I can tell you.

UNREDACTED TRANSCRIPT

1              THE COURT:  Okay.

2              MS. GRIFFIN:  Bear with me just a minute, Your

3    Honor.

4              THE COURT:  No problem.  You've got some helpers

5    there.  They need to be looking that up for you, okay?

6              MS. GRIFFIN:  Okay.  Your Honor, we may have to

7    get that information to you.  We can send it to everybody

8    later on this afternoon.  I can't put my fingers on it right

9    now.

10             THE COURT:  That's okay.  What we're pointing out

11   is that -- by the way, has --

12             Mr. Busey, have you interviewed -- in any way

13   gotten information from Alvarez?

14             MR. BUSEY:  No, Your Honor.  In fact, the

15   information that has been shared today about a request for

16   bilingual employees or what Mr. Alvarez knew, this is the

17   first that I've heard of any of this.

18             THE COURT:  That's why we have this conference,

19   but I hope it's useful.  We try to see what we can get.

20             And, Ms. Isom, what about Mr. Alvarez?  You've

21   got his personnel file, right?

22             MS. ISOM-THOMPSON:  Your Honor, Mr. Alvarez was

23   never employed by Aaron Thomas Company.  In fact, our

24   witnesses that we've spoken to have no knowledge of him other

25   than after -- I think, around the time his charge was filed,

1  he came by and dropped off a business card from Moore

2  Advanced Staffing, LLC, and so we had no connection with him

3  while he was employed by Supreme based off of the information

4  we have at this point.

5          THE COURT:  And I suppose I may have asked a

6  little bit the wrong question.  That is:  Did he ever work at

7  one of the Aaron Thomas locations?  That's a better question.

8          MS. ISOM-THOMPSON:  No, Your Honor, he was never

9  an Aaron Thomas Company employee.

10          THE COURT:  Right.  And I know it's a little

11  confusing because we have staffing, and I don't want to get

12  it confused there.

13          Ms. Griffin, do you think that he -- well, do you

14  have any information that he ever worked at an Aaron Thomas

15  location in the Memphis area?

16          MS. GRIFFIN:  He didn't work on site, Your Honor,

17  but he did work on Aaron Thomas's account for Supreme

18  Staffing.

19          THE COURT:  Okay.  So --

20          MS. GRIFFIN:  He was directly involved in placing

21  temporary workers at Aaron Thomas.

22          THE COURT:  Right.  Now, he has -- does he have a

23  competing business now, Moore Advanced Staffing?

24          Is that what you were saying, Ms. Isom-Thompson?

25  I didn't quite understand that.

UNREDACTED TRANSCRIPT

1              MS. ISOM-THOMPSON:  That -- Your Honor, he came

2      to Aaron Thomas Company and dropped off this -- a business

3      card trying to solicit work from them for that entity I just

4      named.

5              THE COURT:  Okay.  So trying to -- you said work,

6      but do you mean contract where he would place employees at

7      Aaron Thomas?  What are you saying?

8              MS. ISOM-THOMPSON:  That's what we believe he was

9      asking.  So it's Moore Advanced Staffing, LLC is the name on

10     the business card.  So it appears that he wanted to work with

11     Aaron Thomas Company to place temporary employees at its

12     locations.

13             THE COURT:  Now, does he place -- this sounds not

14     so great, but does he place primarily Hispanic employees or

15     bilingual employees?  What did you understand?

16             That's Ms. Isom-Thompson.  I'm sorry.

17             MS. ISOM-THOMPSON:  That's all right.  Your

18     Honor, I'm not certain.  I don't think that he represented

19     that he was placing any certain type of temporary workers

20     when he dropped off his business card.

21             THE COURT:  Does he have a website?

22             MS. ISOM-THOMPSON:  I believe that there was one

23     listed on the business card.  It looks like www --

24             MS. GRIFFIN:  Your Honor, this is Ms. Griffin.  I

25     can provide some clarity.  After Francisco Alvarez was

UNREDACTED TRANSCRIPT

1  terminated from Supreme Staffing, he went to work for another

2  staffing company.  That's Moore Advanced.  That's not his

3  independent company.  And so he worked at Moore Advanced

4  doing the same thing he was doing for Supreme Staffing

5  placing temporary workers.

6           THE COURT:  All right.  So he went to work --

7  I'm sorry.  What was the other staffing company he went to

8  work for?

9           MS. GRIFFIN:  Moore Advanced.

10          THE COURT:  Oh, Moore Advanced?  Does he own

11 that?

12          MS. GRIFFIN:  No, Your Honor.

13          THE COURT:  Is he still there as far as you know?

14          MS. GRIFFIN:  No, Your Honor.  He left there, and

15 that's when he began opening his own company.

16          THE COURT:  And his own company does what?  I

17 think you told me, but now I'm a little confused.  I'm not

18 certain.

19          MS. GRIFFIN:  It's the same type of work.  He's

20 just doing it for himself.  He's an entrepreneur.

21          THE COURT:  Okay.  For himself?  And you're

22 getting -- we're getting the name for his company somewhere.

23          Mr. Busey, while we're having this conversation,

24 did you go ahead and check the website?

25          MR. BUSEY:  I think Ms. Todd (phonetic) with

**UNREDACTED TRANSCRIPT**

1    Aaron Thomas was checking.  Again, this is the first I've

2    heard that Mr. Alvarez dropped a card off at Aaron Thomas,

3    but I do have information about his departure from Supreme

4    Staffing that I would be happy to share with the Court.

5                THE COURT:  Well, tell me about it.  We're not

6    going to go forever, but this is important to share

7    information for everybody.

8                MR. BUSEY:  Yes, Your Honor.  So the Moore

9    Advanced Staffing, it's M-O-O-R-E, I believe is the spelling.

10   So they are a Supreme Staffing competitor in the area.

11   They're a Memphis staffing company.

12               Mr. Alvarez was recruited over to Moore Advanced

13   Staffing on the promise that he would be able to bring over

14   Supreme Staffing accounts and employees.

15               Supreme Staffing found out about this, confronted

16   Mr. Alvarez about it.  He admitted to it, and at that time,

17   Supreme Staffing said that they were letting him go.  My

18   understanding, just based on our investigation to date, is

19   that he was subsequently let go from Moore Advanced Staffing

20   because he could not fulfill his promise at least of bringing

21   over Supreme Staffing's accounts.

