1

```
1              IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF TENNESSEE
2                       WESTERN DIVISION

3    _____
                                     |
4    EQUAL EMPLOYMENT                |
     OPPORTUNITY COMMISSION,         |
5                                    |
                   Plaintiff,        |
6                                    |
     vs.                             |   NO. 23-CV-02599
7                                    |
     AARON THOMAS COMPANY, INC.,     |
8    and SUPREME STAFFING, LLC,      |
                                     |
9                  Defendants.       |
                                     |
10   _____

11

12

13           TRANSCRIPT OF THE MOTION HEARING

14                    BEFORE THE

15          HONORABLE JON P. MCCALLA

16

17

18                      FRIDAY

19                 MARCH 15, 2024

20

21

22

23
               TINA DuBOSE GIBSON, RPR, RCR
24                   OFFICIAL REPORTER
               FOURTH FLOOR FEDERAL BUILDING
25              MEMPHIS, TENNESSEE 38103
```

UNREDACTED TRANSCRIPT

2

1                A P P E A R A N C E S

2

3        Appearing on behalf of the Plaintiff:

4            ROSLYN N. GRIFFIN-PACK (via telephone)
             MARKEISHA SAVAGE
5            MARYNA JACKSON (via telephone)
             Equal Employment Opportunity Commission
6            1407 Union Avenue
             Suite 901
7            Memphis, Tennessee 38104
             (901) 544-0099
8            roslyn.griffin-pack@eeoc.gov

9

         Appearing on behalf of Aaron Thomas Company, Inc.:
10
             AMBER ISOM-THOMPSON
11           MATTHEW G. GALLAGHER (via telephone)
             KAITLYN ABERNATHY HANSEN
12           Littler Mendelson, PC
             One Commerce Square
13           40 South Main Street
             Suite 2500
14           Memphis, Tennessee 38103
             aisomthompson@littler.com
15

16       Appearing for Supreme Staffing:

17           MR. ZACHARY B. BUSEY
             Baker Donelson Bearman Caldwell & Berkowitz
18           165 Madison Avenue
             Suite 2000
19           Memphis, Tennessee 38103
             (901) 526-2000
20           zbusey@bakerdonelson.com

21

22

23

24

25

                    UNREDACTED TRANSCRIPT

```
1                           FRIDAY

2                        MARCH 15, 2024

3                    ----------------------

4

5           THE COURT:  All right.  We should have several

6    people on the line.  It turned out that we needed to be in

7    person at least for a little bit of the information because

8    there was apparently a little confusion about compliance with

9    the order in supplying the Court with necessary data, but

10   we'll take care of that.

11          Okay.  Who do we have who is going to be the

12   primary speaker for the EEOC today?

13          MS. GRIFFIN-PACK:  Good morning, Your Honor.

14   This is Roslyn Griffin-Pack on behalf of the EEOC.

15          THE COURT:  Okay.  And, Ms. Pack, are you with

16   someone else?  Is somebody else with you today?

17          MS. GRIFFIN-PACK:  Yes, Your Honor.  We have

18   attorneys Markeisha Savage and Sarah Jenkins in the courtroom

19   with Your Honor today.  We also have attorneys Gary Sullivan

20   and Maryna Jackson on the line.

21          THE COURT:  Okay.  Well, let me make sure

22   everybody knows what we're going to need to do with people on

23   line.  And we're going to have to make sure that when you

24   speak -- although, I think we can generally tell who

25   everybody is, but please say your name if you're on the line
```

UNREDACTED TRANSCRIPT

```
 1    because we can't see you, and the court reporter primarily

 2    can't see you at all, and we want to make sure we get the

 3    right person attributed to each statement.

 4              Okay.  So that sounds good.

 5              We're going to check and say, Mr. Sullivan, can

 6    we hear you okay there?  We're just checking.

 7              MR. SULLIVAN:  This is Gary Sullivan.  I hear you

 8    fine.  I hope you hear me.

 9              THE COURT:  I do.  That's good.  And I think we

10    got Ms. Jackson.  We're going to make sure we can hear her

11    okay.

12              MS. JACKSON:  Thank you, Your Honor.  This is

13    Maryna Jackson.

14              THE COURT:  Okay.  We're just confirming that

15    we've got a good connection, and we've got everybody.

16              Ms. Savage, we've got you here.  So how are you

17    doing?

18              MS. SAVAGE:  Yes, Your Honor.  I'm well.  Thank

19    you.

20              THE COURT:  Thanks for coming over.  And there's

21    one document that we didn't get earlier.  Looks like we're

22    going to have to get and take a look at.  It may not be

23    something we have to share with the other side.  It may be

24    sort of an in camera submittal, but we're going to need to

25    take a look at that, so that should help us out.
```

UNREDACTED TRANSCRIPT

5

```
1              MS. SAVAGE:  Yes, Your Honor.

2              THE COURT:  All right.  Now, who do we have who

3    is going to be speaking for Aaron Thomas Company?

4              MR. GALLAGHER:  Good morning, Your Honor.  This

5    is Matthew Gallagher.

6              THE COURT:  Okay.

7              MR. GALLAGHER:  And appearing in the courtroom

8    this morning -- I'm sorry.

9              THE COURT:  Go ahead.  Go right ahead.

10             MR. GALLAGHER:  Sure.  In the courtroom this

11   morning on behalf of Aaron Thomas are Amber Isom-Thompson and

12   Katy Hansen as well.

13             THE COURT:  Okay.  I can see them, so there's not

14   a question there.

15             And then who do we have for Supreme Staffing?

16             MR. BUSEY:  Good morning, Your Honor.  Zachary

17   Busey on behalf of Supreme.

18             THE COURT:  Okay.  And anybody with you today?  I

19   don't see anybody else marked.

20             MR. BUSEY:  No, sir.  It will just be me today.

21             THE COURT:  Okay.  That's fine.  You're all set,

22   though.  You don't have any need for somebody else?

23             MR. BUSEY:  Correct.  Well, I think I can handle

24   it, yes, sir.  No one else will be joining.

25             THE COURT:  No problem at all.  That's good.  We
```

UNREDACTED TRANSCRIPT

1    wanted to go over that and make sure everybody understood the

2    necessity of please stating your name if you're on the line.

3           Okay.  There is a motion in the case, but there

4    is also an issue as to the order that was entered by the

5    Court, and I did receive some of the information that was

6    required to be submitted, but I don't know -- I do not have,

7    as far as I can tell, one or two pieces of data that we do

8    need.

9           And the primary thing there -- and there will be

10    a slightly substituted order that's going to say the same

11    thing.  We'll have one typo correction on it -- is that the

12    plaintiff's motion for time to respond is granted, of course.

13    And then plaintiff shall file a response to the emergency

14    motion by March the 11th, and the response shall include

15    information regarding the materials contained in the e-mails

16    and survey site sent to Supreme Staffing's workforce.

