# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY ) <br> COMMISSION, ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> AARON THOMAS COMPANY, INC., ) <br> and SUPREME STAFFING LLC ) <br> ) <br>     Defendants. ) | Civil Action No. 2:23-cv-02599-JPM-tmp <br><br><br> JURY DEMAND |

## DEFENDANT SUPREME STAFFING'S REPLY BRIEF IN FURTHER SUPPORT OF EMERGENCY MOTION (DOC. 56)

In its Motion, Supreme Staffing sought a temporary stay of the EEOC's solicitations. (Motion, Doc. 56, PageID 479.) Although Supreme Staffing offered several justifications for this pause, the primary justification was that no one knew what the EEOC was soliciting nor with respect to whom. The EEOC, in short, was operating in the dark. Following the Court's entry of a temporary stay (Order, Doc. 59), at a hearing on this Motion (Minute Entry, Doc. 64), the EEOC agreed to keep in place the temporary stay. (Transcript, Doc. 66, PageID 606-07, Lines 24-7 ("That's fine with the [the EEOC]." (alteration added).) Supreme Staffing, in turn, maintains at this time that the temporary stay remains in place by agreement or, at a minimum, is no longer subject to an objection. Accordingly, while Supreme Staffing addresses below aspects of the EEOC's initial opposition arguments, this Reply focuses on the EEOC's assertion of privilege/protection over these solicitations. (*See id*., PageID 605, Lines 14-20 (Supreme Staffing requesting leave to brief privilege issue & AEO Proposal).)

4874-5832-4912

      **A.     Supreme Staffing has sufficient standing to challenge non-party discovery, especially when it remains unknown on behalf of whom the EEOC seeks relief and for what reasons.**

The EEOC continues to rely on *Mach Mining* and reiterate that it has described the group or class of people on behalf of whom it filed this (third) lawsuit. *Mach Mining*, however, concerned the availability and scope of judicial review of "whether the EEOC has fulfilled its duty to attempt conciliation of claims." *Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480, 495 (2015). Supreme Staffing has not challenged the sufficiency of the EEOC's prior conciliation efforts in this case, nor has it challenged the identification of individuals during the administrative investigation. (*See, e.g.*, Response, Doc. 61, PageID 506-507.) Supreme Staffing has challenged whether the EEOC has identified the specific individuals on behalf of whom it filed this (third) lawsuit and for what reasons.[1] Section 706 actions, like this one, focus on the individuals.

Under Section 706, formally 42 U.S.C. § 2000e-5—the Section under which this (third) lawsuit was filed (Amended Complaint, Doc. 16, PageID 39, ¶ 1)—the EEOC may bring suit against "any respondent," and it does so on behalf of the person "aggrieved." *See* § 2000e-5(f)(1). When the EEOC brings suit "under Section 706 of Title VII for the purpose of recovering individual relief, including compensatory and punitive damages, on behalf of aggrieved individuals, there must be individualized proof for every element of each claim." *E.E.O.C. v. Vill. at Hamilton Pointe LLC*, 2020 WL 13568924, at *2 (S.D. Ind. Sept. 29, 2020). That is what the EEOC does in a Section 706 action, it presents the individual's proof and seeks the individual's relief.

---

[1] The individuals in the EEOC's Disclosures, attached to its Response, are nearly all disclosed as employees of Defendant ATC. (*See generally*, Doc. 61-2, PageID 520-532.) The EEOC altered this in a subsequent round of disclosures, now using "Defendants" for most all of the individuals. Supreme Staffing is working to address that.

The solicitations arise out of and relate to this issue: identification of the individuals on behalf of whom the EEOC seeks relief and why. Supreme Staffing has standing to address and seek relief related to this issue, even though it involves third parties. "The explicit mention of 'a party' in the rule," Rule 26(c), "has been interpreted to provide standing for a party to contest discovery sought from third-parties." *Underwood v. Riverview of Ann Arbor*, 2008 WL 5235992, at *2 (E.D. Mich. Dec. 15, 2008) (citing *Fleet Bus. Credit Corp. v. Hill City Oil Co., Inc.*, 2002 WL 1483879, *2 (W.D. Tenn. Jun. 26, 2002)). Accordingly, it is without merit to say, as the EEOC does (Response, PageID 500), that Supreme Staffing lacks standing.

