# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**

        Plaintiff,

v.

**AARON THOMAS COMPANY, INC. and SUPREME STAFFING, LLC,**

        Defendants.

Case No. 2:23-cv-02599-JPM-tmp

## DEFENDANT AARON THOMAS COMPANY, INC.'S SUPPLEMENTAL BRIEFING REGARDING ISSUES RAISED BY DEFENDANT SUPREME STAFFING, LLC'S EMERGENCY MOTION & INCORPORATED MEMORANDUM FOR TEMPORARY PROTECTIVE ORDER

Pursuant to the Court's Order Regarding Additional Briefing (Doc. 65), Defendant Aaron Thomas Company, Inc. ("ATC") respectfully submits the following Supplemental Briefing Regarding Issues Raised by Defendant Supreme Staffing, LLC's ("Supreme") Emergency Motion & Incorporated Memorandum for Temporary Protective Order ("Emergency Motion").

**I.    INTRODUCTION**

The Equal Employment Opportunity Commission ("Commission" or "Plaintiff") asserts that communications between it and third-party employees of Supreme with whom it has no attorney-client relationship seeking to solicit information related to the recipients' employment with Supreme are confidential and protected by the attorney-client privilege, the work product doctrine, and the common interest privilege regardless of the nature of the response, if any. The Commission's arguments are meritless and its solicitation emails (and the linked surveys and identities of the recipients) are relevant, not privileged, and must be disclosed.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

The Commission has identified approximately 60 allegedly aggrieved individuals on behalf of whom it purports to seek relief in this case. (Doc. 61-2). It claims that "with discovery, [it will] identify hundreds more." (Doc. 53 at 11:4–5). On February 27 and/or 28 and March 5, 2024, the Commission sent email correspondence to individuals it describes as "potential aggrieved individuals" it believes "could participate as claimants in this lawsuit," apparently in an attempt to solicit participants in this litigation. (Docs. 56-1 and 56-2; Doc. 61-4 at ¶¶ 5–7). Upon learning of the Commission's efforts, Supreme filed its Emergency Motion seeking a temporary stay of the Commission's solicitation campaign so it could evaluate the nature, extent, and propriety thereof. (Doc. 56). On March 6, 2024, the Court entered an order directing the Commission to "cease sending out solicitation emails to [Supreme's] workforce," and to respond to Supreme's Emergency Motion by, at the very least, producing to the Court "the materials contained in the emails and survey website sent to [Supreme's] workforce." (Doc. 59). On March 11, 2024,[1] the Commission responded, arguing that Supreme cannot justify an order limiting its communications with "potential aggrieved individuals and witnesses," and that such communications are protected by the attorney-client privilege, common interest privilege, and/or the attorney work product doctrine. (Doc. 61, PageID 496, 507–13).[2] Following a hearing on March 15, 2024, the Court

---

[1] That same day, the Commission served its Responses to ATC's first sets of written discovery, asserting a series of objections based on the common interest privilege, the attorney work product doctrine, and/or the governmental deliberative process privilege, and failed to identify current and former employees of the Defendants targeted by its email solicitation campaign or to produce documents related to the campaign. Significantly, the Commission failed to produce a privilege log pursuant to Fed. R. Civ. P. 26(b)(5)(A)(ii) addressing the documents with respect to which it purported to assert a privilege. To the extent any privilege or protection otherwise would apply, this failure technically results in a waiver of such privilege. *See Nieves v. Baptist Mem'l Med. Grp., Inc.*, No. 18-2748-JTF-tmp, 2020 WL 3441900, *2 (W.D. Tenn. June 23, 2020) (citing *Pravak v. Meyer Eye Grp., PLC*, No. 2:07-2433-MLV, 2009 WL 10664851, at *7 (W.D. Tenn. Oct. 22, 2009)) (ordering disclosure of unredacted documents on the ground that privilege was waived because documents were not identified on privilege log). As fully set forth below, however, no privilege applies.

[2] The Commission failed to include the materials the Court ordered the Commission to include in its response. (*See* Doc. 61).

2

requested additional briefing on whether the Commission's communications and survey were protected attorney-client communications, work product, or subject to the common interest privilege. (Doc. 65).