22               THE COURT:  Okay.  Now, you have -- you,

23   obviously -- well, I say this.  I assume.  You have here in

24   Memphis his complete personnel file; is that right?

25               MR. BUSEY:  Yes, Your Honor.  He was a direct

UNREDACTED TRANSCRIPT

1    employee of Supreme Staffing, so we have his personnel

2    documents, and they were largely provided to the EEOC during

3    the administrative process as well.

4              THE COURT:  Okay.  I was -- I didn't know that.

5    And did he have an exit interview or something in which --

6    did he acknowledge in any way that he had gone to Moore

7    Advanced Staffing?

8              MR. BUSEY:  He did, Your Honor.  I apologize.  I

9    didn't mean to interrupt.

10              THE COURT:  No, you're fine.

11              MR. BUSEY:  He did, Your Honor.  It was -- he

12    spoke with Mr. Borja, the owner, Eduardo Sanchez Borja.  He

13    spoke with him about it.  And even during the administrative

14    process, we submitted declarations to that effect.

15              THE COURT:  Okay.  All right.

16              And so, Ms. Griffin, you're aware of the issue as

17    to Alvarez, right?

18              MS. GRIFFIN:  We are, Your Honor.  We dispute

19    Defendant Supreme's account of events.

20              THE COURT:  I'm sorry, say again.

21              MS. GRIFFIN:  I said, yes, Your Honor, we are

22    aware of those declarations.  We are aware of Supreme's

23    position.  We dispute that version of events, and we think

24    that it's a pretext for discrimination, and those claims are

25    what we are arguing --

UNREDACTED TRANSCRIPT

1          THE COURT:  Well, I suppose I'm asking a slightly
2    different question.  Are you aware of the fact that he had
3    approached Moore Advanced Staffing and had indicated that he
4    would be able to bring over Supreme Staffing clients?  Are
5    you aware of that?
6          MS. GRIFFIN:  We are aware that that's Supreme's
7    position.  We disagree with the position.  We disagree with
8    their version of the events.
9          THE COURT:  Well, the question is:  What's the
10   proof going to be?  And so do you have a statement
11   from Alvarez -- a statement from Alvarez about the
12   circumstances of his departure from Supreme Staffing?  Is it
13   a signed statement?  Or maybe not signed, but hopefully
14   signed.
15         MS. GRIFFIN:  We don't have a signed statement.
16   We have our internal work product based off conversations
17   with Mr. Alvarez regarding that version of events.
18         THE COURT:  Okay.  Okay.  So our key witnesses so
19   far perhaps are Alvarez, and then we have the -- our lady
20   whose name I continue to probably not pronounce correctly,
21   but Palacios.  And those are key witnesses, just as to the
22   basic facts in the case.  And we don't have anyone else who
23   has indicated that they had a racial preference or
24   discriminatory preference so far.
25         Now, let's talk about e-mail discovery.  How much

UNREDACTED TRANSCRIPT

1    e-mail discovery do you have, Ms. Griffin?  Because I'm -- I

2    haven't -- because I don't see the investigative file, so I

3    don't know.

4                MS. GRIFFIN:  We have some e-mail going back and

5    forth between Aaron Thomas, Supreme; Mr. Alvarez, Supreme;

6    and Aaron Thomas.  And so we know that there's going to be a

7    great deal of e-mail discovery.  We believe that there might

8    be some electronic discovery in terms of cell phones, but

9    that's -- we're not sure yet.

10               THE COURT:  Okay.  All right.  That sounds like

11   we've got a lot to do.

12               Now, who at --

13               Ms. Isom, who at Aaron Thomas was in charge of

14   setting the policy regarding temporary employees or -- I'm

15   not sure how we -- individuals who would be placed by a

16   staffing service?

17               MS. ISOM-THOMPSON:  I believe there was -- there

18   were written agreements between Supreme and Aaron Thomas

19   Company, so that there's that agreement that helps set the

20   policy.  And then with regard to implementation, I think that

21   we've identified the three top individuals there who would

22   have been responsible for oversight over the placement of

23   temporary workers at the two locations.

24               THE COURT:  Okay.  And I've got those names, so

25   that's not a question here.

UNREDACTED TRANSCRIPT

44

1          Okay.  What we've done is we're going to go

2    through and set a schedule for you.  Obviously, you must do

3    these things.  And if you do not do them, your case will not

4    be in -- will not be in compliance with the Federal Rules of

5    Civil Procedure.  So everybody should be anxious to do this

6    correctly.

7          And let me do one more thing here, and then we'll

8    wrap it up.  In connection with 26(a)(1), I've got, of

9    course, the report of the parties' planning meeting.  I

10   understand that.  There's a joint employer question.  This

11   is -- it's all set out really pretty well.

12         You've got a couple of things.  Your initial

13   disclosures, we have to set a date for that.  Obviously, they

14   have not all been made.

15         Is that -- that's right, Mr. Busey, right, we

16   haven't made complete initial disclosures?

17         MR. BUSEY:  No, Your Honor.  But I believe the

18   parties have all made their initial disclosures by the

19   February 2nd deadline.

20         THE COURT:  Well, what I'm saying to you is I've

21   had a discussion with you today, and it's pretty obvious that

22   they haven't been adequately made.  Let me put it -- is that

23   fair to say?

24         MR. BUSEY:  Yes, Your Honor.  I think that some

25   information today has certainly helped to help the parties

UNREDACTED TRANSCRIPT

1    address amending or supplementing those disclosures, yes.

2              THE COURT:  Right.  Because I can tell that

3    everybody has not disclosed what they're required to under

4    the rules.