17           So if there was some ambiguity in that order, we

18    apologize.  I didn't think it was ambiguous.  So we obviously

19    needed to see in order to see if there was a problem, which

20    typically there would not be.  We needed to see the survey

21    information.  What does it say?

22           So I'm going to let counsel who is present just

23    hand that to me, and we'll just put it as in camera.  I don't

24    think it needs to be -- y'all were concerned about just

25    showing it to counsel opposite.

UNREDACTED TRANSCRIPT

1          MS. SAVAGE:  That is correct, Your Honor.

2          THE COURT:  And so the easiest way to handle this

3   was to have you come over and just handle it that way.  It

4   will be marked as in camera, but I am going to take a quick

5   look because I suppose it's always possible that something

6   might say something that was inappropriate and as to which

7   some correction needed to be made.  Let me take just a

8   minute.

9               (The Court reviews document.)

10          THE COURT:  We are going to note at the top it's

11   in camera.

12               (The Court reviews document.)

13          THE COURT:  Okay.  Well, it's certainly helpful

14   to be able to see it because we certainly needed to see that.

15   And I'm not going to comment on it at this time.  I am going

16   to ask a question about what is the precise issue

17   regarding -- and I understand we don't want retaliation

18   against individuals who receive it.  We want to be very

19   mindful that it's essentially I think a protected

20   communication, but I don't think it's probably an

21   attorney-client communication.  It may be one that, for other

22   reasons, we need to be very cautious about it.

23               So going to the spokesperson for the EEOC -- and

24   be sure and identify yourself again because the court

25   reporter can't see you.  And I think that's going to be

UNREDACTED TRANSCRIPT

1   Ms. Pack.

2          What's the problem in letting counsel see this,

3   even if you're concerned about maybe not wanting the company

4   to see it?  What's your thought there?  And I know we're

5   going to get some briefing.  We're going to get some other

6   information.  We haven't gotten that yet, but I think it

7   might be useful for me to have a little bit of your thought

8   process in that regard.  I do have some material already.

9   Yes?

10          MS. GRIFFIN-PACK:  This is Roslyn Griffin-Pack on

11   behalf of the Commission, Your Honor.  And, I'm sorry, I

12   didn't quite understand your question.  You said what's the

13   problem with letting counsel see it as opposed to the

14   company?

15          THE COURT:  Right.  Well, let me just say it

16   differently.  Is there a problem at all in letting counsel

17   see the survey?

18          MS. GRIFFIN-PACK:  Yes, Your Honor.  We believe

19   that that's our confidential work product, and we want to

20   preserve our protections, our confidentiality privileges

21   related to that.  That document was created based off of

22   mental impressions of counsel, what we think is necessary to

23   identify potential class members with --

24          THE COURT:  We're going to have to ask you to

25   move a little bit away from your mike because what is

UNREDACTED TRANSCRIPT

1   happening is my court reporter is indicating that we're

2   getting a muffled communication.  I can understand you, but

3   let's do that so we make sure we have a really clear

4   understanding.

5           Let me let you start again.  I do understand that

6   your position is that it is work product.  I'm not quite sure

7   exactly how that would work here, but go ahead.

8           MS. GRIFFIN-PACK:  Yes, Your Honor, that's the

9   Commission's position.  That survey was created in

10  anticipation of litigation to be used in the litigation, and

11  so it's our position that that is work product.  It's based

12  off the Commission's attorneys' mental impressions, what we

13  think is necessary for the litigation, important points that

14  we need to identify and speak to class members about, and so

15  we think that it qualifies for work product.

16          We also think that we enjoy -- you know, based on

17  case law precedent, we enjoy a confidential, if not

18  attorney-client relationship, with the potential claimants.

19  It's definitely a common interest privilege with them, so

20  that our communications with them are also protected.  And so

21  we apologize for any confusion about the Court's order, but

22  we were not not trying to comply.  We were trying to comply

23  but at the same time preserve our work-product privilege and

24  the common-interest privilege we enjoy with these claimants.

25          THE COURT:  Okay.  Anything else that you would

UNREDACTED TRANSCRIPT

1    want to add in that regard?  Of course, we have papers here

2    from you.  So anything else that you would want to add?  We

3    know we're going to get some more materials on this.

4              Yes, ma'am?

5              MS. GRIFFIN-PACK:  Yes, Your Honor.  You know,

6    (indecipherable) even when the Commission sends the surveys

7    to the list of intended recipients, it's also work product

8    because it involves the Commission's attorneys looking at the

9    information that they have available to it, analyzing who

10   might be a potential class member, and who needs to receive a

11   survey.  And so it's our position that not only are the

12   surveys protected by the work-product privilege, they're also

13   protected -- the recipients of the surveys are also

14   protected.

15             THE COURT:  Do you have any cases in which your

16   position regarding work product is very specifically

17   addressed?

18             MS. GRIFFIN-PACK:  Yes, Your Honor.  There are

19   some cited in our brief.  Hold on just a minute.

20             We have a Supreme Court case, *Upjohn v. United*

21   *States*, and the citation is 449 U.S. 383.

22             THE COURT:  Sure.

23             MS. GRIFFIN-PACK:  We also have *Bauman vs. Jacobs*

24   *Suchard*.  The citation is 136 F.R.D. --

25             THE COURT:  Right.  Why do you say the *Upjohn*

1    case is applicable precisely?  What facts in that case

2    support your proposition that this would be, I think you're

3    really saying, attorney-client privilege slash work product?

4            MS. GRIFFIN-PACK:  Yes.

5            THE COURT:  Does that --

6            MS. GRIFFIN-PACK:  The *Upjohn* -- I'm sorry, Your

7    Honor.

8            THE COURT:  Does that case deal directly with

9    that question?

10            MS. GRIFFIN-PACK:  It deals with the

11    communications between EEOC counsel and potential claimants

12    and their class members, and it understands and recognizes

13    that the sound legal advice or advocacy depends on the EEOC

14    being able to have confidential communications with the

15    people that it represents.

16            THE COURT:  Well, certainly where the EEOC has an

17    established relationship with someone, that would be correct,

18    right?

19            MS. GRIFFIN-PACK:  That's correct.

20            THE COURT:  Okay.  But these are individuals as

21    to which you have no established relationship; is that

22    correct?

23            MS. GRIFFIN-PACK:  We think that it still

24    applies, Your Honor, because the EEOC has to be able to

25    establish a relationship with claimants.  The EEOC has to get

                    UNREDACTED TRANSCRIPT

1  an affirmative statement from the claimant that they want to

2  participate in the lawsuit.

3           THE COURT:  Well, I --

4           MS. GRIFFIN-PACK:  And so whereas the EEOC --

5           THE COURT:  Excuse me.  I'm sorry.

6           MS. GRIFFIN-PACK:  I'm sorry.

7           THE COURT:  I asked you a question.  I just want

8  to understand.  You currently have no established

9  relationship with any of these individuals?  In other words,

10  have you received something back as to which you now have an

11  established relationship with someone?