It is equally without merit to stand behind a "class" description in a Section 706 action, as the EEOC continues to try and do. (*See, e.g.*, Transcript, PageID 584, 17:2-11 ("seeking relief on behalf of a group of black workers").) This is not a class action nor a "class" case. The EEOC's use of the word "class" has no procedural or legal relevance; it just means more than one person. "'Class' cases," as the EEOC describes them, are simply "suits on behalf of multiple aggrieved individuals who were victims of discriminatory employment practices as well as suits on behalf of one or more individuals who were victims of discriminatory employment policies."[2] The EEOC use of "class" does not mean there is "a class." It just means there is more than one (allegedly) aggrieved individual. It remains without merit to identify with a class description those one or more individuals.

**B.     Whatever its "public interest" function, in litigation, the EEOC is treated just like any other litigant.**

As has always been the case, "[w]hen the government or one of its agencies comes into

---

[2] *See* U.S. Equal Employment Opportunity Comm'n, A Study of the Litigation Program Fiscal Years 1997–2001, at § B.2 ("Tables III – VII"), https://web.archive.org/web/20021023165009/ http://www.eeoc.gov/litigation/study/study.html, lass accessed March 22, 2024; *accord Serrano v. Cintas Corp.*, 699 F.3d 884, 907 (6th Cir. 2012) (Gibbons, J., concurring) (citing same).

court (with very few exceptions), it is to be treated in exactly the same way as any other litigant." *E.E.O.C. v. Los Alamos Constructors, Inc.*, 382 F. Supp. 1373, 1375 (D.N.M. 1974); *see also E.E.O.C. v. Peoplemark, Inc.*, 732 F.3d 584, 591 (6th Cir. 2013) (when addressing an award of attorney fees to a prevailing defendant, holding that "[w]e apply the same standard against the Commission as against other litigants.") The EEOC, to be sure, "cannot make up special procedural or substantive rules for itself to suit its circumstances." *E.E.O.C. v. Summer Classics, Inc.*, 41 F. Supp. 3d 1287, 1289 (N.D. Ala. 2011), *aff'd*, 471 F. App'x 868 (11th Cir. 2012). Yet, that is exactly what the EEOC aims to do here, now claiming the solicitations to be privileged and protected. This is improper.

      **C.    Whatever the scope of the EEOC's privilege or protection with aggrieved individuals, no privilege or protection attaches to the solicitations.**

The concept of the EEOC enjoying some "de facto" privilege or protection with an aggrieved individual is an elastic concept at best. Supreme Staffing, admittedly, cannot fully address this concept because Supreme Staffing does not know every situation in which the EEOC may claim some "de facto" privilege or protection to apply. Presently, however, the issue is only whether some privilege or protection applies to the solicitations. The EEOC bears the burden of establishing this, *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006), and it has failed to do so with respect to the solicitations.

The Sixth Circuit recognizes a communication as privileged when the following elements are present: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived." *Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998) (citing *Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992)).

Relatedly, the "work product privilege" was first recognized by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947). The current doctrine, as set forth in Federal Rule of Civil Procedure 26(b)(3), protects from production documents and tangible things prepared in anticipation of litigation by or for a party or by or for that party's representative. Again, like with any privilege, "[t]he party seeking the protection of the work-product privilege has the burden of proving that the disputed documents are work product." *Royal Surplus Lines Ins. v. Sofamor Danek Group*, 190 F.R.D. 463, 473 (W.D. Tenn. 1999).

Turning to the solicitations—not whether the EEOC *could ever* have a privilege or protection with an aggrieved individual, but just with respect to the solicitations—no privilege or protection attached. The EEOC has already confirmed that it "does not represent aggrieved individuals in litigation, and therefore does not have an attorney-client relationship with aggrieved individuals." (Response, PageID 508.) It likewise has "no established relationship" with any solicitation recipient. (Transcript, PageID 578, Lines 20-25.) The EEOC, moreover, has not presented any evidence that the solicitations were related to any recipient seeking legal advice. Indeed, the purpose of the solicitations, the EEOC has confirmed, was to "identify potential class members." (*Id.*, PageID 575, Lines 22-23; *see also* Response, PageID 498 ("potential aggrieved individuals").) "The mere fact that the letter and questionnaire was sent to a group of potential claimants (and/or witnesses) does not suffice to create the privileged professional relationship." *E.E.O.C. v. ABM Indus. Inc.*, 261 F.R.D. 503, 513 (E.D. Cal. 2009).

In sum, whatever the scope of the EEOC's "de facto" privilege or protection with aggrieved individuals, the EEOC has not established that a privilege or protection attached to the solicitations.