### III. LAW AND ANALYSIS

No blanket privilege applies to the information and documentation related to the Commission's solicitation emails and survey. The Commission, like any other party in civil litigation, is obligated to participate in discovery and to disclose witnesses and documents it may use to support its claims, pursuant to Fed. R. Civ. P. 26(a) and any applicable Court Order (*see* Doc. 52, setting deadline to supplement Initial Disclosures). Notwithstanding that fact, the Commission seeks to require ATC and Supreme to litigate this matter with a proverbial blindfold – without the knowledge of the identities of individuals solicited by the Commission, including those who do not believe they were the subject to discrimination. As fully set forth below, the Commission must disclose: (1) all of the individuals' identities solicited by the Commission to participate as claimants in this lawsuit and the blank survey; (2) the identities of, email communications with, and survey questionnaires with responses of all individuals who either failed to respond to the Commission's solicitation or who responded to the Commission's survey that they *do not wish* to have the Commission represent their interests; and (3) the identities of all individuals who responded to the Commission's survey that they *do wish* to have the Commission represent their interests and the alleged facts they have communicated to the Commission.

### A. There Is No Blanket Privilege Covering The Commission's Communications With Potential Aggrieved Individuals Or Their Identities.

The Commission's position that *all* identification of and communications with potential aggrieved individuals are covered by the attorney-client,[3] common interest, and/or work product privilege[4] is unsupported by law.

Where, as here, a defendant does not have adequate means to identify the allegedly aggrieved individuals, the courts have consistently required the Commission to identify them. For example, in *Serrano v. Cintas Corporation*, the district court for the Eastern District of Michigan rejected the Commission's contention that it was entitled to withhold the identities of claimants on

---

[3] The Commission's reliance on *Upjohn* and other authorities for the proposition that its communication with any potential aggrieved individual constitutes attorney-client privileged material (*see* Doc. 61, PageID 508) is misplaced. None of these authorities is applicable to the Commission's communications with third parties who have had no prior involvement in the underlying charge or investigation and are otherwise distinguishable. *Cf. Upjohn Co. v. United States*, 449 U.S. 383, 389–97 (1981) (analyzing application of the attorney-client privilege to communications between in-house corporate attorneys and company employees); *Bauman v. Jacobs Suchard, Inc.*, 136 F.R.D. 460, 461 (N.D. Ill. 1990) (discussing the EEOC's role as an intervener in an ADEA action where, unlike Title VII claims, the "right of any person to bring suit under the ADEA is terminated when a suit is brought by the EEOC," and the letters and questionnaires at issue were from persons who had expressed a desire to be represented); *EEOC v. Scrub, Inc.*, 09 C 4228, 2010 WL 2136807, at **7–9 (N.D. Ill. May 25, 2010) (finding that returned communications between the EEOC and third parties may be privileged, but leaving open the question of whether there must be an affirmative indication that the aggrieved individual seeks the EEOC's representation to qualify for privilege); *EEOC v. Bill Heard Chevrolet Corp.*, No. 207-CV-01195-RLHPAL, 2009 WL 2489282, *4 (D. Nev. Aug. 12, 2009) (predating the Eastern District of Michigan's holding in *Serrano* and finding completed questionnaires privileged but compelling disclosure of facts underlying the questionnaire responses ); *EEOC v. Int'l Profit Assoc., Inc.*, 206 F.R.D. 215, 219 (N.D. Ill. 2002) (considering whether interview notes taken by Commission attorneys and legal staff during telephone calls were protected); *EEOC v. Tony's Lounge, Inc.*, 2010 WL 1444874, *2 (S.D. Ill. 2010) (determining that the defendant could not elicit deposition testimony regarding the substance of conversations from an individual who had not affirmatively declined representation by the Commission with Commission attorneys).