5              Ms. Isom-Thompson, do you think you have?  Do you

6    want to go on the hot seat, or do you want to just admit you

7    haven't?

8              MS. ISOM-THOMPSON:  I believe Aaron Thomas

9    Company was -- has been in compliance with 26(a)(1).

10             THE COURT:  I'm not -- I'm not -- that's a legal

11   conclusion.  I'm -- let's talk about -- how many witnesses

12   did you say were critical witnesses in this case, not even

13   critical, that are people who you might call who would have

14   information that might be called as witnesses in this case?

15   How many did you list on your 26(a)(1) disclosure?

16             MS. ISOM-THOMPSON:  We listed three, the same who

17   are listed in the proportionality assessment.

18             THE COURT:  And you know that's totally

19   inadequate, right?  Totally inadequate.

20             MS. ISOM-THOMPSON:  Your Honor --

21             THE COURT:  I don't want to argue with you.  I

22   don't have time to argue.  I've got a lot to do today.

23             It is totally inadequate, I will just tell you

24   that.  And I understand that because the practice often has

25   been to not do what the rule requires.  And I'm not saying

1    you did something wrong.  You just did what a lot of people

2    do.  What you have to do -- I'm not -- this is for everybody.

3    It's not just for you.

4                Under 26(a)(1), you have to disclose the

5    individuals with knowledge that may be -- well, let me pull

6    one more book here -- that you might use -- may use in the

7    case.

8                Now, it's -- it's -- if you don't do it, you will

9    not be able to call them, period.  This is not a -- this is

10   not an idle exercise or preliminary exercise.  This is a

11   critical part of the case.  And it's there for a very

12   specific reason and has been there for now, oh, my goodness,

13   almost nine years, when they changed the rule and also when

14   there were some other pronouncements about what needed to be

15   done.

16               So you have to name -- provide the name and, if

17   known, the address and phone number of each individual likely

18   to have discoverable information.  That's not -- I'm not

19   saying they're going to be a witness -- along with the

20   subject of that information that the disclosing party may use

21   to support its claims or defenses, unless the use would be

22   solely for impeachment.

23               Now, I may require all of you to file your

24   26(a)(1) disclosure with me just so you'll know that

25   somebody's checking this out.  I may not because it's more

UNREDACTED TRANSCRIPT

1    paper than we want, but I might.

2              Now, that means that if you don't do this, if you

3    do not exercise due diligence at this time and, obviously,

4    Aaron Thomas has a number of people that are going to fall in

5    this category.

6              And Supreme Staffing, you do too, right,

7    Mr. Busey?

8              MR. BUSEY:  Yes, Your Honor, we do.  I will say

9    that for Supreme Staffing, I know Aaron Thomas mentioned that

10   they've received a list of the individuals.  Supreme Staffing

11   has not received a list like that.  We are working still with

12   a bit less information than discussed about Aaron Thomas

13   today.

14             THE COURT:  Right.  I understand that.  And the

15   EEOC has got to do this.  This is not an idle requirement.

16   Now, if the EEOC thinks they're not required to do it, they

17   need to tell me why they're not and I'll listen.

18             MS. GRIFFIN:  No, Your Honor.

19             THE COURT:  Yes, ma'am, go ahead.

20             MS. GRIFFIN:  I will say this, the EEOC disclosed

21   over 76 individuals to both Supreme Staffing and Aaron Thomas

22   by February 2nd.  Those 76 people are just the -- like the

23   rules require, people who we believe have relevant

24   information.

25             To Ms. Isom-Thompson's point earlier, we need

UNREDACTED TRANSCRIPT

1  discovery to identify exactly, you know, out of the 60 or so

2  class members identified who actually work at Aaron Thomas or

3  who was terminated or received a lesser paying position.  And

4  we'll supplement those records as soon as we get the

5  information to supplement with.

6            The Commission does note that Supreme Staffing

7  sent their initial disclosures over on February 2nd, but

8  those initial disclosures did not contain the names of any

9  individuals who had relevant information.  Rather, they

10  contained categories of people.

11           So we're not in any better position than we were

12  once we started, and this is a routine practice that Supreme

13  Staffing has done across all three cases.  They have not

14  given us the names of anybody.

15           THE COURT:  I've got you there.  I'm all for

16  getting this done -- redone.  We'll get it done right.

17           Mr. Busey, she didn't like what you disclosed, so

18  tell me about that if you want to.  But we're going to get

19  this done because I've got something else coming up.

20           MR. BUSEY:  I understand.  I will be brief.

21  There were categories because we don't know what the EEOC is

22  claiming, which I -- against Supreme Staffing -- which I feel

23  like, today, I think has shown that.  So we identified, for

24  example, whomever received these discriminatory requests.

25  People who are claimed to have -- be seeking relief against

UNREDACTED TRANSCRIPT

1    Supreme Staffing.  The EEOC personnel involved.  And so no

2    contention that we can't do better, but it is a product of

3    the information that we know from the EEOC, and more

4    specifically, what we still don't know.

5                THE COURT:  Right.  And I understand all of

6    your -- we're going to get this moved along in a better way,

7    and I fully under- --

8                Ms. Griffin, I think you've disclosed a lot of

9    information too, and I understand you're going to

10   recategorize it so that they can tell what category these

11   individuals fall in, and there may be some additional

12   supplementation that you will need to do too.  I can't tell

13   that.

14               But the rule is that you have to provide to the

15   other parties, that is each of you, each party, the name and,

16   if known, the address and phone number of each individual

17   likely to have discoverable information -- I've gone over

18   this once already -- along with the subject of that

19   information that the disclosing party may use -- and the

20   critical word is may -- to support its claims or defenses,

21   unless that use would be solely for impeachment.  Do not hang

22   your hat on solely for impeachment.  That is not going to

23   work.  These are individuals that you might use.