12           MS. GRIFFIN-PACK:  Yes, Your Honor.  We -- once

13  we began sending the surveys, we did receive affirmative

14  information that particular persons wanted to participate as

15  claimants in this lawsuit.

16           THE COURT:  And how many people have indicated

17  that they want you to include their names and so forth as

18  individuals who are asserting would join the EEOC's position

19  in asserting a claim?

20           MS. GRIFFIN-PACK:  Today, we have over 20 people

21  before we were asked to stop the survey who confirmed their

22  participation and that they wanted the EEOC to represent

23  their interest in this lawsuit.

24           THE COURT:  Okay.  Would you agree that the

25  language that you used in this material could be confusing as

UNREDACTED TRANSCRIPT

1    it relates to:  Please confirm your agreement with the

2    following participant interest statement?

3              Would you agree that you're asking someone to

4    confirm your agreement insinuating that the person has

5    already an agreement with you?

6              MS. GRIFFIN-PACK:  I don't believe that that's

7    confusing, but to the extent and without waiving attorney

8    work-product privilege, there is an option for the person if

9    they have any questions or if they are confused, they can

10   speak directly to an EEOC attorney before continuing with the

11   survey.  And so if there's any confusion, the EEOC has taken

12   steps to remedy that confusion before the class member or

13   potential class member has (indecipherable).

14             THE COURT:  Do you agree that had you worded that

15   inquiry differently to make it clear that there are no

16   current agreement, that that would have been more fair?

17             MS. GRIFFIN-PACK:  I don't agree with that, Your

18   Honor.  I think that the survey as outlined is fair.  I think

19   it's clear, and I think there are avenues if there is any

20   confusion for claimants to reach out to the EEOC directly to

21   correct that confusion.

22             I'll note, Your Honor, that a number -- the EEOC

23   did investigate this, and so a number of these people are

24   aware.  They've already -- they participated during the

25   investigation.  And so to the extent that there -- to the

UNREDACTED TRANSCRIPT

1   extent that there may be any confusion, those people are

2   already aware of -- preliminarily what the allegations are in

3   this lawsuit, and they knew that it was a possibility that

4   there was a lawsuit coming.

5          This is the EEOC's attempt to provide additional

6   information and also to comply with all ethical obligations

7   it has as it relates to the current lawsuit now that we're no

8   longer in investigation posture, but instead, in a litigation

9   posture.

10          THE COURT:  So you say these people were already

11   aware that a lawsuit was to be filed?  They were already

12   aware of that?

13          MS. GRIFFIN-PACK:  They were aware that it was an

14   investigation into the allegations of a pattern and practice

15   of discrimination at Supreme and/or Aaron Thomas, so they

16   were aware of the investigation.

17          THE COURT:  Okay.  That's fine.

18          What is the evidence that they were aware of

19   that?

20          MS. GRIFFIN-PACK:  They participated during the

21   investigation.  Some of them even gave statements.  To the

22   extent we've had statements for those people, we turned over

23   that information during -- with our initial disclosures.

24          THE COURT:  Okay.

25          MS. GRIFFIN-PACK:  And so if we had a --

UNREDACTED TRANSCRIPT

1      THE COURT:  And did you disclose all of those

2   individuals to the defendants in this case either prior --

3   well, prior to the litigation being commenced?  Did you do

4   that?

5      MS. GRIFFIN-PACK:  No.  We received that

6   information as part of the investigation from defendants.

7      THE REPORTER:  I'm sorry?

8      MS. GRIFFIN-PACK:  I'm sorry?

9      THE COURT:  I think we have it now.

10      Okay.  So none of these individuals -- you, then,

11   would indicate that all of the individuals that you're

12   sending it to have already provided the EEOC with

13   information?  Is that right or wrong?

14      MS. GRIFFIN-PACK:  That's not entirely correct,

15   Your Honor.  What I'm saying is during the course of the

16   EEOC's administrative investigation, we learned the

17   identities of people who might be considered claimants in

18   this action.  Some of those claimants may have given the EEOC

19   statements.

20      If a claimant did -- if a potential claimant did

21   give the EEOC a statement, we have provided or will provide

22   more information as it becomes available.  We provided those

23   statements and information to defendants during the course of

24   our initial disclosures as well as in response to at least

25   Aaron Thomas's initial discovery requests.

UNREDACTED TRANSCRIPT

1          THE COURT:  Okay.  Well, let me find out -- and

2    I'm just trying to get a better grasp of where we are here.

3    Let me check with Mr. Busey.

4          Did you receive all of these individual

5    statements as part of the investigative materials that the

6    EEOC disclosed to you in this case?

7          MR. BUSEY:  No, Your Honor.  So I've been

8    involved from the very beginning of the investigation.  And

9    prior to the filing of Supreme One, prior to the filing of

10   Supreme Two, and prior to the filing of this lawsuit, the

11   EEOC had never identified a list of individuals on behalf of

12   whom were contacted during the investigation phase or on

13   behalf of whom they are seeking relief.

14         The parties have briefed this issue in Supreme

15   One, and there have been individuals identified since in this

16   case.  I do agree with that.  But it is not clear from the

17   identification whether those relate to the Aaron Thomas

18   investigation and Aaron Thomas charge file because they do

19   not appear to be related to the Supreme investigation or

20   Supreme charge file.

21         THE COURT:  All right.  Well, let me go back to

22   EEOC counsel.

23         Do you agree with the statement made by

24   Mr. Busey?

25         MS. GRIFFIN-PACK:  To a certain extent, Your

UNREDACTED TRANSCRIPT

1   Honor.  According to *Mach Mining,* the EEOC does not have to

2   identify each individual class member by name during the

3   course of this investigation.  It's sufficient for the EEOC

4   to notify the respondent during the investigation that the

5   EEOC is seeking relief on behalf of a class of aggrieved

6   individuals.

7          In this case, the EEOC complied with its

8   obligations and notified Supreme Staffing during the

9   investigation and in its letter of determination that it was

10  seeking relief on behalf of a group of black workers who

11  (indecipherable) --

12         THE REPORTER:  I'm sorry.  I can't --

13         THE COURT:  Excuse me.  Wait just a minute.  The

14  court report is having a question for you.  Wait just a

15  second.

16         THE REPORTER:  I'm sorry.  I'm really still

17  having a hard time understanding you, Ms. Griffin-Pack.  It's

18  a little muffled.  I'm going to need you to go back and

19  restate the last couple of sentences, please.

20         MS. GRIFFIN-PACK:  Okay.  I'm not sure what you

21  heard, so I'll start from the beginning.

22         I'll say -- is that better?

23         THE REPORTER:  A little bit, yes.

24         THE COURT:  The more you move away from your

25  mike, the better we're going to hear you because you're very

UNREDACTED TRANSCRIPT

1   muffled.