> **D.    Even if some privilege or protection could attach to the solicitations, the EEOC waived it.**

4874-5832-4912

      **1.**      **Especially with respect to the identity of individuals, the EEOC is using privilege/protections as both a sword and shield.**

"[L]itigants cannot hide behind the privilege if they are relying upon privileged communications to make their case." *In re Lott*, 424 F.3d 446, 454 (6th Cir. 2005) The shield/sword "image is meant to convey that 'the privilege may implicitly be waived when [the privilege holder] asserts a claim that in fairness requires examination of protected communications.'" *Ross v. City of Memphis*, 423 F.3d 596, 604-605 (6th Cir. 2005) (quoting *Bilzerian*, 926 F.2d at 1292). The EEOC is doing just that, trying to make its case on behalf of these still-unidentified individuals while simultaneously claiming their identity to be privileged/protected.[3] (*See, e.g.*, Transcript, PageID 577, 10:5-14 ("the recipients of the surveys are also protected").) This is improper and is a waiver of any claimed privilege/protection.

      **2.**      **The EEOC's actions have waived any privilege or protection that could attach to the solicitations.[4]**

The EEOC decided to solicit a broad swath of recipients without even knowing whether any intended recipient was the actual recipient. "[I]t's our belief," the EEOC has already told the Court, "that whoever received it wasn't [the intended recipient] . . . but rather someone at Supreme [Staffing]." (Transcript, PageID 608, Lines 2-20 (alterations added).) The EEOC does not know the identity of actual recipients of the solicitations, and it did not at the time they were sent. It, for example, sent the solicitations to generic email addresses, like "supremestaffing12@gmail.com." (*See* Email Solicitations, Doc. 56-1, p.1, 56-2, p.1.) The

---

[3] *But see E.E.O.C. v. Republic Servs., Inc.*, 2007 WL 465446, at *3 (D. Nev. Feb. 8, 2007) ("[A]list of names of persons to whom the Letter may have been sent is not protected by this doctrine.").

[4] The arguments in this section show with equal force that no privilege or protection attached to the solicitations, as Supreme Staffing argues above. Regardless of whether a privilege/protection never attached or was subsequently waived, Supreme Staffing submits that the result is the same: the solicitations are neither privileged nor protected.

solicitations say nothing about them being privileged or confidential, and they do not forbid (or even warn against) the recipient forwarding them, as most privileged and protected communications do. To the contrary, like any email or marketing material broadly sent to recipients, the solicitations include an "unsubscribe" link. (*Id.*) The EEOC is just like any other litigant—here, like any other litigant, even if some privilege or protection could attach to the solicitations, the EEOC has waived it. *See, e.g.*, *ABM Indus. Inc.*, 261 F.R.D. at 513 ("Having waived the protection with respect to the form of questionnaire, their responses are essentially verbatim witness statements made by third parties.").

        **E.**        **The AEO proposal mitigates any remaining concern.**

Before the Court is Defendant ATC's Motion for Entry of Protective Order. This Motion contemplates a (relatively routine) protective order and would allow documents or information to be designated "Confidential." The proposed protective order, as Supreme Staffing will further summarize in a planned response to that Motion, can and should be amended to allow for a (typical) AEO designation, Attorneys' Eyes Only. Regardless of why an AEO designation should be used, as Supreme Staffing argued and agreed during the hearing, it works as an initial approach and advances this issue. (*See* Transcript, PageID 601-02, 34:2-35:4.) Against this backdrop, the following can be (and should be) disclosed/produced by the EEOC subject to an AEO designation: (i) the recipients of any solicitation; (ii) the content of any survey; and (iii) the responses to any survey.

Respectfully submitted, this, the 22nd day of March, 2024.

        *s/ Zachary B. Busey*
        **ZACHARY B. BUSEY**
        Tennessee Bar No. 29763
        zbusey@bakerdonelson.com

        **WHITNEY M. DOWDY**
        Tennessee Bar No. 24985

wdowdy@bakerdonelson.com

**MARY KATHERINE SMITH**
Tennessee Bar No. 35328
mkcampion@bakerdonelson.com

**DEAN J. SHAUGER**
Tennessee Bar No. 39746
dshauger@bakerdonelson.com

BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, P.C.
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
(901) 526-2000 – telephone

*Attorneys for Defendant Supreme Staffing LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

So certified, this, the 22nd day of March, 2024.

*s/ Zachary B. Busey*
**ZACHARY B. BUSEY**