[4] Similarly, the Commission's reliance on nonbinding authorities to suggest its communications are attorney work product (*see* Doc. 61, PageID 511), simply are not applicable to its solicitations here, and also stand for the proposition that the Commission must disclose the identities of the recipients and the facts contained in the survey responses. *Cf. Bill Heard*, 2009 WL 2489282, *4 (compelling disclosure of the facts contained in the completed questionnaires); *EEOC v. Carrols Corp.*, 215 F.R.D. 46, 52 (N.D.N.Y. 2003) (ordering production of summaries and identification of individuals who returned the otherwise protected questionnaire responses); *Russell v. General Electric Co.*, 149 F.R.D. 578, 581–82 (N.D. Ill. 1993) (recognizing only that deposition questions which tend to reveal counsel's mental impressions are improper but allowing counsel to elicit testimony "to elicit any facts concerning the case which defense counsel communicated"). To the extent the authorities the Commission cites do relate to communications with third parties without prior involvement in the underlying charge or litigation, they do not apply because those cases are not in the same procedural posture. *See EEOC v. Texas Roadhouse, Inc.*, No. Civ. A 11-11732-DJC, 2014 WL 4471521, *5 (D. Mass. Sept. 9, 2014) (addressing a Rule 30(b)(6) deposition topic); *Russell*, 149 F.R.D. at 581–82 (addressing a motion to compel a deposition).

behalf of whom they purported to seek relief[5] and of those to whom it sent questionnaires, as well as copies of all questionnaires completed and returned by prospective aggrieved individuals. No. CIV.A 04-40132, 2010 WL 746430, at *1 (E.D. Mich. Mar. 2, 2010). The court found that the identities of the individuals to whom the EEOC issued letters and questionnaires was relevant, and that the EEOC had "no legal justification for denying access" to that information, rejecting the EEOC's arguments that the information was subject to an attorney-client privilege and work product protection (although the EEOC had engaged in a process of "winnowing" information produced by defendant). *Id.* at **2, 6–8. The court noted "it is well established that the existence of the attorney/client relationship and the identity of the 'client' are not encompassed within the [attorney-client] privilege." *Id.* at *3 (citing source omitted). Additionally, it found the EEOC had not demonstrated that "the mere identity of persons contacted for possible inclusion in a class action lawsuit betrays the mental impressions or legal analysis of its attorneys." *Id.* at *3.

Next, the court held that the questionnaires sent by the EEOC to prospective class members, which were completed and returned, were neither protected by the attorney-client privilege nor the work product doctrine. *Id.* at **4–8 (citing *EEOC v. ABM Industries, Inc.*, 2009 U.S. Dist. LEXIS 97646 (E.D. Cal. Oct. 6, 2009)). Reasoning that the completed questionnaires contained "only unprivileged identification information," and there was "no indication that the responses were intended to remain confidential," the court found the EEOC had not produced evidence that the "recipients took affirmative steps to enter into an attorney-client relationship." *Serrano*, 2010 WL 746430, at *7. Although the Commission claimed that the contents of the

---

[5] Specifically, the EEOC sought to withhold the identities of those individuals on whose behalf the EEOC sought damages until the second stage of its proposed bifurcation of the case. *See Serrano*, 2010 WL 746430, at *1. The court soundly rejected that proposal. *Id.* (citing *EEOC v. CRST Van Expedited, Inc.*, 257 F.R.D. 513, 518 (N.D. Iowa 2008)) (ordering immediate identification of all aggrieved individuals . . . "to avoid unfair prejudice to the defendant employer in facing a 'moving target' of prospective plaintiffs").

5

surveys were protected work product because it contained attorneys' mental impressions—the same argument Commission proffers here—the court rejected this argument, stating "[w]hen work product has minimal substantive content, and presents none of the dangers that the rule is designed to avoid, a party's need to avoid time and effort in obtaining the information elsewhere is sufficient to defeat the effects of the attorney work product protection." *Id.* at *8 (citing *United States v. Amerada Hess Corp.*, 619 F.2d 980 (3rd Cir. 1980)). The court further found that the information solicited was "not of a type likely to betray the mental impressions or tactics of Plaintiff's counsel." *Serrano*, 2010 WL 746430, at *8. Accordingly, the court ordered the EEOC to produce: (1) the identities of those on whose behalf the EEOC was pursuing damages; (2) the identities of all persons to whom the EEOC sent the letter and questionnaire; and (3) copies of all completed questionnaires returned to the EEOC. *Id.* at *9.

In short, the Commission's wholesale argument that *all* identities of and communications with potentially aggrieved individuals are protected by the attorney-client privilege, the common interest privilege, and/or the work product doctrine is an inaccurate statement of law. ATC addresses the Commission's obligation to produce categories of information and documentation related to its solicitation campaign below.

### B. The Commission Must Disclose The Identities Of All Individuals To Whom The Commission Sent Email Communications And Surveys.