24               And you must do a diligent search.  You must

25   be -- really do due diligence on this question because this

UNREDACTED TRANSCRIPT

1    is critical.  Now, let me tell you -- I don't think this
2    group has -- I tell this story too often, but it's the truth.
3            We certainly tried a case in Nashville, now a
4    little while ago, not that long ago, right before COVID, in
5    which a party, a defendant, thought they would be able to
6    deal with defense numbers in terms of accounting numbers on
7    claims.  And they failed to disclose certain people within
8    the defendant's organization.
9            When the case went forward, after the person who
10   they thought could answer all the questions testified, they
11   realized that it was totally inadequate, that the person
12   simply didn't know.  And, therefore, they wanted to bring in
13   a person from an accounting department or who was doing
14   accounting work for the defendant, one of the defendants.
15           And, of course, the plaintiff objected properly
16   so.  And the Court probably should have objected itself
17   because it would have made things much more difficult.  But
18   they objected, and the objection had to be sustained.  The
19   person was not able to testify.
20           I direct this a little bit toward, well, really,
21   all three of you, but really, Ms. Isom-Thompson, you've got
22   to do better or you won't -- you'll be in a really tough
23   spot.  You've got to come up with everybody, not just the
24   ones that you want to select and disclose.  If you do -- if
25   you take the second approach, you run a terrible risk for

UNREDACTED TRANSCRIPT

1  your client, and so let's not do that.  Let's just get it

2  done right.

3        So all of you are going to be given an

4  opportunity to -- or not an opportunity -- a timeline to

5  supplement your initial Rule 26(a)(1) disclosures.  And if

6  you need more time, you need to ask for it, and we'll give it

7  to you.  And, of course, EEOC is going to make some further

8  disclosures.  We're going to get a lot more information.  So

9  that's the first thing.

10        The second thing is you are required to

11  provide -- to identify a copy or description by category and

12  location -- and I don't do that in these cases.  You have to

13  provide a copy.  So I'm going to say that's not one where

14  you -- I haven't heard anything to make this case so

15  voluminous that it shouldn't be done -- of all documents,

16  electronically stored information, and tangible things that

17  the disclosure party has in its possession, custody, or

18  control -- so EEOC, you've got a mountain of work here,

19  maybe -- and may use to support its claims or defenses unless

20  it will be used solely for impeachment.

21        Now, this is to reduce the expense to all of the

22  parties of the laborious process of requests for production

23  of documents and so forth.  It's really to cut that way down

24  so that you're basically giving them a lot of documentation

25  that will be information that you would use in your case or

UNREDACTED TRANSCRIPT

1    might use.  Of course, and the word is "may."

2              The third thing is -- and this is not -- well, we

3    can talk about it -- but you also have computation of damages

4    and so forth that's required.  And those are basically it.

5              So look again at Rule 26(a)(1), 2, and 3 and I am

6    going to just briefly ask.

7              But, Ms. Griffin, I'm going to have to kind of be

8    a little quick on this.  The relief that you're seeking, it's

9    in the complaint, but what are you seeking as relief in this

10   case?  And I think we all know.

11             MS. GRIFFIN:  Compensatory damages, back pay.  If

12   we proceed to trial, we'll be seeking punitive damages.  We

13   also are seeking injunctive relief.

14             THE COURT:  Sure.  Exactly.  And do we have a

15   preliminary calculation because I think -- I'm sure you've

16   done some work on that?  What's your number looking like?

17   And I'm not -- you're not -- you know, you're not capped by

18   it.  It's just you got to do a calculation.

19             MS. GRIFFIN:  We don't have a preliminary

20   calculation.  We believe it's something that a jury would

21   decide, and so we haven't sat down and ran numbers.  We know

22   that there are compensatory damages cap on this case, which

23   is 300,000, I think, per claimant.

24             THE COURT:  That's true.

25             MS. GRIFFIN:  But we haven't done a precise

UNREDACTED TRANSCRIPT

53

```
 1   calculation.
 2              THE COURT:  Okay.  And I understand that.  And
 3   the reason that this last provision is in this section is to
 4   facilitate the ability of the parties to understand the
 5   claim.  Because if somebody -- and I understand you said you
 6   may be seeking a lot.  I'm just going to do a little quick
 7   number here.  You might be seeking as much as -- it will be a
 8   lot of money -- you might be seeking $18 million, right?
 9              MS. GRIFFIN:  Correct, Your Honor.
10              THE COURT:  Right.  And the reason we do this
11   calculation, it's got to be, you know, not just a guess.
12   It's not an ad damnum.  It's a real one based on numbers.
13   It's to facilitate the resolution of cases if possible, and
14   also it's just required disclosure.
15              Okay.  Now, I'm going -- what I'm going to do, is
16   we're going to -- initial disclosures, they will be -- I'm
17   going to say -- I'm not sure if Phase 1 has even been
18   completed.
19              Well, okay.  Some 26(a)(1) disclosure may have
20   been made by the parties, or has been made by the parties.
21              Is that right, Mr. Busey?
22              MR. BUSEY:  Yes, Your Honor.  I think each party
23   would respectively maintain that they -- we've complied with
24   what they understood the rule to require.  And we did that by
25   the 2nd.
```

UNREDACTED TRANSCRIPT

1          THE COURT:  Right.  We don't need to argue about

2    that because I'm not going to.  The fact is that it's pretty

3    clear that we have some room for improvement.  So --

4          MR. BUSEY:  A hundred percent, Your Honor.  I

5    didn't mean to imply otherwise.

6          THE COURT:  Oh, I know.  A lawyer has always got

7    to say we didn't do anything wrong.  That's okay.  I got the

8    we didn't do anything wrong part.

9          MR. BUSEY:  Yes, Your Honor.

10         THE COURT:  But what we're doing is trying to get

11   everybody in a better position.  So what I'm going to do is

12   there will be a Phase 1A, which is to supplement and/or

13   expand on disclosures already made because you've made some.

14   And that will -- really does mean -- and I hope everybody has

15   got this down.

16         Because in that list of 60 or 70 people,

17   Ms. Griffin, you supplied all of the address and phone number

18   information that you had; is that right?