2              MS. GRIFFIN-PACK:  Okay.  Okay.

3              The EEOC, according to *Mach Mining* -- that's

4   again Supreme Court precedent -- the EEOC does not have to

5   identify each individual class member by name during its

6   investigation.  It's sufficient that the EEOC notifies the

7   respondent that it is seeking class-wide relief.  And in this

8   case, we notified respondent, Supreme Staffing, during the

9   investigation through the letter of determination and through

10  other aspects of the investigation that the EEOC sought

11  relief on behalf of a class of aggrieved African Americans.

12             We notified Supreme Staffing in its complaint

13  that we seek relief on behalf of a class of aggrieved African

14  Americans.  There is no requirement that the EEOC has to

15  identify each individual class member by name.

16             THE COURT:  Right.  We all know that.  That's

17  basic.

18             The question is:  You do understand that if you

19  were going to try the case, you will have to disclose the

20  names of the people at least on whom you're going to rely to

21  provide testimony?  And, secondly, those who you might use

22  who may have information, and that's in accordance with

23  Rule 26.  Is that clear?  Have we been clear there?

24             MS. GRIFFIN-PACK:  Yes, Your Honor, that's clear.

25  The EEOC has complied with that obligation.

UNREDACTED TRANSCRIPT

```
 1              THE COURT:  Well, I don't see that you have or
 2    haven't.  I can't tell right now.  It sounds like that you're
 3    taking the position that a generalized accusation without
 4    specific references to individuals who will or may testify is
 5    sufficient, but that's not correct.  You do have to, at some
 6    point -- and the point is now.  You have to say who -- on
 7    whom you would rely in presenting your case-in-chief and who
 8    may have information that would support your case-in-chief.
 9    Do you understand your obligation under 26(a)(1)?
10              MS. GRIFFIN-PACK:  Yes, Your Honor, I understand
11    my obligation very well and, respectfully, I believe the
12    Commission has complied.  The Commission --
13              THE COURT:  You need not keep talking.  Just say
14    yes or no.  That's fine.  Well, I'm not sure about that.
15              But the point there is that isn't it important
16    that we have a protective order in place in the case?  Isn't
17    that very important to protect these individuals and have the
18    process set up so that the proper disclosures can be made?
19    Is that not correct?
20              MS. GRIFFIN-PACK:  No, Your Honor.  Respectfully,
21    I do not believe that's correct.
22              THE COURT:  You don't think that you want to
23    protect the individuals who are employees, who might have
24    information that the defendants might not like from any
25    possible retaliation or negative action?  Wouldn't it be a
```

UNREDACTED TRANSCRIPT

 1  good idea to do that?

 2          MS. GRIFFIN-PACK:  My response, Your Honor, is

 3  twofold.  Respectfully, yes, we want to ensure that all

 4  claimants are protected.  We do not believe that a Rule 26

 5  protective order is the appropriate way.  As an initial

 6  matter, the Commission (indecipherable) are work product.

 7  They are based on (indecipherable) --

 8          THE COURT:  I'm sorry.  The court reporter is

 9  indicating that you once again flooded the mike.  You've got

10  to back away a little bit, so we can -- so she can get an

11  accurate record.  So we'll start over on that, and then we're

12  going to go and do some things and we're going to make sure

13  we understand how we need to proceed.

14          I do very much appreciate getting from the

15  EEOC -- very much appreciate getting the survey because

16  without that I was left with insufficient data to do any

17  analysis really that was meaningful at all, so I do

18  appreciate you bringing that up.  Thanks so much.

19          I'm sorry.  You were speaking.  I'm going to let

20  you wrap that up, and then we're going to check with counsel

21  and see what we need to do.  This is a motion hearing in

22  connection with the pending motion before the Court.

23          And, obviously, I'm going to come back to defense

24  counsel because they have a lot to tell me and maybe you're

25  not entitled to what you need -- you think you need.  Go

UNREDACTED TRANSCRIPT

 1    ahead.

 2              MS. GRIFFIN-PACK:  Okay, Your Honor.  I would

 3    also say that this is not a Rule 23 action.  The EEOC is not

 4    subject to Rule 23.  And so to the extent that there's any

 5    attempt to impose a protective order --

 6              THE COURT:  Excuse me, excuse me, excuse me.

 7    Nobody is talking about Rule 23 except you.  We understand --

 8              MS. GRIFFIN-PACK:  Right.

 9              THE COURT:  -- the role of the EEOC.

10              I tell you what.  I'll tell you what, let's go to

11    defense counsel and see what we need to do.  I understand

12    that the parties, except for the EEOC, were able to reach

13    some type of agreement.

14              MR. BUSEY:  On the protective order, the separate

15    issue of getting a stipulated protective order to the Court,

16    that's correct.  I don't mean to speak for Aaron Thomas, but

17    defendants are agreed on the protective order that was

18    submitted in connection with Aaron Thomas's motion that was

19    filed earlier this week.

20              THE COURT:  Sure.  Okay.

21              Anything else from -- let me make sure we get

22    everybody on the record here.  Anything else then from Aaron

23    Thomas's counsel?

24              MR. GALLAGHER:  Yes, Your Honor.  This is

25    Mr. Gallagher.  With respect to the protective order, you and

                        UNREDACTED TRANSCRIPT

1    Mr. Busey are exactly correct.  Defendants are agreed on the

2    terms of the proposed order that was submitted this week.

3         And if I may, I'd like to respond briefly to some

4    of the arguments Ms. Griffin-Pack made with respect to

5    attorney-client and common interest privilege that she is

6    claiming attaches to the communications and survey that was

7    sent out to these potentially alleged aggrieved individuals.

8         And I think the fundamental problem with all of

9    those arguments, Your Honor, from Aaron Thomas's perspective

10   is that these are communications about which the EEOC is

11   asserting a privilege that based on some confidentiality that

12   are being sent to third parties unknown to defendants at this

13   time, third parties that either do not and will not have any

14   attorney-client relationship with the EEOC going forward or

15   have any common interest with the EEOC.

16        I mean, the EEOC is asserting this general

17   blanket common interest, and for the vast majority of the

18   people that these materials are sent to, it's quite likely

19   that they respond and say, no, I don't agree with that.  So

20   that's kind of the fundamental basis for Aaron Thomas's

21   objection to any assertion of such privilege with respect to

22   these communications.

23        THE COURT:  Let me ask this:  Would you agree

24   that in -- Mr. Gallagher, that in today's society and the way

25   in which matters are handled by entities that seek to

UNREDACTED TRANSCRIPT

1  represent large groups of people, it's not uncommon to

2  directly solicit either through television, through e-mail,

3  through websites, participation by individuals who may

4  ultimately become claimants in the matter?

5          MR. GALLAGHER:  Yes, Your Honor, I agree that

6  that's not uncommon at all.  To the extent that there's any

7  question about whether we, the defendants, are entitled to

8  know what those communications are, that's effectively the

9  issue in my mind.