The identities of all individuals to whom the Commission sends email communications regarding its survey are discoverable and are not protected by the attorney-client privilege, the common interest privilege, or attorney work product protection. In *Serrano*, the Eastern District of Michigan specifically held that the identities of these individuals are neither protected by the attorney-client privilege nor the work product doctrine. *See Serrano*, 2010 WL 746430, at **2–3.

6

The Commission asserts that this information is attorney work product because attorney Griffin-Pack "reviewed the . . . administrative investigation . . . [to] determine[] non-managerial and non-supervisory employees . . . ." (Doc. 61-4 at ¶ 5). Undoubtedly, the Commission's only analysis here was ensuring it did not improperly solicit managers and supervisors who are represented by counsel for Supreme.[6] An attorney's efforts to fulfill her ethical obligations is not the type of work product that is protected by the work product doctrine under Fed. R. Civ P. 26. Even if the segregation of potential claimants from members of management was sufficient to be protected work product, any protection was waived when the Commission elected to send mass communications to this group of individuals. *See In re Columbia/HCA Healthcare Corp.*, 293 F.3d 289, 294 (6th Cir. 2002) (attorney-client privilege is waived by voluntary disclosure of otherwise privileged communications to third parties). Moreover, any attorney work product protection would be overcome by ATC's substantial need for the information to prepare its defense. *See Serrano*, 2010 WL 746430, at *8 (stating a "party's need to avoid time and effort in obtaining the information elsewhere" may defeat work product protection where "work product has minimal substantive content, and presents none of the dangers that the rule is designed to avoid").[7] The Commission, therefore, cannot bear its burden to establish that the identities of these individuals is protected by the attorney work product privilege. *See United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006) (noting the party asserting work product protection bears the burden of establishing the work product doctrine protects the information at issue).

---

[6] ATC also is entitled to information to be able to assess whether the Commission correctly determined that the individuals it has contacted are not managers or supervisors.

[7] ATC cannot obtain this information by other means because the individuals solicited, to ATC's knowledge, were employees of Supreme, and ATC did not provide the information reviewed by the Commission.

7

The Commission's common interest arguments similarly fail. The common interest privilege "expands the coverage of the attorney-client privilege where two or more clients with a common interest in a matter are represented by separate lawyers and agree to exchange information concerning the matter." *Reed v. Baxter*, 134 F.3d 351, 357 (6th Cir. 1998). Courts within the Sixth Circuit routinely hold that this privilege only applies where the underlying information is privileged. *See, e.g.*, *Elvis Presley Enterprises, Inc. v. City of Memphis, Tennessee*, No. 2:18-CV-02718, 2020 WL 4015476, at *7 (W.D. Tenn. July 16, 2020) (citations omitted). Because the Commission cannot establish that any of the underlying information requested by ATC is privileged, the common interest privilege does not apply.

Accordingly, the Commission must disclose the identities of all individuals to whom the Commission sent email communications regarding its survey.

C. **The Commission Must Disclose The Identities Of, And Must Produce Email Communications And Survey Responses Of, All Individuals Who Failed To Respond Or Declined The Commission's Solicitation.**

Next, the identities of, and all communications with, individuals who failed to respond to, or declined, the Commission's solicitation are discoverable and are not protected by the attorney-client privilege or attorney work product protection. The Commission asserts it has an attorney-client-like relationship with "aggrieved individuals," and suggests at least some of the solicitation emails merely "inform[ed] the aggrieved individuals about this pending litigation." (Doc. 61 at PageID 510, 514). However, the Commission also admittedly has sent solicitation emails and survey communications to "potential aggrieved individuals," third parties to this lawsuit whom it does not represent, and some of whom ostensibly responded that they do not wish to participate in this litigation or did not respond. (*See* Doc. 61, PageID 507). The Court reviewed the solicitation email *in camera* and noted the solicitation seeks to confirm whether the recipient seeks representation in this litigation by the Commission. (Doc. 66 at 7:9–11). The Commission's

8

communications with potential aggrieved individuals, seeking to form an attorney-client relationship which did not already exist, are fatal to the Commission's claims of privilege regarding documentation related to its email solicitation campaign. *See In re Columbia/HCA Healthcare Corp.*, 293 F.3d 289, 294 (6th Cir. 2002) (attorney-client privilege is waived by voluntary disclosure of otherwise privileged communications to third parties).