19         MS. GRIFFIN:  We did not for the claimants.  We

20   asked that they contact them through EEOC counsel just

21   because they are class members, and we employ privileged

22   communication with them.  We can provide it.

23         THE COURT:  You have to really, and I understand

24   what you're saying.  And if it's inappropriate contact, you

25   know, if somebody is doing something wrong on the other side,

1  let me know about it.  I have a feeling they probably won't

2  do anything wrong if they know we're going to talk about it.

3          So we're going to have Phase 1A, which is to

4  supplement, and I'm just going to supplement the initial

5  disclosures made by the parties to the degree the parties

6  have made those discloses.  So that's going to be A1.

7          Now, I'm going to give you -- you don't have --

8  you need some time on this, folks, and you need to tell me.

9  I would usually give you at least 14 days from today.  That

10  may not be enough time, and if you need more time later on --

11  because I know, Ms. Griffin, you're going to have some work

12  here on this, for example.  I know that -- I know that

13  Mr. Busey has got some work.  I know each one of you do.

14          Is 14 days enough, Ms. Griffin, to get this done

15  or do we need 21?

16          MS. GRIFFIN:  Your Honor, can we have 21 days

17  now?

18          THE COURT:  Absolutely.  Absolutely.  Well, let

19  me make sure.

20          Ms. Isom-Thompson, is that going to help you out?

21          MS. ISOM-THOMPSON:  Yes, Your Honor.

22          THE COURT:  And, Mr. Busey, okay for you?

23          MR. BUSEY:  Yes, Your Honor.

24          THE COURT:  Okay.  So 21 days from now.

25          CASE MANAGER:  February 28th.

UNREDACTED TRANSCRIPT

1              THE COURT:  February 28th, easy to remember.  The
2    day before Leap Day.  Okay.  February 28th.

3              Now, I'm going to give you a Phase 2.  Now, also
4    this means that I know that they are getting the complete EEO
5    file.

6              Do we have to have a protective order in this
7    case, Ms. Griffin?

8              MS. GRIFFIN:  Not from the EEOC's perspective.
9    I'm not sure from defendants.

10             THE COURT:  Okay.

11             Mr. Busey, I don't know if you need one or not.
12   Do you need one?

13             MR. BUSEY:  To the extent it may help with
14   productions and limiting redactions and allowing the parties
15   to go perhaps faster in that sense, maybe.  But we don't have
16   a confidentiality or business need off the top of my head
17   from Defendant Supreme's standpoint.

18             THE COURT:  The only thing I'm concerned about is
19   personal identifiers.

20             Will there be any personal identifiers in the
21   material that might be supplied, Ms. Griffin, on this?

22             MS. GRIFFIN:  We may have some social security
23   numbers, so we redact those.  And like I said earlier, we're
24   more than willing to produce our privilege log as required by
25   the federal rules if we do have any redactions.

UNREDACTED TRANSCRIPT

1          THE COURT:  Let me just recheck real quickly with

2   Ms. Isom-Thompson.  You may not need a protective order.  I

3   was just putting it down as a possibility.

4          You may not need one.  What do you think?

5          MS. ISOM-THOMPSON:  Your Honor, I think at this

6   stage, I can't anticipate that one will definitely be needed,

7   but it may be something where during the course of discovery,

8   there's a request made that necessitates one.  I'm just not

9   sure at this stage.

10          THE COURT:  Okay.  What I'm going to do is I'm

11   going to give you a date -- what I'm saying is this, let's

12   get just a skeletal protective order in.  That way you can

13   come back and supplement that later on.  There are going to

14   be a few things I think that -- I'm just thinking about

15   commercial information.  Maybe not.

16          But as to Aaron Thomas, Ms. Isom,

17   Ms. Isom-Thompson, won't there be ultimately some of that

18   information that you might end up needing being required to

19   disclose?

20          MS. ISOM-THOMPSON:  I'm just -- I'm not certain.

21   It could be something confidential with regard to business

22   operations.  It could be something proprietary, some -- I

23   don't know confidential information of employees.  I'm not

24   certain.

25          THE COURT:  Right.  I'm not either.  And what I'm

UNREDACTED TRANSCRIPT

1    going to do is I'm going to give you a protective order date

2    to file with the Court on February 28th.  And the parties

3    have the ability to say, you know, we agree we don't need a

4    protective order.  If you file that on the 28th, I don't

5    care, it's fine with me.

6                But I think as you look at this and as you

7    perhaps talk with some executives in the companies, that they

8    may -- there may be something they need to have a protective

9    order on, so we're going to put that down as a protective

10   order deadline.  And I understand that it's not going to

11   be -- may not be one.

12               Okay.  Then, Phase 2, because you've got a lot of

13   electronic disclosure that will need to be made possibly.  I

14   know you've got -- you've already got your procedure agreed

15   on, I think.

16               You've got your electronic disclosure procedure

17   agreed on, Mr. Busey?

18               MR. BUSEY:  I believe the parties have -- we're

19   using the standard --

20               THE COURT:  Yes.

21               MR. BUSEY:  -- requirements in the meantime, and

22   then we'll revisit if we get further into it.

23               THE COURT:  Okay.  You know, you're going to have

24   to cough up a lot of e-mails just one way or the other.

25               By the way, Mr. Alvarez, has his phone been

UNREDACTED TRANSCRIPT

```
 1   examined that he was using at the time, and do we have a --
 2   do we have something on that from either the service provider
 3   or Mr. Alvarez?  What about that?  I know you don't represent
 4   Mr. Alvarez, but it's a little complicated.
 5                 Ms. Griffin?
 6                 MS. GRIFFIN:  It's a little complicated, Your
 7   Honor.  No, his phone has not been imaged or collected.
 8                 THE COURT:  Okay.  And I know it's a little
 9   complicated there.
10                 Are you going to need that, Mr. Busey?
11                 MR. BUSEY:  I would imagine, Your Honor.  I don't
12   want to speak for Aaron Thomas, but at least across any one
13   of the three cases, I think Supreme can answer that question
14   in the affirmative.
15                 THE COURT:  Okay.
16                 And, Ms. Isom-Thompson?  Not quite the same for
17   you.
18                 MS. ISOM-THOMPSON:  Yes, Your Honor.
19                 THE COURT:  I think we're going to have to do
20   that.
21                 And also we're going to have to get some computer
22   material as to the employee who was -- who we've identified
23   as the person who sent the disturbing, apparently, message in
24   this case.
25                 So has that computer been isolated?  A little
```

UNREDACTED TRANSCRIPT

1    time has gone by here.