10          THE COURT:  Isn't there potentially a problem in

11  your knowing the communications, in that it could present an

12  opportunity for the perception of interference by the

13  defendant in the case?  Maybe you're better off not knowing.

14          MR. GALLAGHER:  Well, as Your Honor, I think,

15  appropriately pointed out at the beginning of the hearing, I

16  think there's potentially a difference in counsel knowing and

17  the defendants themselves knowing, and I think it's important

18  at the very least that counsel are aware of what's being sent

19  so we can address any concerns appropriately.

20          I don't disagree with the general premise that

21  there perhaps needs to be some protection against potential

22  adverse action taken based on those communications, but I

23  don't think we have enough information to make any

24  determination about that at this point.

25          THE COURT:  Okay.  Anything else that you want to

UNREDACTED TRANSCRIPT

1    add?  I'm going to go to your codefendants' counsel in a

2    moment for comments also.  Anything else that you want to

3    add?

4         MR. GALLAGHER:  Nothing further from Aaron Thomas

5    at this point.

6         THE COURT:  Okay.  Because we've actually stayed

7    a level of proceedings.  We don't want to be in that

8    position.  We want to allow the process to move forward in an

9    orderly fashion but a fair process.  It needs to be fair and

10   not in any way deceptive.  I don't know that that's even the

11   case here.

12        But let me hear from counsel codefendant.

13        MR. BUSEY:  Thank you, Your Honor.  I won't

14   repeat what codefendant counsel said, but Supreme Staffing

15   agrees especially on the privilege and work-product issue.

16        What I need to add on behalf of Supreme Staffing,

17   if I may, is there is a broader concern, and I'll succinctly

18   say it has two pieces.

19        The first is that Supreme Staffing contends that

20   this third lawsuit was split from the first lawsuit, and

21   Supreme Staffing is beginning to have the understanding that

22   that was done in an effort to pursue or identify individuals

23   that were the subject of briefing in a requirement from

24   Supreme Staffing's standpoint to disclose in the first

25   lawsuit.

UNREDACTED TRANSCRIPT

1          The second issue that is perhaps unique to

2   Supreme Staffing, this action along with the first action was

3   filed under Section 706 of Title VII, and not 707.  And the

4   reason that that is significant, at least in Supreme

5   Staffing's eyes, is a 706 action is an action to come to

6   court and to bring claims on behalf of an individual or

7   individuals identified during the administrative phase of the

8   investigation.  It is a lawsuit to seek remedies.

9          And there are concerns that this process, this

10  now third lawsuit, is being used to identify individuals

11  beyond who were identified in the administrative process.

12          So Supreme Staffing echoes the concerns that

13  Aaron Thomas raised about the privilege arguments, but I do

14  add those two additional points that are in Supreme

15  Staffing's mind relevant and, again, in our mind instructive

16  on how this issue shapes out.

17          THE COURT:  All right.

18          MR. GALLAGHER:  Your Honor, if I may, this is

19  Mr. Gallagher.  One additional point based on what Mr. Busey

20  added, and that is simply that Aaron Thomas didn't have an

21  opportunity to respond to Your Honor's question about whether

22  it had received statements, for instance, that the EEOC had

23  gathered during its administrative investigation.  I know

24  you've asked Supreme Staffing directly whether it had

25  received such statements and Supreme responded that it had

UNREDACTED TRANSCRIPT

1    not.  And I would confirm that Aaron Thomas also had not.

2            And further to that point, not only had Aaron

3    Thomas not received any such statements, but in response to

4    its written discovery in this matter, did not receive such

5    statements in response to that discovery.  We'll address that

6    at the appropriate means in the ordinary course, but I wanted

7    to just let Your Honor know that Aaron Thomas has also not

8    received any such statements.

9            MS. GRIFFIN-PACK:  Your Honor, this is Roslyn

10    Griffin on behalf of the EEOC.  May I respond?

11            THE COURT:  Certainly.  Sure.

12            MS. GRIFFIN-PACK:  As an initial matter, Your

13    Honor, the protective order that was submitted by Aaron

14    Thomas two days ago does not concern class member contacts.

15    That's during the exchange of documents.  And so that's a

16    completely separate issue of what's before the Court today.

17            The Commission has specific objections to that

18    protective order and welcomes the opportunity to let Your

19    Honor know what our issues were with that protective order,

20    but they in no way concern these confidential communications

21    the EEOC has with its potential class members.

22            Secondly, Your Honor, the Supreme Court has said

23    in the *Gulf Oil* case, to get a protective order for

24    communications with the potential class members, there has to

25    be a particularized showing of a need for their protective

UNREDACTED TRANSCRIPT

1   order.

2         And here, the Commission respectfully avers that

3   Supreme Staffing or Aaron Thomas has shown anything that

4   shows that a protective order is appropriate in this action

5   to limit the Commission's ability to communicate with its

6   potential class.  So I wanted to make sure that I had those

7   two points clear.

8         The third point I want to make is there are not

9   specific statements from class members, but there are

10  questionnaire responses that were received from potential

11  claimants that were provided to both Aaron Thomas and Supreme

12  in the Commission's document production that we produced with

13  our initial disclosures on February 2nd and February 28th.

14        We went -- the Commission, in addition to that,

15  in response to Aaron Thomas's initial discovery requests,

16  identified specific questionnaires that were specific to

17  Aaron Thomas's specific discovery requests in response to the

18  request for production of documents.

19        If I remember correctly, they asked for

20  information on particular aggrieved parties.  The Commission

21  pointed to those people by Bates numbers.  And so I'm

22  confused as to both Supreme and Aaron Thomas's position that

23  they don't have those documents.

24        THE COURT:  I mean, you do realize that it

25  doesn't matter if they have them or not if, part of 26(a)(1)

UNREDACTED TRANSCRIPT

1  Disclosure, you would be relying on them.  You do realize

2  that, right?  It doesn't matter if they've got them already.

3  That's not how the rule works.  You do agree with that,

4  right?

5          MS. GRIFFIN-PACK:  Well, I think the issue is the

6  representation that I'm hearing is that the Commission hasn't

7  provided them, and that's simply not true.

8          THE COURT:  Well, what about that?

9          MR. BUSEY:  Your Honor, from Supreme Staffing's

10  standpoint, what we received was a load file with about 1,100

11  pages of documents, and those appear to be from the charge

12  file related to Aaron Thomas.  So Supreme Staffing's

13  statement remains:  We, Supreme Staffing, have not received

14  statements that we are aware have been identified as related

15  to the investigation against my client, Supreme Staffing.

16          THE COURT:  Have you provided anything that -- as

17  to Supreme Staffing in your disclosures, then, counsel, EEOC?