Moreover, the Commission's position that all such communications are privileged is contrary to the weight of applicable authority. *See Collegeville/Imagineering Ent., et al.,* No., CV-05-3033-PHX-DGC, 2007 WL 158735, at *1 (D. Ariz. Jan. 17, 2007) (citing *EEOC v. Albertson's, Inc*., No. CV–06–1273, 2006 U.S. Dist. LEXIS 72378, at *18 (D. Colo. Oct. 4, 2006)) ("An attorney-client relationship does not exist across an entire potential class merely when the EEOC has filed a case and identified the class."). The attorney-client privilege is not so expansive as to cover the Commission's solicitation to potential aggrieved individuals whom it does not represent. To the contrary, no privilege attaches where a potentially aggrieved individual affirmatively declines the Commission's solicitation or fails to respond. *Serrano*, 2010 WL 746430, at *7 (finding no attorney-client privilege where there is no evidence that recipients took affirmative steps to enter into such relationship with the Commission). For these same reasons, the Commission cannot meet its burden to establish a common interest privilege applies to its solicitation emails or its survey. *Elvis Presley Enterprises, Inc.*, 2020 WL 4015476, at *7.

Likewise, the solicitation emails and the survey are not protected from production as attorney work product simply because they were prepared in anticipation of litigation. (Doc. 61 at PageID 510). The work product doctrine is designed to "permit an attorney to 'assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference . . . to promote justice and

9

to protect [his] clients' interests.'" *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006) (quoting *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)).  To accept the Commission's arguments would expand the work product doctrine past its intended purpose.

Additionally, any attorney work product protection would be overcome by ATC's substantial need for this documentation to prepare its case.  *See Serrano*, 2010 WL 746430, at *8 (stating a "party's need to avoid time and effort in obtaining the information elsewhere" may defeat work product protection where "work product has minimal substantive content, and presents none of the dangers that the rule is designed to avoid").

Further, the Commission misreads Rule 26(b)(3).  The Rule does not protect entire documents from disclosure simply because of the inclusion of some mental impressions within the documents.  Rather, Rule 26(b)(3)(B) specifically authorizes disclosure of these documents, and should they contain some mental impressions, it affords protection of only the mental impressions should disclosure be required by the court.  Fed. R. Civ. P. 26(b)(3)(B).

Accordingly, the Commission must produce the identities of, and all communications (including survey responses) with, individuals who failed to respond to, or declined the Commission's solicitation.

### D.     The EEOC Must Disclose The Identities Of Individuals Who Accepted The Commission's Solicitation.

The Commission is under a duty to disclose the identities of the individuals who accepted the Commission's solicitation or otherwise manifested an intent to be represented by the Commission.  As the Court made clear during the hearing on Supreme's Emergency Motion, Federal Rule of Civil Procedure 26 requires identification of individuals the Commission will or may use to support its claims.  *See* Fed. R. Civ. P. 26(a)(i)(a)(1).  Furthermore, the identities of individuals with knowledge of the facts—regardless of how the identities are known—cannot be

10

withheld. *See id.* Likewise, the scope of discovery includes "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The identities of individuals who accepted the Commission's solicitation or otherwise manifested an intent to be represented by the Commission is not protected by the attorney-client privilege or the work product doctrine. *See e.g., Serrano,* 2010 WL 746430, at **1, 9 (ordering disclosure of the identities of individuals on whose behalf the EEOC will claim damages); *EEOC v. Sterling Jewelers Inc.*, No. 08-cv-00706(A)(M), 2010 WL 2803017 (W.D.N.Y. Jul. 15, 2010) (holding that the defendant is entitled to know the identities of individuals allegedly discriminated against as "[t]he identities of the individual claimants is essential to [the defendant's] ability to defend itself."); *see generally In re Grand Jury Proceedings — Gordon, Witness*, 722 F.2d 303, 307 (6th Cir. 1983) (quoting *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 451 (6th Cir. 1983)) ("This Circuit has acknowledged the 'unanimously embraced . . . general rule that the identity of a client is . . . not within the protective ambit of the attorney-client privilege.'"). Again, the Commission cannot meet its burden to establish the common interest privilege applies to this information. *Elvis Presley Enterprises, Inc.*, 2020 WL 4015476, at *7.