2             MS. ISOM-THOMPSON:  Your Honor, we have a

3    litigation hold in place.  This is -- and now that we are

4    aware of the identity, we can proceed with collection.

5    Although -- yes, so we can go from here.

6             THE COURT:  Okay.  So with the supplement on your

7    26(a)(1), we've got the date of February 28th.  What we're

8    going to do is have a Phase 2, which is to complete document

9    production.  That's a lot, folks.  And we may need some -- we

10   need to work on that.  Complete required document disclosure.

11            And also, EEOC, we'll have to work on this issue

12   about calculation on damages.  So I'm going to put those

13   documents -- I say documents and things.  I mean, it could be

14   something else.

15            And then damages, and I know that's a task.  I

16   understand it.  And I usually -- this is an important case.

17   We need to put that out long enough for you to get that done

18   in a satisfactory way to work with everybody.

19            And so, Ms. Griffin, I think I need to give

20   you -- I think I need to give you at least another 21 days

21   after the 28th of February, and I may need to give you 28.

22            MS. GRIFFIN:  Your Honor, we definitely prefer

23   the 28 days.

24            THE COURT:  Okay.

25            MS. GRIFFIN:  That will allow us to collect all

UNREDACTED TRANSCRIPT

1  the information and produce it.

2          THE COURT:  Absolutely.  March 27th.  Is that

3  right?

4          CASE MANAGER:  March 27th.

5          THE COURT:  They're helping me out here.  Okay.

6  So that's --

7          MS. GRIFFIN:  Thank you, Your Honor.

8          THE COURT:  Absolutely.  And, everybody, just be

9  aware that, you know, Supreme Staffing is going to have

10 documents and things that you will -- you say, well, I don't

11 think I'll ever have -- you've got to treat this like you're

12 getting ready for trial because if you don't, you miss the

13 point on 26(a)(1).

14         By the way, there was a wonderful piece -- the

15 reason I refer to December of 2015 is that's when Chief

16 Justice Roberts actually emphasized what we need to do in

17 this type of conference, and we've been trying to follow that

18 since then.  And so I think --

19         Ms. Isom-Thompson, anything wrong with that?  I

20 think you're going to have some digging to do here, right?

21         MS. ISOM-THOMPSON:  Yes, Your Honor.

22         THE COURT:  I understand.

23         Okay.  Motions to amend pleadings.  Well, we've

24 got that down as April 8th.  That's okay.  I think we are

25 going to be okay.

UNREDACTED TRANSCRIPT

62

1          Motion to join parties, does the EEOC agree that

2     we have everybody we need at least for this case; is that

3     right?

4          MS. GRIFFIN:  Yes, Your Honor.

5          THE COURT:  Okay.  I think -- I'm just going to

6     say the relevant parties are before the Court.  Does anybody

7     think differently?

8          Mr. Busey, you think somebody else ought to be in

9     here?

10         MR. BUSEY:  No, Your Honor, no one else from our

11    standpoint.

12         THE COURT:  Okay.  Well, who knows, maybe

13    Ms. Isom-Thompson thinks we should.  Anybody else we need?

14         MS. ISOM-THOMPSON:  Not that I can think of at

15    this time, Your Honor.

16         THE COURT:  Okay.  Well, remember, Rule 16

17    conference, we have to be ready to answer those questions.

18    But we're just going to say relevant parties before the

19    Court.  I believe that to be correct.

20         Motions to amend pleadings.  We've got the 8th of

21    April.  That's fine.  You may find some things you need to

22    amend, and if you need a small amount of additional time

23    there, just let us know.  And also confer with each other in

24    advance.

25         Motions to dismiss, May the 7th of 2024.  We have

UNREDACTED TRANSCRIPT

 1    that already.  It doesn't look like we're dismissing here, so

 2    just don't count on that and don't wait on it because it's

 3    not going to happen likely.  I'll leave it at that.

 4              Okay.  Alternative dispute resolution.  It's not

 5    required by me.  I don't do it.  And I also understand that

 6    you have a conciliation process.  In this process, it's built

 7    in.  It's already occurred.  You all know how to talk to each

 8    other, but if at some point you want to approach it in a

 9    different way.  Right now, you have by May 31, 2024.

10              I'm going to tell you something.  That's not

11    going -- that's going to be too early in this case because

12    you've got to take the depositions of a couple of these key

13    witnesses -- key individuals first, and then do some

14    follow-up there.  So do you want some slight additional time?

15    I know you're trying to follow the pattern here.  What do you

16    think about it?

17              MS. GRIFFIN:  Yes, Your Honor.

18              THE COURT:  Yes, ma'am.

19              MS. GRIFFIN:  We could do additional time.  We

20    want to make sure that mediation is, you know, fruitful, and

21    so we wouldn't mind conducting discovery first before we

22    delve into that again.

23              THE COURT:  Absolutely.

24              Do you have a projected time that might be

25    useful?

UNREDACTED TRANSCRIPT

1          I'm just going to ask Mr. Busey since he's also
2    going to have to deal with this.
3          MR. BUSEY:  I'll be candid, Your Honor.  We've
4    twice mediated with the EEOC, and so I'll defer to Aaron
5    Thomas given that this is their first attempt at mediation
6    and kind of their preferred timeline.  We're ready whenever
7    either other party would like to move forward with it.
8          THE COURT:  Well, I don't think anybody is ready
9    right now.  That's what I heard from everybody.  But that's
10   okay.  You can believe that.
11         Let's go -- let's go to -- let's go to
12   Ms. Isom-Thompson.  When do you want to do this?  Do you want
13   to do July the 19th?
14         MS. ISOM-THOMPSON:  That sounds good to us, Your
15   Honor.
16         THE COURT:  Okay.  I'm just -- I know that --
17   we've got a lot to disclose here and until you nail down
18   these key witnesses, nobody is going to know how this should
19   go.  So at least I sure wouldn't.  Maybe you're better at
20   this than I was.
21         But you need to know what Alvarez says.  You need
22   to get the whole story about Alvarez.  You need to know what
23   the individual's accused of sending the material.  You need
24   to see what that e-mail looks like.
25         By the way, do you have a copy of the e-mail?