18          MS. GRIFFIN-PACK:  Yes, Your Honor.  A number of

19  those statements are related to both Supreme Staffing and

20  Aaron Thomas.

21          THE COURT:  I'm sorry.  Yes, sir?

22          MR. BUSEY:  I don't disagree with that as a

23  concept because the EEOC is conflating the investigation and

24  saying the Aaron Thomas investigation relates to Supreme.

25  Supreme's concern is that we don't believe it does.  They

UNREDACTED TRANSCRIPT

1    were separate investigations.  I was involved in the Supreme

2    Staffing investigation.  I was not contacted on behalf of the

3    EEOC in connection with the Aaron Thomas investigation.  What

4    I think is an accurate statement is that the Supreme Staffing

5    investigative file has not been produced.

6            THE COURT:  Well, let's just ask that:  Has the

7    Supreme Staffing investigative file been produced from the

8    EEOC?

9            MS. GRIFFIN-PACK:  Portions of it have been

10   produced, but we haven't completed our review.  We have an

11   internal process on how those documents have to be produced,

12   and we're in the process of providing a supplemental

13   disclosure so that Supreme can have the additional documents

14   that it needs.

15           THE COURT:  Okay.  So it's not been -- I'm

16   just -- that's useful.  Part of it has not been produced.

17           Yes, counsel?

18           MR. BUSEY:  No.  If it's coming, then that's

19   fair.  But I want to clarify that I'm not speaking for Aaron

20   Thomas statements.  I'm talking about the Supreme Staffing

21   investigation --

22           THE COURT:  Right.

23           MR. BUSEY:  -- when I say what we have and have

24   not received.

25           THE COURT:  Right.  And your impression, I

UNREDACTED TRANSCRIPT

30

1  understand, is that what you have received is the Aaron

2  Thomas material, but not material as it relates to the

3  investigation as to Supreme Staffing.  Is that correct or

4  incorrect?

5          MR. BUSEY:  No, that's correct, Your Honor.  That

6  is my impression.

7          THE COURT:  Well, let me go back.  I'm just going

8  to go back to counsel for the EEOC.

9          With that clarification, is that right, that,

10  basically, the Aaron Thomas file has been turned over

11  apparently to Supreme Staffing as well as Aaron Thomas, but

12  the Supreme Staffing file is in the process of being prepared

13  so it can be turned over.  Is that the correct status?

14          MS. GRIFFIN-PACK:  That is correct, Your Honor,

15  with the exception that some of the documents in the Aaron

16  Thomas file are also in the Supreme Staffing file, and so

17  there's some overlap between the two files.  And so the

18  Commission is in the process of going through the Supreme

19  file to make sure that there are no duplicates and providing

20  that as well in its entirety.

21          THE COURT:  Okay.  It sounds like that what's

22  happened, though, is that the Supreme Staffing investigative

23  file has not been turned over.  I'm not criticizing.  You've

24  got some time to do that.  That's something that needs to get

25  done.  And it needs to be clear that that is the Supreme

UNREDACTED TRANSCRIPT

1    Staffing investigative file so that they know what they're

2    dealing with.

3            Is that, Mr. Gallagher, what you need?

4            MR. BUSEY:  Yes, Your Honor, from Supreme

5    Staffing's standpoint.  Again, I understand there's

6    disagreement among the parties about whether the

7    investigations were separate.  Supreme Staffing's standpoint

8    is it would benefit framing that dispute if it was made

9    clear, at least in productions, what is the Aaron Thomas

10   investigative file versus what is the Supreme Staffing

11   investigative file?  And, again, I believe what's been

12   produced is the Aaron Thomas file.

13           THE COURT:  I think that that's been agreed on.

14   I don't think anybody's -- I'm correct, then?

15           Is that correct, EEOC counsel?  We're just trying

16   to get it sorted out.  Is that right?

17           MS. GRIFFIN-PACK:  Yes, Your Honor, that's

18   correct.

19           THE COURT:  Okay.  Well, see, I think that helps

20   because -- that's very helpful.  And now we know that the

21   Supreme Staffing file will be processed.  It's in processing

22   now, and will be produced to Supreme Staffing, and we still

23   have a complete document disclosure under Phase 2 by March

24   the 27th.  So we have plenty of time.  We have plenty of time

25   to do that.

1          Okay.  Well, let me -- I don't want to leave out

2   Aaron Thomas.  They're probably feeling really neglected or

3   maybe happily so.  But anything that you want to add?  It

4   sounds like -- do you agree that you've got your

5   investigative file?  Does Aaron Thomas agree with that?

6          MS. ISOM-THOMPSON:  Your Honor, I wasn't sure if

7   Mr. Gallagher would want to chime in, but -- because I'm

8   making eye contact with you in the courtroom, I believe that

9   we do have a copy of the EEOC's investigative file into Aaron

10  Thomas Company, although we may have some issues with some of

11  the redactions in the file.

12         And I would note there are some notes regarding

13  communications or statements made by alleged aggrieved

14  individuals.  However, I'm not so sure that these are the

15  statements that we've been referring to today.

16         And also it's been made a little difficult for us

17  to determine which documents to which the EEOC is referring

18  when today they've said that the statements were produced by

19  Bates number because, excuse me, in their discovery

20  responses, they generally refer to a broad Bates number range

21  from 1 to, say, 1028.

22         THE COURT:  That's probably a little broad.

23         MS. ISOM-THOMPSON:  Yes.  So it's been a little

24  difficult for us to determine exactly which documents are

25  responsive to the requests that we've made; however, we'll

UNREDACTED TRANSCRIPT

1    address that at a later time.

2                    THE COURT:  Sure.  Okay.

3                    All right.  Well, the question today is:  What do

4    we do as to the stay and then how do we go forward because

5    the Court recognizes that EEOC or anybody else in EEOC's

6    position can contact individuals?  Can't contact managers.

7    You've already said.  You're not even seeking to do that.  It

8    has to be a fair contact.  I did look at the -- the only

9    question I had was that one particular inquiry, which seemed

10   a little presumptive, but I'm not sure that's a particular

11   problem.

12                   But let's go to the question of -- I still don't

13   understand why we can't have the disclosure to counsel only.

14   And this protective order needs to get entered so that the

15   case can proceed.  I just don't understand -- why not?  Why

16   not go ahead and say, well, limited to counsel only, we're

17   going to disclose the information?

18                   And I do think there's a misperception.  I may

19   have to, at some point, look at the 26(a)(1) Disclosures.

20   There seems to be a misperception about what the obligation

21   disclosed under 26(a)(1) is.  So we've got those things going

22   on.

23                   But let's go first to the first question:  Can't

24   we enter a protective order and move along in this case?

25   That's what the Court thinks we ought to do.  And I think

UNREDACTED TRANSCRIPT

 1    you're right, I think that EEOC's counsel is correct that the

 2    wiser course is to restrict certain information to counsel

 3    only, and I don't see any objection by counsel for either of

 4    the defendants.