Here, the Commission has produced Initial Disclosures identifying only allegedly aggrieved individuals it discovered during its administrative investigation of the underlying charge of discrimination. However, the Commission represented to the Court during the hearing that it has solicited "over 20" allegedly aggrieved individuals through its February 27 and/or 28, 2024 and March 5, 2024 surveys. (Doc. 66 at 12:20–23). ATC is entitled to timely identification of these individuals, as well as the alleged facts they have shared with the Commission.[8]

---

[8] While the Emergency Motion was pending and prior to the hearing, the Commission responded to ATC's initial written discovery requests by directing ATC to its Supplemental Rule 26(a)(1) Initial Disclosures (Doc. 61-3), served

11

## IV. CONCLUSION

Based on the forgoing, the Court should reject the Commission's arguments regarding privilege and should order the production of the following:

(1)  the identities of all individuals solicited by the Commission related to this lawsuit, and the blank survey;

(2)  the identities of, email communications with, and survey questionnaires with responses of all individuals who either failed to respond to the Commission's solicitation or who responded to the Commission's survey that they *do not wish* to have the Commission represent their interests; and

(3)  the identities of all individuals who responded to the Commission's survey that they *do wish* to have the Commission represent their interests and the alleged facts they communicated to the Commission.

Respectfully submitted,

*s/Amber Isom-Thompson*
Matthew G. Gallagher (TN Bar No. 027242)
Amber Isom-Thompson (TN Bar No. 021210)
Kaitlyn A. Hansen (TN Bar No. 037021)
Sean P. O'Brien (TN Bar No. 037608)
LITTLER MENDELSON, P.C.
One Commerce Square
40 South Main Street, Suite 2500
Memphis, TN 38103
Telephone:   901.795.6695
Facsimile:   901.881.4333
Email:            mgallagher@littler.com
                     aisomthompson@littler.com
                     khansen@littler.com
                     sobrien@littler.com

*Attorneys for Defendant*
*Aaron Thomas Company, Inc.*

---

on February 28, 2024. Apparently, despite having solicited "over 20" new allegedly aggrieved individuals in its recent email solicitation campaign, the Commission failed to identify them in its discovery responses.

**CERTIFICATE OF SERVICE**

This is to certify that on the 22nd day of March, 2024, the undersigned filed the foregoing using the Court's CM/ECF system, which will send notification of such filing to the appropriate CM/ECF participant(s), as follows:

    Faye A. Williams (TN Bar No. 011730)
    Amy Black (TN Bar No. 016102)
    Roslyn Griffin Pack (MS Bar No. 103317)
    Markeisha K. Savage (TN Bar No. 024693)
    Donnie Snow (TN Bar No. 030585)
    Equal Employment Opportunity Commission
    Memphis District Office
    200 Jefferson Avenue, Suite 1400
    Memphis, TN 38103
    Telephone:    901.701.6445
    Email:    faye.williams@eeoc.gov
        amy.black@eeoc.gov
        roslyn.griffin-pack@eeoc.gov
        markeisha.savage@eeoc.gov
        donnie.snow@eeoc.gov


    Gary Sullivan (AR Bar No. 92051)
    Maryna Jackson (AR Bar No. 2009111)
    Equal Employment Opportunity Commission
    Little Rock District Office
    820 Louisiana Street, Suite 200
    Little Rock, AR 72201
    Telephone:    501.900.6153
    Email:    gary.sullivan@eeoc.gov
        maryna.jackson@eeoc.gov

        *Attorneys for Plaintiff*
        *Equal Employment Opportunity Commission*

    Zachary B. Busey (TN Bar No. 29763)
    Dean J. Shauger (TN Bar No. 39746)
    Whitney M. Dowdy (TN Bar No. 24985)
    Mary Katherine Smith (TN Bar No. 35328)
    Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
    165 Madison Avenue, Suite 2000
    Memphis, TN 38103
    Telephone:    901.526.2000
    Email:    zbusey@bakerdonelson.com

dshauger@bakerdonelson.com
wdowdy@bakerdonelson.com
mkcampion@bakerdonelson.com

*Attorneys for Defendant*
*Supreme Staffing, LLC*

*s/Amber Isom-Thompson*