UNREDACTED TRANSCRIPT

1  Ms. Griffin, I think you did.  Is that right?

2           MS. GRIFFIN:  Yes, Your Honor, it's part of our

3  investigative file.

4           THE COURT:  Right.  And when did she send that

5  e-mail?

6           MS. GRIFFIN:  Hold on, Your Honor.  I can pull it

7  up.  I have to go to our documents.

8           THE COURT:  I tell you what I'm going to do

9  because I've got an 11 o'clock.  Everybody understands that's

10  a key document.  Would you agree that that's a key document?

11           Would you agree with that, Ms. Isom-Thompson?

12           MS. ISOM-THOMPSON:  Your Honor, I would

13  particularly if the language in the e-mail is that she is

14  requesting bilingual employees.

15           THE COURT:  I think you better get the worst

16  they've got, right?  You want their silver bullet that's

17  going to knock you out.  You want to know it now, right?

18           MS. ISOM-THOMPSON:  Correct, Your Honor.

19           THE COURT:  So, Ms. Griffin, let them have it,

20  whatever it is.  And I understand what you're saying.  You

21  just need to see what it says.

22           Do you have more than one e-mail, Ms. Griffin, on

23  that?

24           MS. GRIFFIN:  I believe we do, Your Honor.  It's

25  part of an e-mail chain.

UNREDACTED TRANSCRIPT

1          THE COURT:  Okay.  Well, obviously, that's

2    critical, and that's going to be -- we've got the deadline on

3    that.  You may want to give that to them a little early if

4    you can, but you've got that deadline that we've established,

5    March the 27th.

6          MS. GRIFFIN:  Yes, Your Honor.

7          THE COURT:  Okay.  Alternative dispute

8    resolution.  You've got a mediator there, that's fine.  The

9    Court doesn't really -- I think it's great to mediate, and

10   it's wonderful.  But I also think that you're all entitled to

11   a jury trial -- a fair jury trial.  I will get you a fair

12   trial here.  So if you want to know about that, go to our

13   website or come over here and watch us do jury selection

14   sometime.

15         Completing all of discovery, December 20, 2024.

16   Are you going to make that deadline, Mr. Busey?

17         MR. BUSEY:  I think it might be tight but

18   aspirational, is what I would say.

19         THE COURT:  It's pretty tight.

20         What do you think about that, Ms. Isom-Thompson?

21         MS. ISOM-THOMPSON:  Your Honor, in light of the

22   phases that we're going to be putting into place for

23   discovery, it might be good to move that back just a little

24   bit.

25         THE COURT:  What do you think, Ms. Griffin?

UNREDACTED TRANSCRIPT

1    Sounds like maybe we ought to.

2                MS. GRIFFIN:  I think so too, Your Honor.

3                THE COURT:  Do you want to go to --

4                MS. GRIFFIN:  Push it back some.

5                THE COURT:  Absolutely.  Do you want to go to

6    February -- sometime February 2025?  I'm looking to staff to

7    give me a date in February.

8                CASE MANAGER:  February 2025 would be --

9                THE CLERK:  February 21st or the 14th?

10               THE COURT:  It should be -- I just don't have

11   2025.  I assume it's going to be on --

12               THE CLERK:  February 21st is a Friday.

13               THE COURT:  February 1st?

14               THE CLERK:  21st.

15               THE COURT:  The 21st, that sounds good.

16   February 21st.  We'll move it.  Now, this is a real deadline.

17   You know, everybody looks at these and, oh, it's not real,

18   we'll move it.  The answer is, we really don't want to move

19   it.  We know how important it is that these issues be

20   addressed and be addressed seriously, and so we're going to

21   move it.

22               Depositions would all be completed certainly

23   before that time.  Well, the 21st of February 2025.  Now, you

24   get your first ones, though.  I'm really -- I'm kind of

25   telling you guys you've got to take these couple of right

UNREDACTED TRANSCRIPT

1    away.  Written discovery has to be completed, but it will be

2    earlier.  I'm going to leave the written discovery as

3    December -- let me figure out that date.  What's December

4    the 8th, 2024?

5                    THE CLERK:  December the 8th is a Sunday.

6                    THE COURT:  We'll not do that.  December 9th?

7                    THE CLERK:  That's a Monday.

8                    THE COURT:  We will do a Monday.  Okay.  So we're

9    going to change that a little bit.

10                    Now, expert disclosures.  We're going to have

11    experts in the case, Ms. Griffin?

12                    MS. GRIFFIN:  Yes, Your Honor.

13                    THE COURT:  Okay.  And what are they going to be

14    about?  I know a damages expert.

15                    MS. GRIFFIN:  The physical evidence.

16                    THE COURT:  Right.  But you also have damages

17    expert, right?

18                    MS. GRIFFIN:  Correct.

19                    THE COURT:  You're going to have three experts.

20                    MS. GRIFFIN:  No, Your Honor.  We only plan to

21    have one expert who will testify about statistical data.

22                    THE COURT:  Okay.  That might be an issue in the

23    case.

24                    Is that going to be an issue in the case,

25    Mr. Busey?

UNREDACTED TRANSCRIPT

1          MR. BUSEY:  According to the EEOC, so, yes.

2          THE COURT:  Okay.  Well, okay.

3          Expert disclosures.  And that will be -- that's

4   listed as September 21.  I can leave that on that date.

5   Everybody knows where they're going here, or I can move it a

6   little bit.