 5            MR. BUSEY:  Yes.  Supreme Staffing needs to

 6    respectfully just note for the record that we don't believe

 7    there needs to be protection because my client is so inclined

 8    to retaliate against individuals that are identified or

 9    discussed in this litigation.

10            THE COURT:  We're really protecting your client

11    from having the problem.  That's what we're doing.

12            MR. BUSEY:  No, and I agree, Your Honor.  I was

13    going to follow that very quickly with if this is the extent

14    of the identity of the -- the contents of the surveys, the

15    responses, the identity of the recipients is under an AEO

16    designation.  Kind of like a trade secrets case or a patent

17    case, there's some AEO protection around that.  That would at

18    least entitle the parties to present merit arguments to the

19    Court about what this is, whether it should be disclosed.

20    And in terms of Supreme Staffing's emergency motion, that was

21    really the focus of the motion is we think we might have a

22    substantive dispute, but Supreme Staffing remains in the

23    dark.

24            And while we can certainly respond regarding

25    privilege, I believe, and would be happy to do so in a brief,

UNREDACTED TRANSCRIPT

1    we still don't even have enough to frame up a substantive

2    dispute over what is happening.  And so I do think the AEO

3    designation would at least allow the attorneys for the

4    parties to be all on the same page.

5                THE COURT:  Okay.  And I really do need to always

6    reconfirm with Aaron Thomas.

7                MR. GALLAGHER:  Your Honor, this is

8    Mr. Gallagher.  Aaron Thomas agrees with that position.

9                THE COURT:  Okay.  Now, let's go back to counsel

10   for the EEOC.

11               This sounds pretty reasonable.  We want to get

12   the stay out of the way.  We don't want to interfere with the

13   proper function of the EEOC, but we do think that information

14   does need to be disclosed to counsel so that they can

15   formulate whatever arguments are appropriate in the case.

16   Any problem with moving along in that regard?

17               MS. GRIFFIN-PACK:  Yes, Your Honor.  The

18   Commission maintains Supreme Court precedent in *Gulf Oil* says

19   that:  Any order limiting communications between parties and

20   potential class members should be based on a clear record, a

21   specific finding that requests a weighing of the need for a

22   limitation, and the potential interference with the rights of

23   the parties.

24               But, thankfully, neither --

25               THE COURT:  We're not -- excuse me, excuse me.

UNREDACTED TRANSCRIPT

1    We're not limiting your communication to anybody.  The Court

2    isn't.  I did want to see the survey because without looking

3    at the survey, it could have said something that was

4    inappropriate.  I would have been surprised if it did.  But

5    it doesn't seem to.  It may be having a little conclusory

6    information in there, but not a problem.

7          But let's go back to this issue.  Nobody wants to

8    interfere with communication here.  What we want to do is

9    allow defense counsel to be able to see the information so

10   that they can formulate any arguments that the Court needs to

11   see.  What's the problem with that?

12         MS. GRIFFIN-PACK:  Respectfully, Your Honor, I

13   believe that improperly interferes with the Commission's

14   ability and (indecipherable) to communicate with the

15   potential class members without counsel interfering.  I

16   understand that --

17         THE COURT:  Excuse me, excuse me, excuse me.  I

18   don't understand your statement there.  We're not interfering

19   with your ability to communicate with anybody.  How do you

20   think that is occurring?  I just don't want to waste time

21   here.  I'd like to move on and try to have a productive

22   conversation.  Do you not believe the lawyers will abide by

23   the attorneys' eyes only?  And if you have evidence --

24         MS. GRIFFIN-PACK:  I don't believe that --

25         THE COURT:  Go ahead.

UNREDACTED TRANSCRIPT

1          MS. GRIFFIN-PACK:  I don't believe that they get

2     an input in our confidential attorney work product.  I don't

3     think that they have the right to.  This is not a Rule 23

4     action.  We don't have --

5          THE COURT:  Excuse me.  We've already gone down

6     this road already a couple of times.  I just don't want to

7     waste time on things that have been said already.

8          Let's go back to how do we make it move on?  I

9     want to lift the stay.  I want to let them proceed, but at

10    the same time, I want you to be able to see the information

11    that you are entitled to see, not your clients, but the

12    lawyers, in order to know if they have arguments that they

13    need to raise.  Is that where you are on this?

14         MR. BUSEY:  It is, Your Honor, and I want to be

15    fair for the record.  Supreme Staffing certainly is not

16    representing that it will never bring a discovery dispute

17    before the Court about attempts to contact third parties or

18    that they're just acquiescing to whatever the EEOC wants to

19    do.

20         But the specific relief before the Court right

21    now was a temporary pause until, at this point, defense

22    counsel -- I don't mean to speak for Aaron Thomas, but I'll

23    loop us together -- can at least be shown to whom these are

24    going, what it is going to them, and what it is coming back

25    so that we can properly frame any discovery dispute.

UNREDACTED TRANSCRIPT

1          And to be clear, we understand that should that

2    happen, they may resume because the temporary pause is only

3    premised on keeping, at this point, defense counsel in the

4    dark about what is happening.

5          THE COURT:  Okay.  All right.  I'm not trying to

6    leave out Aaron Thomas every time.

7          I'm -- Mr. Gallagher, do you want to chime in?

8          MR. GALLAGHER:  Nothing further on that, Your

9    Honor.  We agree.

10         THE COURT:  Okay.  We need to wrap things up.

11         MR. BUSEY:  May I be heard on a proposal, Your

12   Honor?

13         THE COURT:  You may.

14         MR. BUSEY:  If we could have one week to submit

15   briefing on the privilege issue and the AEO proposal, Supreme

16   Staffing would be -- would propose that we do that.  It will

17   largely reflect what was said on the record, but we can put

18   that together in a brief in a week and get that to the Court

19   to kind of close the substance of the issue and the

20   tempor- -- and make it ripe for lack of a better description.

21         THE COURT:  Okay.  Aaron Thomas' position, just

22   to confirm.

23         MR. GALLAGHER:  Your Honor, this is

24   Mr. Gallagher.  We are happy to do that as well.

25         THE COURT:  Any problem from the EEOC in

UNREDACTED TRANSCRIPT

1   following that procedure?

2             MS. GRIFFIN-PACK:  No, Your Honor.

3             THE COURT:  Okay.  Today is the 15th, so that

4   will put us on the 22nd?  Is that right?

5             CASE MANAGER:  Yes, Your Honor.

6             THE COURT:  Okay.

7             MS. GRIFFIN-PACK:  Your Honor, the Commission

8   respectfully requests that we'll have seven days after

9   defendants file their briefing to file our response?

10            MR. BUSEY:  Your Honor, I don't know that Supreme

11  has an objection, but really this briefing would be the reply

12  on Supreme Staffing's emergency motion, but defer to the

13  Court.

14            THE COURT:  It is correct that that would be the

15  reply and not the response.  But nobody has any objection?