7          Should I move it a little bit, Ms. Griffin?

8          MS. GRIFFIN:  Yes, Your Honor.  We'd appreciate

9   it just in line with the other movement that we had.

10         THE COURT:  It won't be quite as much.  It will

11  be October -- and I'm looking for that date.  October the --

12         THE CLERK:  We can do --

13         THE COURT:  Should be about the 22nd.

14         THE CLERK:  The 22nd is a Tuesday.

15         MS. GRIFFIN:  Thank you, Your Honor.

16         THE COURT:  Okay.  October 22nd.

17         And then we're going to have the defendants.

18  Now, it's a little complicated as to who is on first here,

19  but that's going to be in November.  You can all see what's

20  coming up.  That should actually be December -- December

21  the -- okay.  That's the 9th if you've got that date on

22  there.

23         CASE MANAGER:  That's a Monday.

24         THE COURT:  Expert depositions have to be

25  completed.  Now, you can take them earlier.  These are just

UNREDACTED TRANSCRIPT

70

1    deadlines.  And that's January -- mid -- let me see.  Well,

2    no, it will work.  It's okay.  Expert depositions would

3    complete on --

4                THE CLERK:  We could do January 24th.

5                THE COURT:  No.  The complete depositions are

6    going to be February 21.  So it can be March -- what's

7    March 7th?

8                THE CLERK:  The 7th is a Friday.

9                THE COURT:  That sounds okay with me.  Okay.  All

10   right.  March 7th.

11               I have about two minutes to get to the next

12   thing.  This is a ten-day trial.  Maybe not.  Five to ten.  I

13   will know more later.  When can we try this case?  We're

14   going to set it.

15               CASE MANAGER:  Your dispositive motions are going

16   to be --

17               THE COURT:  Dispositive motions, they can file

18   them, but it's probably going to go to trial.

19               Motions to exclude experts.  We'll just put a

20   date in on that.  We'll fill that in.

21               Supplemental Rule 26(e)(2).  Now, do not get

22   confused.  Do not think when you talk to people we can just

23   supplement, and it's going to be fine.  The answer is it's

24   going to be a disaster.  The reason it will be a diaster is

25   if you didn't do due diligence when you made your 26(a)(1)

                          UNREDACTED TRANSCRIPT

1    disclosures, then you can't come back and supplement the

2    nondisclosure that you didn't make.  So it's not a chance to

3    redo.  It's just to supplement what's already there.  So

4    we'll give you a date on that also.  We'll fill those in.

5                Then, dispositive motions.  Well, they're

6    actually asking for those -- March 14th?

7                THE CLERK:  That is a Friday.

8                THE COURT:  Sure.  March 14th.  I know we're

9    giving you a lot of time on this case.  I regard it as a

10   significant and larger case that will require this time.  If

11   some of you think differently, we can change it.

12               Now, we're going to give you a trial -- the

13   dispositive motions, though, I'm just -- I think I pretty

14   much indicated, sounds like the case is -- well, we haven't

15   seen everything yet, so we don't know what Alvarez is going

16   to say.  We don't know what these individuals are going to

17   say, so it could be dissolvable.  I don't know.

18               Now, we're going to give them a trial date in

19   June.

20               CASE MANAGER:  June 23.

21               THE COURT:  June 23, jury trial.

22               Okay.  And then, pretrial conference date would

23   be two weeks in advance.

24               CASE MANAGER:  Friday -- let's do Wednesday the

25   11th.

UNREDACTED TRANSCRIPT

```
1                THE COURT:  June 11th?

2                CASE MANAGER:  At 9:30.

3                THE COURT:  At 9:30?  Probably in person.  That's

4     helpful.

5                And then joint pretrial order motions, et cetera.

6     These are for the jury instructions, voir dire, and so forth,

7     motions in limine.  Motions in limine, though, generally

8     should be filed much in advance because you're going to have

9     some in limine questions here.

10               CASE MANAGER:  June 2nd.

11               THE COURT:  June 2nd?  I'm sorry we had to hurry

12    through a little bit of that.  I really appreciate everybody.

13    I hope we made some progress in terms of disclosures.  Did we

14    do that in terms of --

15               Mr. Busey, how did we do on that?

16               MR. BUSEY:  I think we did, Your Honor, and I

17    appreciate the Court moving us through it.

18               THE COURT:  Okay.  Well, that's what we're

19    supposed to do.  I'm glad to.

20               Ms. Isom-Thompson, I got you a whole bunch more

21    new stuff to do.  Is that good?

22               MS. ISOM-THOMPSON:  Yes, Your Honor, this has

23    been very helpful.

24               THE COURT:  Okay.

25               And, Ms. Griffin, thank you so much.  It's been
```

UNREDACTED TRANSCRIPT

1    very helpful to talk with you also.  Anything else from EEOC?

2                MS. GRIFFIN:  Nothing else from the Commission,

3    Your Honor.  Thank you for your time today.

4                THE COURT:  Absolutely.  I'm going to try to get

5    to my next matter.  So, you know, we'll look forward to this

6    case moving along.  Thanks so much.

7                (Adjournment.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNREDACTED TRANSCRIPT

74

**C E R T I F I C A T E**

1

2

3

4          I, TINA DuBOSE GIBSON, do hereby certify that the

5    foregoing 73 pages are, to the best of my knowledge, skill

6    and abilities, a true and accurate transcript from my

7    stenotype notes of the TELEPHONIC SCHEDULING CONFERENCE

8    hearing held on the 7th day of February, 2024, in the matter

9    of:

10

11   EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

12   vs.

13   AARON THOMAS COMPANY, INC., and SUPREME STAFFING, LLC

14

15

16   Dated this 13th day of February, 2024.

17

18

19

20                              S/Tina DuBose Gibson
                                _____
21                              TINA DuBOSE GIBSON, RPR, RCR
                                Official Court Reporter
22                              United States District Court
                                Western District of Tennessee
23

24

25

                        UNREDACTED TRANSCRIPT