16  If no one has an objection, we're likely to go along with it.

17            MR. BUSEY:  Provided the temporary stay remains

18  in place.

19            THE COURT:  Well, that's the difficulty.  The

20  Court wanted to remove the stay today, but I'm not getting

21  sufficient movement in the case on terms of what we should

22  do, and so I will have to leave it in place, which is not

23  what the Court anticipated.

24            MR. BUSEY:  I understand, but subject to the stay

25  staying in place, then Supreme Staffing has no objection to

UNREDACTED TRANSCRIPT

40

1    another seven-day surreply or response or additional brief --

2         THE COURT:  Okay.

3         MR. BUSEY:  -- from the EEOC.

4         THE COURT:  I will make that due on the 29th.  Is

5    that how the EEOC wants to proceed?

6         MS. GRIFFIN-PACK:  Yes, Your Honor.  That's fine

7    with us.

8         THE COURT:  Okay.  That's okay.  I think our

9    preference is different, but that doesn't matter.  That's

10   what we will do.

11        Now, I need to go over one last thing.  I have

12   looked at the survey.  I think it was -- without the

13   survey -- and I'd also -- I tried to indicate in the order

14   that we needed to see it in order to have basic fairness in

15   the case and have enough information to at least start the

16   process.

17        Does the EEOC have any problem now with the Court

18   turning over the survey for attorneys' eyes only, not to be

19   utilized in any other way, but so they can see it?  And if

20   you do, I'm going to respect that.  I just need to know what

21   your position is.

22        MS. GRIFFIN-PACK:  Yes, Your Honor, we have a

23   problem with it.  It's our position that it's confidential

24   work product, and we don't think the other side is entitled

25   to see it.

UNREDACTED TRANSCRIPT

1          THE COURT:  Okay.

2          MS. GRIFFIN-PACK:  The Commission recognizes,

3  however, Your Honor -- we believe and, you know, Supreme can

4  correct us if we're wrong, that they've already viewed the

5  survey.

6          THE COURT:  I'm sorry?  You think they've already

7  viewed the survey?

8          Have you already viewed the survey?

9          MR. BUSEY:  No, Your Honor.

10         THE COURT:  What is your basis for that factual

11  statement, then, EEOC?

12         MS. GRIFFIN-PACK:  Your Honor, because in the

13  attachment to Supreme's original emergency petition, the

14  survey was sent to Mr. Shelton.  Mr. Shelton is a former

15  Supreme Staffing employee.  We have reason to believe that

16  Mr. Shelton is no longer employed with Supreme Staffing, but

17  it appears that the survey was sent to a

18  supreme112@gmail.com, and so it's our belief that whoever

19  received -- it wasn't Mr. Shelton who received that survey,

20  but rather someone at Supreme.

21         THE COURT:  May I get a response on that?

22         MR. BUSEY:  Your Honor, we filed the e-mail.

23  It's attached to the motion.  The survey, as I understand it,

24  would be what follows the Click here for the Aaron Thomas,

25  Inc. Survey.

UNREDACTED TRANSCRIPT

1          THE COURT:  That's correct.

2          MR. BUSEY:  Yeah, we filed the e-mail.

3          THE COURT:  Right.  And that's what I've seen.  I

4    had seen that before, but I had not seen the survey.

5          MR. BUSEY:  Yeah, I have not seen the survey -- I

6    certainly -- I don't know who it all went to, so I don't dare

7    speak of the -- again, I don't know how many people.  I don't

8    know who has clicked through it.  I don't know who has looked

9    at it, but if the representation is that I know what the

10   contents -- that counsel knows what the contents of the

11   survey are, that's not correct, Your Honor.

12         THE COURT:  Okay.  I accept that as -- because we

13   couldn't get to it either.  I mean, we don't have the -- we

14   didn't have the survey.  That's why we asked to see it

15   because we needed to.

16         Aaron Thomas, Mr. Gallagher?

17         MR. GALLAGHER:  Your Honor --

18         THE COURT:  Have you got the survey?

19         MR. GALLAGHER:  -- we have nothing further to add

20   there directly.  I'm getting a little bit of feedback.  I'm

21   sorry.  Can you hear me okay?

22         THE COURT:  No, that's okay.  I said, have you

23   got the survey?  I think the question is:  Do the defendants

24   already have it?

25         MR. GALLAGHER:  Your Honor, Aaron Thomas has not

UNREDACTED TRANSCRIPT

1   seen the survey as well, and what I was going to add was we

2   have nothing further substantively to add to what Mr. Busey

3   said other than -- and I hate to upset the apple cart here,

4   but the Commission's response to your inquiry, I think,

5   highlights the fundamental issue we have with the argument

6   that it's confidential to begin with.  As they are putting

7   this out there to the third parties, there's no

8   confidentiality that is attached.  They thought that Supreme

9   had already seen it.  I don't think it's protected for those

10  reasons.

11          THE COURT:  Well, that's actually a very valid

12  point.  I think we've done what we can do.  We've got a

13  schedule now on the briefing.  I've already indicated that it

14  was not our anticipation that we would not be lifting it

15  today, but we will not because of the agreement of the

16  parties.  We will look at this.  It's an interesting

17  question, and we will get it resolved very promptly.  I do

18  think -- well, I think I'll just leave it at that.

19          Anything else, then, from anyone else on this

20  matter?  Thank you, all.  It's an interesting question.

21  Always good to see everybody.

22          MS. ISOM-THOMPSON:  May I clarify on the

23  additional briefing related to Supreme's motion whether or

24  not Aaron Thomas may also file a brief?

25          THE COURT:  Oh, yes.  Oh, yes.  I'm sorry.  And

UNREDACTED TRANSCRIPT

44

1  that's -- absolutely.  I thought that was implicit, but now

2  it's explicit.  And that's even better.

3          MS. ISOM-THOMPSON:  Thank you.  I appreciate

4  that.

5          THE COURT:  Okay.  Well, I do really appreciate

6  counsel for EEOC bringing that over.  You have made our lives

7  easier, and it's always good to see you.  So thanks so much.

8          (Adjournment.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNREDACTED TRANSCRIPT

45

1                    **C E R T I F I C A T E**

2

3

4            I, TINA DuBOSE GIBSON, do hereby certify that the

5    foregoing 44 pages are, to the best of my knowledge, skill

6    and abilities, a true and accurate transcript from my

7    stenotype notes of the motion hearing held on the 15th day of

8    March, 2024, in the matter of:

9

10   EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

11   vs.

12   AARON THOMAS COMPANY, INC.,

13   and SUPREME STAFFING, LLC

14

15

16

17   Dated this 19th day of March, 2024.

18

19

20

21                          S/Tina DuBose Gibson

22                          _____
                            TINA DuBOSE GIBSON, RPR, RCR
                            Official Court Reporter
23                          United States District Court
                            Western District of Tennessee

24

25


                    UNREDACTED TRANSCRIPT