1

```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF TENNESSEE
 2                      WESTERN DIVISION

 3   _____
                              |
 4   EQUAL EMPLOYMENT            |
     OPPORTUNITY COMMISSION,     |
 5                              |
                Plaintiff,       |
 6                              |
     vs.                         |   NO. 23-CV-02599
 7                              |
     AARON THOMAS COMPANY, INC., |
 8   and SUPREME STAFFING, LLC,  |
                                |
 9             Defendants.       |
                                |
10   _____

11

12

13             TRANSCRIPT OF THE MOTION HEARING

14                      BEFORE THE

15             HONORABLE JON P. MCCALLA

16

17

18                        MONDAY

19                    APRIL 8, 2024

20

21

22

23                 LISA J. MAYO, RDR, CRR
24                   OFFICIAL REPORTER
               FOURTH FLOOR FEDERAL BUILDING
25              MEMPHIS, TENNESSEE 38103
```

**UNREDACTED TRANSCRIPT**

2

1                    A P P E A R A N C E S

2

3         Appearing on behalf of the Plaintiff:

4              ROSLYN N. GRIFFIN-PACK
               MARKEISHA SAVAGE
5              Equal Employment Opportunity Commission
               1407 Union Avenue
6              Suite 901
               Memphis, Tennessee 38104
7              (901) 544-0099
               roslyn.griffin-pack@eeoc.gov

8

9         Appearing on behalf of the Defendants:

10             MATTHEW G. GALLAGHER
               SEAN O'BRIEN
11             Littler Mendelson, PC
               One Commerce Square
12             40 South Main Street
               Suite 2500
13             Memphis, Tennessee 38103
               aisomthompson@littler.com

14

15        Appearing for Supreme Staffing:

16             MR. ZACHARY B. BUSEY
               MS. WHITNEY DOWDY
17             Baker Donelson Bearman Caldwell & Berkowitz
               165 Madison Avenue
18             Suite 2000
               Memphis, Tennessee 38103
19             (901) 526-2000
               zbusey@bakerdonelson.com

20

21

22

23

24

25

                    **UNREDACTED TRANSCRIPT**

```
 1                          MONDAY

 2                        APRIL 8, 2024

 3              ----------------------

 4

 5              THE COURT:  All right.  We really needed to have

 6   a conference, a couple of things, to go over the pending

 7   motion, which was useful hopefully, and we probably will have

 8   that resolved pretty easily, hopefully, and also go over the

 9   schedule because we need to adjust the schedule some, and we

10   needed everybody here because I wanted to make sure we had

11   the best communications we could get.  Seems like there might

12   be an issue about that.  And it's always better if

13   everybody's communicating in a productive way, in a more

14   favorable way.

15              So we did enter a protective order in the case,

16   and it was entered on Friday, and all of you should have

17   that.  And I was a little surprised that the parties could

18   not agree.  That's normally something that's readily agreed

19   upon.  And I would encourage you in the future to be

20   realistic about what we can do, and we do need to do that

21   sort of thing.

22              There are things that we need to protect here.

23   We don't need to disclose individual's personal identifiers.

24   We want to be careful about that and we want to respect

25   everybody.  So I think there was a bit of a failure on that,
```

**UNREDACTED TRANSCRIPT**

4

1   and hopefully we won't have that happen again and everybody

2   will get along in the future.

3          Okay.  Now, in connection with this matter, of

4   course, we have -- this is Supreme 3.  There's Supreme 1 and

5   Supreme 2.  And we did look a little bit at their scheduling,

6   obviously, and need to make sure that we take care of a

7   couple of issues.

8          This was -- there's been a motion to consolidate,

9   but that doesn't seem to be meritorious because the parties

10  aren't the same, unless somebody can tell me something new

11  about that.  Anything to talk about that in regard, I take

12  it -- let's make sure we know who everybody is.  Who -- let's

13  start with EEOC counsel.  I see my good local counsel here,

14  but -- oh, I see some other folks, too.

15          **MS. PACK:**  Yes.  It's very nice to meet you, Your

16  Honor.  I'm Roslyn Griffin Pack.

17          **THE COURT:**  Okay.  Well, good to have you here.

18  And who's your buddy with you?

19          **MS. PACK:**  I have Ms. Markeisha Savage.

20          **MS. SAVAGE:**  Good afternoon, Your Honor.

21          **THE COURT:**  How are you doing?

22          **MS. PACK:**  And we have Ms. Kedra Butler, who is a

23  paralegal at -- for our office.

24          **THE COURT:**  All right, Ms. Butler, we let you

25  move up because they were isolating you out in the back, and

**UNREDACTED TRANSCRIPT**

1  that made me very concerned.  So we're glad to have you here,

2  absolutely.

3           And then, let's see who we have for Aaron Thomas.

4           **MR. GALLAGHER:**  Good afternoon, Your Honor.

5  Matthew Gallagher here on behalf of Aaron Thomas, and with me

6  is Sean O'Brien.

7           **THE COURT:**  Absolutely.  Okay, Mr. Gallagher.

8           And then who do we have for Supreme?

9           **MR. BUSEY:**  Good afternoon, Your Honor.  Zachary

10  Busey for Supreme Staffing, and I have with me Whitney Dowdy.

11           **THE COURT:**  Absolutely.

12           **MS. DOWDY:**  Good afternoon, Your Honor.

13           **THE COURT:**  Afternoon.  So we've got everybody.

14           We may want to have a little bit of discussion.

15  There was a motion to dismiss for failure to state a claim.

16  I think that that's probably something that we can recognize

17  that it's not going to be successful in the case, as far as

18  the Court can tell.  I understand there were some problems,

19  and we hopefully get those resolved over time and fairly --

20  hopefully fairly soon, but we just need to be aware that that

21  is out there and we're trying to move the case along.

22           This case does involve, however, the motion that

23  has been brought here, which is basically to put some things

24  off for a period of time, which is understandable, but

25  typically something as to which we would have some concern.

**UNREDACTED TRANSCRIPT**

1          I do know that in the Amended Complaint, there

2     are basically three types of counts.  And in Count 1, we have

3     three individuals at least named, who would be individuals

4     who might be regarded as in the position of Plaintiffs.  I

5     understand the EEOC is a Plaintiff, obviously -- but would be

6     individuals as to whom discovery or disclosures would need to

7     be made.  That makes good sense, and hopefully everybody was

8     on board in that regard.  And that was the -- Count 1 deals

9     with failing to hire, select, refer or place African-American

10    applicants in positions because of their race.  So that's the

11    first one.

12         Then in Count 2, we have again an assertion of

13    discrimination against African-American employees by

14    segregating them and placing them in less desirable --

15    because these are individuals who are hired, but the

16    assertion is that they were placed in less desirable and

17    lower-paying positions.  So that's basically discrimination

18    based on pay and maybe some other things possibly, too.  And

19    there were at least four individuals who were named in that

20    regard, and I assume that we're going to get all that

21    disclosed in the case.

22         And then as to Count 3, we have individuals who

23    were terminated.  This is a kind of complicated situation.

24    When you're dealing with somebody who's terminated, often

25    very fact driven as to individuals, so that may be a little

**UNREDACTED TRANSCRIPT**

1   complicated, obviously.  And that's at least four individuals

2   in that regard.  So I think that's right.

3            Is that correct from the EEOC's point of view?

4            **MS. PACK:**  Yes, Your Honor.

5            **THE COURT:**  Okay.  And from the defense point of

6   view, I don't -- I think I'll just start with Supreme on

7   that.

8            **MR. BUSEY:**  Yeah, no disagreement with the

9   Court's summary.

10           **THE COURT:**  Okay.  And of course, Aaron Thomas?

11           **MR. GALLAGHER:**  Aaron Thomas agrees.

12           **THE COURT:**  Absolutely.  Okay.

13           Now, we also -- there's -- the question is,

14  should there be additional time and how much more additional

15  information should be disclosed in order to have meaningful

16  26(a)(1) initial disclosure?

17           Does anybody take the position that there

18  shouldn't be initial disclosure in the case?  I know we can't

19  have all of the disclosure and that you can add individuals

20  later in the proceedings.  We wanted to look at the

21  possibility of a clearcut offer deadline in that regard so

22  that the case could normally proceed.  Otherwise, we run into

23  the problem of last-minute disclosures, things tend to get

24  put off and that doesn't help anybody.

25           So EEOC on that, what do we think?  We need to

**UNREDACTED TRANSCRIPT**

1    have -- that would be -- there would be a time period, and

2    you had -- will have had time to complete your investigation

3    as to additional individuals, get back the survey data, speak

4    to individuals and so forth, but there should -- shouldn't

5    there be a time at which we know we've sorted people out?

6            **MS. PACK:**  Yes, Your Honor, and that's something

7    that's typical in EEOC cases.  The Court often will allow the

8    parties to conduct discovery, and then after -- you know,

9    they set a certain deadline where the EEOC has to identify

10   all class members.  And so, that's not something we're not

11   used to.

12           **THE COURT:**  Right, exactly.

13           And have you thought about when that might be?

14           **MS. PACK:**  Your Honor, as you know, we think that

15   there are potential hundreds of class members.  And so, we'd

16   like time to review the data -- to receive the data, review

17   the data and then reach out to the individual parties.  As

18   you know, that can sometimes take time.  And so, whereas we

19   hadn't -- we don't have a set deadline, we would like at

20   least four to six months.  That will give Supreme -- you

21   know, the parties time to --

22           **THE COURT:**  Okay.  Sure.  That's what I was -- so

23   four to six months from now to get that done, and that's what

24   I wanted to talk about, was trying to get that done, because

25   it will -- see, if we did that -- let me look at some

**UNREDACTED TRANSCRIPT**

1    timelines here.  So today is the 8th, so four to six months

2    from now.

3              **MS. PACK:**  Your Honor, if I may?

4              **THE COURT:**  Sure.

5              **MS. PACK:**  Could the deadline be set from the

6    date of the disclosures?  I think right now, depending on

7    your ruling, if it -- if the disclosure deadline gets pushed

8    off, we'd like the time to start from the period where we

9    receive those disclosures as opposed to today.

10             I think as it stands right now, both parties have

11   until the 12th -- I believe that's correct -- to get the

12   disclosure.

13             **THE COURT:**  Yes, you have complete required

14   disclosures, and what we were going to do -- that's

15   April 12th.  I'm not quite sure how that would work.  How

16   would that work?

17             **MR. BUSEY:**  I don't know that Supreme Staffing

18   has an answer on how that would work.  If I could step back

19   to the Court's original question, certainly understand the

20   Court's indication about the motion to dismiss, but I

21   wouldn't be able to work through the issues today without at

22   least reference to it.

23             Much of my client's concern comes from this case

24   being split from the first case where the issues the Court is

25   framing, those issues are being decided, have been argued,

**UNREDACTED TRANSCRIPT**

1    have been briefed.  And one of those issues is the threshold

2    identification of the individuals on behalf of whom the EEOC

3    is filing suit, and Supreme's position continues to be that

4    the EEOC did its investigation.  It identified the

5    individuals that warranted the filing of a Section 706

6    lawsuit.  And we think the EEOC should identify those

7    individuals, identify what supposedly happened to them and

8    when, and discovery begins with a focus on those individuals.

9          **THE COURT:**  Well now, you have to understand that

10   in this type of proceeding there can be the development of

11   individuals who are aggrieved individuals during the process

12   of discovery, and that is not unheard of at all.

13          So what about that?

14         **MR. BUSEY:**  I would not say unheard of, and

15   Supreme has never taken the absolute position that it cannot

16   happen.  What our position has always been is that whether

17   and to what extent that happens is framed based on the

18   initial individuals identified.

19          If I may use a collective action under the FLSA

20   as a parallel or as an example, no one could come into court

21   and say, I have filed a collective action, I would like to

22   begin discovery to identify any potential collective that I

23   can identify without identifying first a named individual or

24   a group of individuals by name around who discovery is shaped

25   or focused to some degree.

**UNREDACTED TRANSCRIPT**

1          **THE COURT:**  Right.  You've got a group already.

2          **MR. BUSEY:**  I don't believe that we do, Your

3     Honor.

4          **THE COURT:**  I disagree with you, so that takes

5     care of that, because you have individuals who are named in

6     the Amended Complaint.

7          **MR. BUSEY:**  But I still don't know what happened

8     to them and when.

9          **THE COURT:**  Well, they're going to tell you that.

10          **MR. BUSEY:**  And Supreme's position is that should

11     come before we begin open-ended discovery to identify others.

12          **THE COURT:**  Well, not open-ended discovery, but

13     they're -- you're going to tell them the basis for each of

14     these individuals' claim.  I think.  Is that right?

15          **MS. PACK:**  That's correct, Your Honor.

16          **THE COURT:**  Right, exactly.  And we have a sample

17     from each group, but then each person will say, this is what

18     happened to me.

19          **MS. PACK:**  Yes, Your Honor.

20          **THE COURT:**  And you probably have statements and

21     different things that you may well be disclosing in that

22     regard as long as it's not privileged in some way, but if

23     it's privileged, you have to file a privilege log and go

24     through that process.  Is that what we're doing?

25          **MS. PACK:**  Yes, Your Honor.  That's correct.

**UNREDACTED TRANSCRIPT**

1          **THE COURT:**  Okay.  Well, I think we've got --

2    we've got a number of people who are already identified that

3    we can proceed with in this matter.

4          Now, I understand that along the way, EEOC may

5    name another -- another set of aggrieved individuals.  That's

6    what we're talking about, so there would be a cutoff in that

7    regard.  EEOC has said, well, they want a little variation on

8    it, but they're saying 120 -- let me make sure I got that

9    right -- 120 days to 180 days in that regard, depending on

10   which -- what it looks like.

11         You know, it's better to do it sooner rather than

12   later because that lets the case proceed in a more orderly

13   fashion, but that's basically at the end of that period.

14   Let's just select 120, maybe it's going to be 150.  120 days,

15   then you would have your final set of aggrieved individuals.

16         Now, you might have aggrieved individuals

17   earlier.  You might identify them at, you know, 90 days.  You

18   might say, I've got this set of individuals who are aggrieved

19   individuals at 90 days and then we're going to supplement

20   that with any individuals that we now have that are developed

21   during the rest of the hundred and -- whether it's another

22   90-day period or whether it's a 60-day period.

23         And I would think that during the -- I'm just

24   asking.  In the first part, we probably have most, maybe,

25   hopefully, most of the individuals identified at the end of

**UNREDACTED TRANSCRIPT**

1   that first period, which will help move the case along.  Is

2   that kind of how you think?

3            **MS. PACK:**  Yes, Your Honor.  That's how we

4   envision it.

5            **THE COURT:**  Okay.  So -- and that would help a

6   lot.  That gives us moving -- we're moving right along, and

7   let's -- I'm going to write down 90 days, first additional --

8   the reason I'm getting a deadline there -- or an idea of a

9   deadline there is it helps everybody to work against it.  You

10  know, at this time, I'm going to have this additional set of

11  materials, and that way our paralegal right here has real

12  focus on it so it's easier to handle, because I can work on

13  this group and then I can work on the follow-up group,

14  thinking that probably the larger group is going to be in

15  that first group.  Probably.  I don't know.

16           Okay.  So let's say a hundred and -- okay, so

17  that kind of addresses that.  You've already got -- but you

18  don't have to disclose -- you don't have to make your

19  26(a)(1) disclosures except as to the individuals who have

20  been identified by the EEOC, because you can't do it.  You

21  don't know who they are.  You know, you don't quite -- now,

22  you'll have -- you might have others.  You'll be disclosing

23  executives, policies and so forth that clearly would come at

24  the very beginning.  And that's not a problem, right?

25           **MR. BUSEY:**  Provided that we get the how and the

**UNREDACTED TRANSCRIPT**

14

1    what in terms of damage.

2              **THE COURT:**  No.  Maybe, but maybe, maybe not.  I

3    mean, I don't think so.  You mean as to each individual

4    claimant?

5              **MR. BUSEY:**  Yes, Your Honor.

6              **THE COURT:**  Well...

7              **MR. BUSEY:**  If I may elaborate?

8              **THE COURT:**  I mean, they -- the EEOC understands

9    that these are both -- this is kind of -- it's got

10   class-related aspects.  I know it's not a class action, but

11   it also has individual claims.  So as to that first 11 or

12   so -- is that about right?  I'm looking at my paralegal to

13   make sure I got that right.  It's about 11.

14              As to those individuals, you're right, there

15   would be a calculation that showed all the factors under 18

16   USC Section -- I'm sorry, under 28 -- Rule 28 -- 26(b)(1), so

17   you'd look at those.  And we have a lot of other kinds of

18   cases with other numbers, which you don't want to be part of,

19   but we would go through and let's say you've got the first

20   folks.

21              Have a seat.  I'm fine.  Both of you, you can sit

22   down.

23              **MR. BUSEY:**  Thank you, Your Honor.

24              **THE COURT:**  Let's figure this out.

25              So as to the first group -- I think I've got it

**UNREDACTED TRANSCRIPT**

1    here.

2              Okay.  So let's say -- I'm just going to look

3    briefly at Claim 1.  Depends on kind of what we're looking

4    at, but --

5              **MS. PACK:**  Your Honor --

6              **THE COURT:**  You've got Samantha Kelly, right?

7              **MS. PACK:**  That's what I was just about to say.

8    The individuals listed in the commission's complaint were

9    offered -- we found out their names and their situations from

10   the commission's investigation.

11             **THE COURT:**  Right.

12             **MS. PACK:**  And so, we still have to confirm that

13   they want to participate as class members in this action.

14             **THE COURT:**  Well, that's fair.  That's fair.

15             **MS. PACK:**  Okay.

16             **THE COURT:**  Well, okay.

17             **MS. PACK:**  We've identified them in our initial

18   disclosure --

19             **THE COURT:**  Do they know they're in the

20   complaint?  They might be surprised.

21             **MS. PACK:**  They might be surprised.

22             Well, we reached out to everybody and we're still

23   in the process of obtaining, you know, confirmation, signed

24   participation agreements.  And so, we offered them in the

25   complaint as anecdotal evidence of the discrimination, and

**UNREDACTED TRANSCRIPT**

1    then we're also offering statistical evidence.  And so, to

2    the extent we focus discovery on those 11 individuals, they

3    still have to go through the process as any other class

4    member.

5            **THE COURT:**  Sure, sure, but you already have some

6    idea about their situation.  You've got some documents.  You

7    chose them after some investigation which showed that they

8    were appropriate individuals for selection, inclusion and the

9    aggrieved set of individuals.

10           **MS. PACK:**  Yes, Your Honor.

11           **THE COURT:**  And let me just ask a question for

12   perspective:  So would it be unreasonable to believe that

13   most of these individuals will probably agree or -- I'm --

14   you've had other experiences.

15           **MS. PACK:**  It's reasonable to believe.  It's just

16   a lot of times in the nature of business, it's hard to get in

17   contact with them, and so that's the problem.

18           **THE COURT:**  Sure.

19           **MS. PACK:**  That's why we asked for the additional

20   time, because sometimes it just takes us a little bit longer

21   to track them down.

22           **THE COURT:**  I understand.  I understand.

23           But you already have information on Ms. Labranch,

24   right?

25           **MS. PACK:**  That's correct, Your Honor.

**UNREDACTED TRANSCRIPT**

1              **THE COURT:**  And already have information on

2  Ms. Kelly.

3              **MS. PACK:**  Yes, Your Honor.

4              **THE COURT:**  And is there an initial statement or

5  something from them?  May not be.  I don't know.

6              **MS. PACK:**  Yes.  We have their interview notes

7  from the investigation and we turned those over as part of

8  the initial disclosures.

9              **THE COURT:**  Okay.

10             **MR. BUSEY:**  May I be heard on this, Your Honor?

11             **THE COURT:**  Sure, sure.

12             **MR. BUSEY:**  I think this sums up the issue.

13             **THE COURT:**  Okay.

14             **MR. BUSEY:**  And it goes back to the statute of

15  limitations and other arguments in the first lawsuit.  The

16  EEOC is conflating individuals that they know about,

17  individuals for whom they have a name, with individuals on

18  behalf of whom they are seeking relief in the action.

19             **THE COURT:**  Right.

20             **MR. BUSEY:**  My client's focus, I think

21  understandably, is only on the second group.  Supreme

22  Staffing wants to know, on behalf of whom is the EEOC

23  claiming to represent and seek damage from Supreme Staffing?

24  And once those individuals are identified, why?  What did

25  Supreme do and when?

**UNREDACTED TRANSCRIPT**

1          **THE COURT:**  Right.

2          **MR. BUSEY:**  And we don't have that.  To the

3    commission's point, the individuals in the complaint, they

4    can't even commit to representing.  They are there for

5    anecdotal purposes or illustrative purposes.

6          **THE COURT:**  Right, but you already have notes and

7    data as to each of these people, right?

8          **MR. BUSEY:**  We have some in the disclosures, but

9    my client still doesn't know which group each of these people

10   fall into, and that's my client's overall --

11         **THE COURT:**  Whether they're actually going to

12   bring the claim or not.

13         **MR. BUSEY:**  Yes.  And whether -- from my client's

14   standpoint, that decision should have already been made, and

15   that decision was --

16         **THE COURT:**  The answer is it doesn't have to have

17   been.

18         **MR. BUSEY:**  I understand, Your Honor, and --

19         **THE COURT:**  We've covered that.

20         **MR. BUSEY:**  I understand.  But on some pieces, I

21   have to keep my client's position consistent.

22         **THE COURT:**  Oh, absolutely, absolutely.  I'd say

23   the same thing.

24         **MR. BUSEY:**  And so, it's not because I don't hear

25   the Court, but I'm in three different courts, and these are

**UNREDACTED TRANSCRIPT**

1    the --

2              **THE COURT:**  Well, you're in two different courts,

3    right?

4              **MR. BUSEY:**  Two different courts, three cases.

5              **THE COURT:**  Unless you've done something that I

6    don't know about.

7              **MR. BUSEY:**  No.  But two different courts, three

8    different cases, and these are arguments that have come up

9    along the way.

10             **THE COURT:**  Right.  And the idea is -- and I

11   understand what you're saying.  The idea is to move the case,

12   and it is not unreasonable to anticipate that a number of

13   these individuals will ultimately be individuals as to whom

14   claims will be presented, and the EEOC has selected them as

15   individuals who seem most likely to be individuals with a

16   presentable claim.

17             Did I get that wrong?

18             **MS. PACK:**  No, Your Honor.  That's correct.

19             **THE COURT:**  Right.  So I know it's a process of

20   elimination gradually by the EEOC.  They might have one or

21   two of these individuals who will not participate.  They

22   might have nine, I don't know, but they probably won't; and

23   this allows analysis.

24             Now, I am a little concerned that you might be

25   put in a position of providing information that would

**UNREDACTED TRANSCRIPT**

1  ultimately prove detrimental, but remember how Rule 26(a)(1)

2  operates, which is in the identification of individuals and

3  identification of material that you would supply in your case

4  in chief, it's really what you would show or might show in

5  your case in chief.  So you're not being asked to show things

6  that would be -- generally, things that would clearly be

7  unhelpful to you, but things that might be helpful are

8  important to be disclosed.  In fact, if you fail to do that,

9  then you end up in the situation where you cannot use it

10  later on.

11          So this is kind of like showing your case or

12  possible case against that particular individual's claim.

13  That's -- and then the EEOC gets the benefit of looking at

14  that, right, and it works both ways, and they get -- you get

15  the benefit of looking at what they've got and more clearly

16  focused as to what they've got.

17          Now, the EEOC looks at it and they say, my

18  goodness, Ms. Kelly was just simply not the subject of any

19  discrimination in this case.  We need to not keep her as a

20  claimant.  That's a pretty good result in terms of filtering

21  out individuals who will not be able to bring a claim.  So

22  it's probably to everybody's benefit to make candid

23  disclosures at this point in time as to this group of

24  individuals.

25          **MR. BUSEY:**  I think my client's concern comes

**UNREDACTED TRANSCRIPT**

1    from the starting point for that process.  And understanding

2    the Court's explanation of Rule 26 and Rule 26's --

3              **THE COURT:**  I'll go through it if you want me to.

4              **MR. BUSEY:**  No, no.  I'm saying understanding

5    that, I certainly understand what the Court's saying, but --

6              **THE COURT:**  Rule 26, I'll -- maybe I'll go over

7    it again.  Rule 26 requires that a party must, without

8    awaiting a discovery request, provide the following --

9    provide the following to the other party:  One, the name and,

10   if known, address and phone number of each individual likely

11   to have discoverable information, along with the subject of

12   that information, that the disclosing party may use, with

13   emphasis on the word "may", to support their claims or

14   defenses.  EEOC has to show, this is what we -- individual,

15   and this is what -- someone that we may use, and these are

16   clearly ones you may use because you've got them listed,

17   unless that would be solely for impeachment.

18             Now, I always tell people, don't hang your hat on

19   the last little phrase because it's not much use.  It's

20   really an analytical process.

21             So the EEOC goes through and they look -- I'm

22   just -- don't want to pick on Ms. Kelly, but that's kind of

23   what we're doing.  You pick out Ms. Kelly, and they show you

24   what they've got.  I mean, this is what we're going to put on

25   in our case in chief as to Ms. Kelly.

**UNREDACTED TRANSCRIPT**

1          Now, we know that she hasn't signed off on this.

2   We understand that, but we -- this is what we would be

3   presenting, and then you are presenting -- this is what

4   Ms. Kelly did.  You know, she pulled out a gun and pointed it

5   at her supervisor and she got in big trouble for it; and

6   therefore, we would never hire this person.  You know,

7   whatever it is.  You could be hiring -- this is not.  This is

8   actually the initial group, little different there.

9          And once -- and then you've got a picture of the

10  gun.  Okay, EEOC looks at that and they say, I don't think we

11  want to pursue it on this person, right?

12         The point is that it's a very useful -- I'm not

13  saying anybody's going to have a gun.  I'm saying -- I'm

14  saying that it can be a situation where the information is

15  significant in facilitating a final determination by the EEOC

16  as to whether, as to that individual, they even wish to

17  continue to pursue it, and that's useful.  It's useful to you

18  because this person is eliminated as a potential claimant,

19  you don't have to worry about it anymore, and you accomplish

20  part of the purpose of 26(a)(1).

21         Now, 26(a)(1), that's identifying individuals.

22  Number two is copying -- a copy, it says, or description by

23  category and location -- I think we've gone over this before,

24  but we'll do it again -- of all documents, electronically

25  stored information and tangible things that the disclosing

1    party has in its possession, custody or control and may use

2    to support its claims or defenses, of course, unless that

3    would be used solely for impeachment.

4            And that, again, is the gun.  I'm not saying it's

5    really a gun, but whatever it is.  You know, the bag of white

6    powder that somebody -- whatever we want to say that's an

7    extreme situation where the EEOC would look at that and say,

8    look, they've got this.  This -- we need to not be pursuing

9    it for that person.  At the same time, you may get something

10   where it's overwhelming that, I got a problem here, and

11   that's helpful to you, too.

12           So -- but you do -- but I do not allow -- I

13   restrict the parties' use in 26(a)(1)(A)(2).  I say, well,

14   you can't use description by category or location unless it

15   comes back and turns out that we really need to do that,

16   we're going to require the production of the material, and

17   it -- the idea is to advance the process of analysis on both

18   sides.  I think it's a good thing.

19           And then, of course, you've got the computation

20   of damages, which is what you were talking about.  How do you

21   compute the damages for Ms. Kelly?  Well, you know, I don't

22   know, but EEOC has an idea about how they would calculate her

23   damages and they will simply present what they have, which

24   you are required to be specific by category, so that you have

25   lost wages -- let me look here and make sure -- selection

**UNREDACTED TRANSCRIPT**

1    referral or placement, and that's placement.

2            So they were placed in -- I don't know what the

3    position would be, but they were -- so there's E1, E2, E3,

4    E4, E5, where you get paid more if you're an E5, paid a lot

5    less in an E1.  So they've done a calculation and they say,

6    well, this person was placed in an E1 position -- I don't

7    know what the categories were.  You may want to tell me,

8    but -- and instead should have been placed in an E3 position

9    and they would have made an additional -- instead of making

10   17.50 an hour, they would have made 21.75, and this is how

11   you calculate it.

12           And then, of course, they may also have the next

13   thing, which is, but we know that Ms. Kelly then later

14   acquired a position where she was paid 23.50; and therefore,

15   we probably cut off there.

16           So that's what you need, right?

17           **MR. BUSEY:**  In part, Your Honor, but it is

18   admittedly a bit broader from my client's perspective.  And I

19   can address that perhaps a bit better, if I may.

20           **THE COURT:**  Sure, absolutely.

21           **MR. BUSEY:**  I think my client's struggle is --

22           **THE COURT:**  I'm going to let EEOC sit down, I'm

23   going to let you stand up.

24           **MR. BUSEY:**  Yeah.

25           I think -- and I won't say Ms. Kelly because I

**UNREDACTED TRANSCRIPT**

1    think that is an actual person.  I'm just going to use

2    Ms. Smith.

3              **THE COURT:**  Well, it is an actual person, but I

4    was trying to say it does have to be specific.

5              **MR. BUSEY:**  Yeah, and I just only mean I don't

6    want to say anything about her under the --

7              **THE COURT:**  I'm sure she didn't have a gun.

8              **MR. BUSEY:**  Yeah.

9              **THE COURT:**  You know, that's why I chose the gun.

10             **MR. BUSEY:**  I'll just use myself.  The EEOC

11   identifying Mr. Busey as a potential claimant, I think that

12   from Supreme Staffing's standpoint, we should be past the

13   potential stage and Supreme Staffing should be told no

14   different than if Mr. --

15             **THE COURT:**  But this is premature in the case.

16   I'm not required -- that's not how it would work.  Tell me

17   how it would -- I mean, you agree that they could identify

18   somebody on -- figure out a date -- on July the 4th, maybe

19   the 3rd.  July the 4th, right, a new person.

20             **MR. BUSEY:**  Right.  I think that my client's

21   focus is on what the word "identify" means.

22             **THE COURT:**  At that point, they could say --

23   well, I think that's a good question, but I think they could

24   say, well, we now have Ms. Jones, and this is a person that

25   we anticipate will be a claimant here and this is all the

**UNREDACTED TRANSCRIPT**

1  information that supports that individual.

2          **MR. BUSEY:**  Right.  And all the information, and

3  I don't mean to use the Court's words in a negative way,

4  but --

5          **THE COURT:**  It is -- it is -- they would provide

6  that.

7          **MR. BUSEY:**  We don't have any of that for anyone.

8          **THE COURT:**  But you are about to have it as to

9  this group of individuals.

10         **MR. BUSEY:**  And I think that going back to -- to

11 kind of tie my point together, which perhaps I didn't do a

12 good job of articulating in -- it -- that is the thing that

13 my client believes should come first before my client is then

14 obligated to identify what it needs to produce or how it's

15 going to defend.

16         **THE COURT:**  Right, right.  I think we pretty much

17 ruled on that.  It's not going to happen that way.  We're

18 going to use the individuals who are identified in the

19 complaint as individuals as to whom you will have to produce

20 information.  I've got a protective order here.

21         Now, I did ask -- I did invite you both to submit

22 something on attorney -- attorney's eyes only because there

23 may be -- we may need to do some of that and then shift

24 people over to confidential at a certain point in time.  So

25 there might be some work there to get a final piece of the

**UNREDACTED TRANSCRIPT**

1  protective order.

2          **MR. BUSEY:**  And again, I'm not asking the Court

3  to repeat itself by any means, but I --

4          **THE COURT:**  I'm used to it.  Don't worry.

5          **MR. BUSEY:**  No, I -- maybe I didn't understand

6  that that was the Court's ruling.  And I think from my

7  client's perspective, my client would need to make a better

8  record on that issue, because if it is -- and I don't mean to

9  speak for the Court, but if --

10         **THE COURT:**  That's okay.

11         **MR. BUSEY:**  If what I'm understanding is that the

12 EEOC's identification of an individual as just by name --

13         **THE COURT:**  And I used Paragraph 31 as an

14 example, and then I used Paragraph 36 as a supplement to that

15 example as to this category in Count 1 claim.

16         And then what I did as to Count 2, I used -- I

17 used Paragraph 61 -- if I'm leaving out somebody that ought

18 to be in there, let me know -- and that's got four

19 individuals.  I think that's going to cover that.  That

20 includes Humphries, Ivory, Wiggins and Sharp.

21         And then Paragraph -- I mean Count 3, which is

22 going to be at least Paragraph 90.  I was trying to make

23 sure.  Glover, Barnes, and Lamar, Lamar.  Two Lamars, is that

24 right?

25         **MS. PACK:**  That's correct, Your Honor, but I want

**UNREDACTED TRANSCRIPT**

1    to make -- it's the EEOC's position that Supreme -- that the

2    Defendant's initial disclosures shouldn't just be limited to

3    those people listed in the complaint.

4            Both Defendants have access to information that

5    EEOC doesn't necessarily have, such as referral list,

6    assignment list, application list, and those documents are

7    what will allow the EEOC to identify people who were

8    potentially aggrieved by the Defendants' actions.  And so,

9    saying, you know --

10           **THE COURT:**  That might or might not be part of

11   the evidence -- I hear what you're saying.  It might or might

12   not be part of the evidence that they would submit in support

13   of their defense, and might submit.  I used the word "would",

14   but that's not the right standard.  Might submit.  And so,

15   what it gives you a chance to do is to see -- put it this

16   way -- the information that would be negative to a potential

17   client in advance.

18           Now, you're right.  It might not be everything.

19   It might not be.  It may be most everything, because it may

20   be that they filled it out and they said, I only want such

21   and such a position, and that would be very supportive,

22   right, of the position.

23           And, of course, we were just talking about

24   individuals who were segregated in placement and so forth as

25   to Count 2, for example.  And somebody says, no, I don't want

```
1   to take X position.  I'm filing -- I'm asking for this E1

2   position versus E3, in our example, and that would be

3   important because the -- Supreme would then show you that,

4   look, they asked for E1.  They didn't ask for E3.  And you

5   might look at that and say, you know, they asked for E1.

6   Maybe they're not a very good plaintiff here or maybe not a

7   very good individual to -- I've got a problem.

8            The idea should -- is to bring the case along.

9            MR. BUSEY:  I understand.  But even in that

10  example, we are participating in substantive discovery and

11  having that discussion --

12           THE COURT:  No, you're not.  You're participating

13  in 26(a)(1) disclosures, which is a substitute in part for

14  subsequent discovery.  I mean, it's a way to advance the case

15  in an organized way at the early stages of the case.

16           MR. BUSEY:  I think from my client's perspective,

17  the concern comes from advancing the case as to an individual

18  on behalf of whom there is no commitment.

19           THE COURT:  You've already lost that one.

20           MR. BUSEY:  I understand, but that's just my --

21           THE COURT:  I mean, it's not -- no harm in

22  arguing and I don't question that there are multiple ways to

23  attack this problem.  I am not saying that another judge

24  couldn't do it in a different way and it will be perfectly

25  fine.  I'm not saying that at all.
```

**UNREDACTED TRANSCRIPT**

1          I'm trying to craft a way, looking at the

2   specifics that are asserted in the complaint, in order to

3   help the case move along and also help both sides as to these

4   individuals.  This group of individuals assess where they are

5   as to this group of individuals.  And then, of course, our --

6   the rest of the team for the EEOC is going to be working on

7   who else will be an aggrieved individual, right?  Is that

8   right?

9          **MS. PACK:**  That's right, Your Honor.

10          **THE COURT:**  So they'll be working on that, and

11   then at the end of -- and I think I initially said a 90-day

12   period, they're going to have another set, potentially,

13   hopefully individuals who've also already signed on, but

14   another set of aggrieved individuals as to whom there can be

15   an exchange.  And then at -- and I probably would say

16   150 days -- 150 days the last set and absent some clear

17   showing that that won't work, then that would be our set of

18   plaintiffs.

19          **MR. BUSEY:**  And I am not arguing to ask the Court

20   to change its mind.  I am just --

21          **THE COURT:**  People do that all the time.

22          **MR. BUSEY:**  Well, I know, but I'm not -- and

23   there might be an issue where maybe I would, but it's not on

24   this one.

25          My point is, again, that is a significant ruling

**UNREDACTED TRANSCRIPT**

1    in my client's interests and I don't know that I would be

2    doing my best job without getting some leave to at least

3    brief or put a better record down.

4        **THE COURT:**  I think the answer is -- and I hear

5    what you're saying -- is that you would like more time, and

6    that's usually what defendants say, and sometimes what

7    plaintiffs say, they would like more time.  They'd probably

8    like more time than I'm going to give them, because -- but

9    the orderly processing of the case is really important to the

10   fair disposition of the case for anyone who may have a claim.

11       In other words, the EEOC -- if the EEOC said,

12   well, I need to have two years to do this, I'm sitting there

13   thinking, you've got all these people out there and if

14   they've been discriminated against, they're going to suffer

15   for two more years and they won't even know if they've got a

16   claim, I don't think I would like that.  I think that would

17   probably be not in anybody's interest.  It's not in the

18   interest of a just and fair, prompt resolution of the case.

19   That would be the problem.  So EEOC wouldn't get an

20   indefinite time.  We wouldn't do that for a defendant,

21   either.  We would have an orderly process.

22       **MR. BUSEY:**  Certainly.  And I don't mean to imply

23   an indefinite time.  The initial motion being a request or

24   extension on the Rule 26, Phase 2 deadline, I am specifically

25   addressing the Court's ruling as to what my client

**UNREDACTED TRANSCRIPT**

32

1    understands that -- the scope of discovery of potential

2    individuals, not individuals --

3              **THE COURT:**  You've already won a big chunk

4    because I didn't make you disclose all those names that they

5    put in that long list.  How many people did you put in that

6    list?  You had a bunch of people there.

7              **MS. PACK:**  Yeah, I think it was over 67.

8              **THE COURT:**  She did.  She had a bunch of them.  I

9    am not making you do that.  And EEOC probably says, Judge,

10   you ought to do that, but, you know, the answer is we're

11   going to take -- you know, how do you eat an elephant, one

12   bite at a time.  And that's kind of the idea, is, you know,

13   how do you deal with a large problem?  You break it down and

14   you take one piece at a time.

15             **MR. BUSEY:**  Well, I -- again, it's not from a

16   lack of understanding.  It's from a concern about --

17             **THE COURT:**  Well, while we're working on that,

18   then, let's hear from the person who has been pleasantly

19   quiet here, which is counsel for -- Mr. Gallagher.

20             **MR. GALLAGHER:**  Thank you, Your Honor.

21             **THE COURT:**  Aaron Thomas.  I know you've got a

22   point of view.

23             **MR. GALLAGHER:**  Aaron Thomas Company very much

24   has a point of view, Your Honor.  I don't know that I

25   necessarily have much to add to the discussion that you've

**UNREDACTED TRANSCRIPT**

1   had thus far with counsel for Supreme and the commission

2   other than to state first and foremost that Aaron Thomas

3   Company very much is interested in moving things along.  And

4   to do that, it would like to identify the persons on behalf

5   of whom the EEOC is seeking relief and to identify what

6   relief specifically the EEOC is seeking with respect to those

7   individuals.  So identifying damages and specific numbers

8   will be very helpful to our client.

9           We've been given instruction to some extent to go

10  sit down at the table and have a discussion about those

11  individuals as early as possible.

12          **THE COURT:**  Right.

13          **MR. GALLAGHER:**  And we're interested in doing

14  that.

15          I also understand what Your Honor has said thus

16  far to mean that we are to proceed with discovery with

17  respect to the individuals who are specifically identified in

18  the complaint, and that includes --

19          **THE COURT:**  Right, initial disclosures, right.

20          **MR. GALLAGHER:**  -- disclosures and possibly

21  discovery, and that would be one piece that I would seek

22  clarification.  With respect to this four-to-six-month period

23  or whatever it will be, from Aaron Thomas Company's

24  perspective, we're in a sense left to ask, well, what do we

25  now if we're waiting without further discovery on those

**UNREDACTED TRANSCRIPT**

1    individuals, and --

2              **THE COURT:**  You can go ahead and take -- once we

3    get this process underway, then, of course, you're going to

4    get -- you're going to get information on the individuals

5    named in the -- as grievants in the complaint -- second --

6    the Amended Complaint, and then you'll get a --

7    potentially -- I mean, I don't know for sure, but you'll get

8    another set at the end of 90 days.  That's what staff is

9    going to be working on.

10             They're going to give you a package there.  It's

11   not just going to be, this is the name.  This is like, this

12   is the name, this is the statement, this is the timeline,

13   this is what they're claiming in terms of damages, you know.

14   We've gone over that, and they know that they have to do it.

15   It's not one of those things where they can say, well, I

16   don't know what the damages are now.  The answer is they have

17   to complete that investigation.

18             I know my paralegal is sitting there thinking,

19   that's a lot to do, but it is.  It is a lot, but it helps

20   move the case along.  And also, it gives to those individuals

21   who may have a claim an assessment of where the matter is

22   going.  They need to feel a part of the process and a

23   participant in the process as early as possible, because you

24   don't want individuals to think nothing's ever going to

25   happen.  The EEOC is going to fool around with this for two

**UNREDACTED TRANSCRIPT**

1  years and then you're going to fool around it for two years

2  and it's going to be five years from now and I don't want to

3  mess with it because it's going to go on forever.  That's a

4  bad message.

5          The message is, we will proceed in an orderly

6  fashion, the same -- and that's what your client is saying to

7  you.

8          **MR. GALLAGHER:**  Yes, sir.

9          **THE COURT:**  We want to proceed in an orderly

10 fashion.  We want to understand what our exposure is.  And we

11 want to see if -- perhaps, if there is an issue here, we want

12 to see if there's a way to resolve that.

13         Is that right?

14         **MR. GALLAGHER:**  That's correct.

15         One additional item with respect to our timeline

16 and scheduling.  We're working through securing

17 supplementation of damages computations, actual numbers --

18         **THE COURT:**  Right.

19         **MR. GALLAGHER:**  -- for even just the 12 or so

20 identified.

21         **THE COURT:**  Real numbers.  Real numbers.

22         **MR. GALLAGHER:**  And so, we'll need to identify a

23 date certain by which we'll get that information, as well.

24         **THE COURT:**  Well, you're supposed to get that at

25 the time the 26(a)(1) deadline occurs.

**UNREDACTED TRANSCRIPT**

1          Now, that'll be a supplemental date and that's

2    where we have to talk about the schedule a little bit,

3    because -- I'm sure I've got that here.  The scheduling

4    order, of course, is already going to need to be revised.

5    26(a)(1) initial disclosures as to this group of individuals

6    would be -- and this may not work -- would be April 12th.

7          Now, that's assuming, because everybody's had

8    this group for a little while, that that's a doable thing.  I

9    understand now from counsel for the EEOC that that might be

10   some issues there.  But, of course, if you can't contact

11   somebody, they're never going to be a claimant in the case.

12         So if that needs to be the 19th of April, that's

13   fine.  I just need to have a real date there.  And that's the

14   first discreet group of individuals, and the answer can't

15   be -- and I'm -- hopefully everybody needs -- I'm not trying

16   to pick on anybody.  It can't be, we don't know, we can't

17   calculate it because we haven't had adequate time to

18   investigate and calculate.

19         Well, the answer is, well, okay, if you can't

20   calculate it as to Ms. Kelly at this point in time, do you

21   need another seven days, but not do I need another three

22   months.  It has to be a progression.  We have to see -- and I

23   assume that as to these individuals, there's pretty solid

24   data.  I might be wrong.

25         I'm trying to read my paralegal over there.  She

**UNREDACTED TRANSCRIPT**

37

said maybe, maybe not.  But -- and I have to be informed,

that is by way of a motion, you know, I have now completed

EEOC, I have now completed the disclosure as to seven

individuals, but as to the remaining individuals, I need an

additional 14 days, whatever it is.

         I'm not encouraging that.  I'm not encouraging,

because at some point, you know, you've got to put your cards

down.  You've got to show what you've got, but -- you know,

and then -- then you would know exactly what you've got.

And, of course, you're going to be making the disclosure as

to these individuals as you go through the process, and

hopefully everybody will learn a lot in this process.

         **MR. GALLAGHER:**  Your Honor, the one additional

layer to that, I think, is you had commented when you were

referring to the individuals identified, I think you used the

words "and hopefully agreed to or agreed on", we may need --

and it may be the same date, but it may also be some

separate, subsequent date.

         **THE COURT:**  There's not going to be much later,

because if you can't -- if a party bringing the claim cannot

reasonably identify the individual and the data as to that

claim -- the EEOC is used to this.  If they can't do that,

then at some point you say, I can't do it.  I've got it as

to -- I'm going to list the names here, but I've got it as to

1, 2, 3, 4, 5, 6, 7.  I don't have it as to these folks.

**UNREDACTED TRANSCRIPT**

1    These people are not now eligible.  They're not longer

2    aggrieved individuals in the case.  They have disappeared or

3    they've moved to Las Vegas or they got a job in Tunica that

4    they like better and they don't ever want to go back and

5    they're making twice as much money.

6              Do you see what I'm saying?

7              **MR. GALLAGHER:**  Yeah.  And I was just going to

8    suggest there should be an identification date, we've got the

9    first group identified, and then a date by which the

10   commission said says, yes, we are seeking damages and --

11             **THE COURT:**  Well, that's the -- I just moved that

12   to the 19th of April because I was looking to everybody out

13   there to see what looked reasonable.

14             **MR. GALLAGHER:**  Okay.  And then subsequent

15   disclosure --

16             **THE COURT:**  When you make your 26(a)(1)

17   disclosure, it's on the same day.

18             **MR. GALLAGHER:**  And then the subsequent

19   disclosure that we're envisioning 90 days out --

20             **THE COURT:**  Sure.

21             **MR. GALLAGHER:**  -- is the deadline to say, yes,

22   we have actually --

23             **THE COURT:**  Well, it's the deadline to produce

24   the 26(a)(1) disclosure.

25             **MR. GALLAGHER:**  Right.

**UNREDACTED TRANSCRIPT**

39

1          And with respect to any additional individuals

2    that they've identified as aggrieved --

3          **THE COURT:**  Sixty days out from that.

4          **MR. GALLAGHER:**  -- we'll need a deadline that

5    they say they've been signed up or not.

6          **THE COURT:**  You make your 26(a)(1) disclosures on

7    that day.  I mean, I think the EEOC -- I can't remember how

8    many investigators you have now, but you do have

9    investigators.  And how are we doing?

10         **MS. PACK:**  We do.  We do have investigators.  I'm

11   not sure the exact number, but the way the commission is set

12   up, the investigators are no longer involved in litigation.

13   And so, they don't handle the litigation part.  It's our

14   paralegal, Ms. Kedra Butler.  We have two paralegals and a

15   couple of attorneys, and so we may need a little leeway on

16   the time.

17         And so, as I understand the Court's order, by

18   April 19th, we need to supplement with the people that we've

19   already identified and who's acquiesced to be class members.

20         **THE COURT:**  Right.

21         **MS. PACK:**  And then we'll have the additional

22   90 days to -- you know, hopefully they'll give us their

23   information, we'll continue to find additional class members,

24   and then at 150 days, that's our cutoff.

25         **THE COURT:**  And that's really the cutoff just

**UNREDACTED TRANSCRIPT**

1  because we've got to move along.  I mean, hopefully we've got

2  everybody.  And Ms. Butler, make sure you ask them to get

3  some -- get whatever they've got from the investigators over

4  to you.  I think that's what -- it's supposed to happen that

5  way, isn't it?  They're supposed to get --

6       **MS. BUTLER:**  Yes, sir.

7       **THE COURT:**  Okay, because that's what we need to

8  do, is make sure that everybody proceeds with some urgency

9  and on a timetable.

10       **MS. PACK:**  Yes, Your Honor.

11       **THE COURT:**  That sounds good to me.  It sounds

12  like the 19th is a big day.  That's a big day for you, also,

13  because you'll be disclosing information as to these

14  individuals who are identified in the complaint.  And I've

15  gone through some of the paragraphs, but I think everybody

16  knows how many.  I can do a recount on that.  I might have

17  had -- make sure you don't have too many people in my list.

18  Let me make sure.

19       I've got 11.  That's what I've got.  Is that

20  wrong?  Is that right?

21       **MS. PACK:**  That's correct, Your Honor.

22       **THE COURT:**  Okay.  I heard 12 a minute ago.  I

23  just wanted to make sure I've got the right number.  Okay.

24       Okay.  I know that we were here and you wanted

25  more time and we wanted a different schedule, and I just felt

**UNREDACTED TRANSCRIPT**

1  like having an in-person discussion allows the interaction

2  that I don't get if you're far, far away.

3            I'm sorry you missed the eclipse.  I'm sorry.

4       **MS. PACK:**  No.  We thank Mr. Sample so much for

5  moving it down for us, and you, Your Honor.  We got a chance

6  to catch it.  It was great.

7       **THE COURT:**  Okay.  Okay.  Good.

8       **MS. PACK:**  Thank you so much.

9       **THE COURT:**  No problem.

10           Okay.  I think that covers the motion that we

11 were not granting as to Supreme.  I think that that is

12 resolved.

13           The EEOC can -- we're going to figure this out.

14 I think you may ultimately amend complaints, but we'll figure

15 that out, to show these are our individuals who now are

16 bringing the individual claim.

17           Let's talk about another thing here.  And, of

18 course, then you've got to go through each of the categories

19 under 26(a)(1), which is -- we talked about already, but look

20 at them, make sure you understand them.  Of course, the EEOC

21 has the burden of going ahead and showing you what the

22 damages are.

23           If you have a problem in that regard, you are not

24 to stew about it.  You know, you've got -- the counsel on the

25 other side are very professional.  Talk to them about it and

**UNREDACTED TRANSCRIPT**

1  then talk to the Court about it, and I can tell them, hey,

2  too late, you didn't get that one, or yes, we can make some

3  exception there, but we're not likely to make many

4  exceptions.

5          So you should talk to each other, but you then

6  should bring a matter before the Court and you should make

7  every effort -- I understand Aaron Thomas's situation.  And

8  they want to move the case along for lots of reasons,

9  including probably the cost of having lawyers, which -- I may

10  be wrong.  That's not a factor, is it?

11          **MR. GALLAGHER:**  That's a fair assumption, Your

12  Honor.

13          **THE COURT:**  It's always a factor.  We understand

14  that.

15          Okay.  Now, I need to understand -- I'm going to

16  have to rework the schedule.  And so, I may have to rework

17  it, send it out and just to do it in the way in which we

18  talked about.  We've got the schedule on -- EEOC schedule for

19  joining aggrieved parties and disclosing aggrieved parties

20  under 26(a)(1), so I think everybody's got that down.

21          Motions to dismiss, I don't think that there's --

22  we talked about that already, so we don't really have Rule 12

23  motions, it doesn't look like.  At the end of the day, if

24  they can't get anybody, and I don't think that's going to

25  happen, but, you know, we would have to look at that again.

**UNREDACTED TRANSCRIPT**

1          Okay.  You did select a mediator.  I'm not going

2    to worry about that.  I think everybody understands my

3    position on mediation, which is it's wonderful but it has

4    nothing to do or very little to do with the schedule of the

5    Court.  We don't slow it down.  We move right ahead.  And

6    somebody says, well, Judge, give us 90 days to mediate, and

7    the answer is, if you think you want to mediate and you want

8    to agree to something, do it now, but don't ask for an

9    extended period of time.  In fact, really, probably don't ask

10   for anything at all.

11         Now, I've been a little concerned about how we

12   would get the case tried.  And I want to understand that just

13   initial discussion today, and I'll start with the EEOC,

14   because we're going to -- I think there was some thought

15   about bifurcating, changing things around, doing things like

16   that; and yet, I've got individual claims here, too.  At

17   least I think I do.  It looks like I might.

18         How would we try it?  We've got to move the case

19   through.  Right now, we have a jury trial on June the 23rd of

20   2025.

21         **MS. PACK:**  Yes, Your Honor.  And so, we floated

22   this idea to the other parties.  The EEOC plans to move to

23   bifurcate.  As you know, we brought this case under a pattern

24   and practice of discrimination.  And so, it's our position

25   that we should do trial in two phases.

**UNREDACTED TRANSCRIPT**

1          The first phase will determine whether or not

2     there actually is a pattern or practice of discrimination,

3     and we use statistical evidence and anecdotal evidence.  And

4     so, we -- from that pool of potential aggrieved parties who

5     opt in to our lawsuit, we pick 10, 20, however many, and we

6     proceed on that basis.  So we'd have individual evidence from

7     those 10 or 20 claimants and then we use statistical

8     evidence.

9          If a jury determined that there was a pattern of

10    practice of discrimination, then we'd move forward to trying

11    the individual claims of the claimants.  And so, it's the

12    EEOC's position that that's more judicially efficient.  You

13    know, if the jury determines, hey, it's no pattern of

14    practice, EEOC, then we don't get to the 30, 40, 50 other

15    claimants.

16         **THE COURT:**  Okay.  It's kind of like a test case

17    in some places where they have a class in which they do a

18    test case with a group over here, run that test, see how it

19    comes out, and then, of course, that affects how things go

20    forward.  It's not quite the same, pretty -- kind of the

21    same.

22         **MS. PACK:**  It's similar.  It's similar.  You

23    know, our -- it's our position that we just think that

24    they'll let us know, you know, hey, there's no pattern and

25    practice, it's a discreet group of individuals that this

**UNREDACTED TRANSCRIPT**

1    happened to, and then the jury can look at those individual

2    claims and say yea or nay.

3            **THE COURT:** Has there been -- what is the best

4    case for me to look at as something that's been concluded by

5    the EEOC in the next -- in the last five years that might be

6    something like this?  And I may be asking maybe an unfair

7    question.  Just can you tell me?

8            **MS. PACK:** I'm not -- we haven't -- we've had

9    several pattern of practice cases, but they haven't been

10   tried.  They haven't gone to conclusion.

11           I know last year, we ended up resolving a case,

12   USF Holland.  We were doing that as a pattern of practice,

13   and Zachary can correct me if I'm wrong, but I think that we

14   did get a bifurcation order in that case, but it didn't -- we

15   never tried it.  We ended up resolving it.

16           The same thing with EEOC versus White and Turner.

17   That was out of the Middle District of Tennessee.  We were

18   going to -- we were trying that.  I don't think that was a

19   pattern and practice, though.  So let me X that.

20           I can do some research, Your Honor, and I can get

21   that to the Court.

22           **THE COURT:** Would that be useful for the defense

23   to see an example here?

24           **MR. BUSEY:** It would, Your Honor.  I'll answer to

25   the Holland case, that was pending in the Northern District

**UNREDACTED TRANSCRIPT**

46

1  of Mississippi, and the framing of bifurcation in the

2  Northern District's proposed CMO is punitive damages versus

3  liability.

4          THE COURT:  Of course, that's the typical framing

5  in Tennessee often, which is a liability and punitive damages

6  question, but -- so that's the Holland case?

7          MR. BUSEY:  It's USF Holland.

8          THE COURT:  Right.

9          What -- okay.

10         MR. BUSEY:  So I will just say I do disagree

11 insofar as the use of bifurcation in that case paralleling

12 what the EEOC is contemplating in this case with the

13 proverbial teamsters bifurcation, that isn't what we agreed

14 to in the Holland case.

15         THE COURT:  What did you agree to in the Holland

16 case?

17         MR. BUSEY:  I believe we did agree to the

18 standard punitive damages come after liability and exposure.

19         THE COURT:  Just the standard one.

20         MR. BUSEY:  The standard bifurcation, yes, Your

21 Honor.

22         THE COURT:  Does that sound right, EEOC counsel?

23         MS. PACK:  I'm not sure, Your Honor.  I'd like an

24 opportunity to look back at the cases and see.  I have no

25 reason to disagree.

**UNREDACTED TRANSCRIPT**

 1          **THE COURT:**  Sure.  Why don't we do this, why

 2    don't we, within seven days of today, have an opportunity for

 3    the EEOC -- I mean, either side can do it, but EEOC to submit

 4    a case that would be similar to and more advanced, if not

 5    conclude -- preferably concluded, that might be a -- one for

 6    us to look to for some guidance.

 7          Now, that doesn't mean we're going to do it that

 8    way, because a lot of times we look at something for guidance

 9    and say, well, that's a good guidance, but we're going to do

10    something a little different.

11          Is that okay, give you a chance to do that?

12          **MS. PACK:**  Yes, Your Honor.  We can get that

13    information to the Court and the parties.

14          **THE COURT:**  Okay.  Now, what you can do on that

15    one is you can submit that in a two-page or less letter.  It

16    can be one letter, one page, because it'd probably just be

17    really short.  You don't have to describe anything.  In fact,

18    probably one page, but I don't know how the page is going to

19    set up.  No more -- you know, very short, very short where it

20    says, this is the case or these are the two cases we think

21    might be helpful.  Don't argue them, because we're going to

22    look at them anyway.  It's a waste of time for everybody.

23    And send that copy then to both counsel and to the Court.

24          We will docket it.  It will go on the docket.

25    It's just -- it's -- because it's not a motion or anything

48

1    else, it lets it get on the docket very simply with no

2    further action required.  So we will do that seven days from

3    now.  My goodness, that's -- is that tax day?

4              **MR. BUSEY:**  It is, Your Honor.

5              **THE COURT:**  Do you want one more day?

6              **MR. BUSEY:**  No, no.

7              **MS. PACK:**  One more day.

8              **THE COURT:**  Okay.  We'll say the -- we'll say the

9    16th.  I mean, I understand people might...

10             **MS. PACK:**  Your Honor, you said to e-mail that?

11             **THE COURT:**  You can e-mail them.  You can --

12   it'll be in letter form.  It'll show a copy to both counsel.

13   It'll just be to the Court and it can just say, dear Judge

14   McCalla, you know, these -- this is the following -- this is

15   a case which the Court -- which responds to the Court's

16   inquiry, and just put the citation.  We can find everything

17   after we've got that.  We don't need it.  And if you've got

18   two cases, that's just saying you might have two.  One's

19   fine, and we will use that at least as something to look at.

20             If you see something you want us to use, too, you

21   can submit it on the 16th or you may not want to do that.

22   It's entirely up to you.

23             **MR. BUSEY:**  Yeah.  So for the record, Supreme is

24   opposed to the bifurcation.  We have briefing ready on this

25   issue.  It's actually been briefed.

**UNREDACTED TRANSCRIPT**

1          **THE COURT:**  You know something, I'll be thrilled

2    to get it at the right time, but it's not going to slow

3    anything down.  Train's moving.

4          **MR. BUSEY:**  I understand.

5          So I just mean in terms of a letter, I'm happy to

6    brief it.  I'm happy to respond with a letter.

7          **THE COURT:**  It can be very, very short, but we --

8    this is not an issue that we're unfamiliar with.  It's just

9    that we're unfamiliar with it in this exact context.

10         You know, we bifurcate things all the time,

11   not -- well, with regularity.  As anybody in Tennessee knows,

12   we have to -- certain kinds of things have to be bifurcated

13   in the traditional way, which is liability and punitive

14   damages.

15         **MR. BUSEY:**  Yeah, I won't answer for all

16   Defendants.  Supreme's position would just be we have seven

17   days after we get their letter to submit a two-page letter?

18         **THE COURT:**  That's fine.  We'll just put you down

19   there.  We'll put that in the schedule, and that will be the

20   23rd.  April 23rd, and --

21         **MR. GALLAGHER:**  And Your Honor --

22         **THE COURT:**  I'm not trying to leave you guys out.

23   You know, I know that y'all are -- you're not two -- you're

24   not a team moving in the same direction necessarily.  So you

25   have very different interests.

**UNREDACTED TRANSCRIPT**

1          **MR. GALLAGHER:**  Your Honor, with respect to

2    bifurcation, Aaron Thomas Company's position is it absolutely

3    is opposed, as well.

4          **THE COURT:**  Okay.

5          **MR. GALLAGHER:**  Your Honor had mentioned just a

6    few moments ago the issue of attorney's fees.  And from Aaron

7    Thomas Company's perspective, there's no legitimate reason to

8    bifurcate and essentially create a second trial.  There's

9    just no basis for doing so, if to --

10          **THE COURT:**  It is a management issue for the

11    Court.  I will look forward to getting what you have.  And

12    I'm not saying I'm going to do it or not do it.  I'm not

13    saying I'm going to decide it immediately.  I'm just going to

14    say that I will be aware of the issue, and we will look at

15    what has been done around the country.  And we do understand

16    the advantages sometimes of bifurcation.

17          One of the issues -- one of the problems here

18    is -- and I did -- I was really interested in the test

19    concept.  You heard what we're talking about there, which is,

20    well, we'll try -- and they use this extensively in a very

21    complicated insurance-related case in Chattanooga some --

22    probably two years -- no, probably ten years ago, and they

23    did -- and that's not an uncommon way to deal with it.  So

24    y'all want to give some thoughts about how we -- how do you

25    think we would manage that?

**UNREDACTED TRANSCRIPT**

1          **MR. GALLAGHER:**  I envision it being part of the

2     same trial just like you'd bifurcate punitive damages, right,

3     to -- the commission suggested that there would be a

4     determination as to pattern and practice, and then you would

5     look at the individuals second.  You do that with the same

6     jury.  Even doing that is better than empaneling two juries,

7     having two separate trials.

8          **THE COURT:**  I understand.  I understand.

9          And we -- I'm not sure anybody's answered yet the

10    exact question that I was asking, which was about test cases

11    that is not -- let's say we've got 112 aggrieved individuals

12    that are determined to authorize the EEOC to proceed on their

13    behalf.  We wouldn't try 112 in the same courtroom at the

14    same time.  It just wouldn't be practical, I don't think.

15    Would you agree with that?

16         **MR. GALLAGHER:**  I would agree.  It would not be

17    practical.  I do not think this is a proper context or

18    scenario for a test case type preliminary trial.

19         **THE COURT:**  It's a little different.  How would

20    we do it then?

21         **MR. GALLAGHER:**  I think it's tried on the merits

22    with respect to the overarching pattern or practice evidence

23    to the extent there is any.

24         **THE COURT:**  Sure.

25         **MR. GALLAGHER:**  And with respect to the

**UNREDACTED TRANSCRIPT**

1    individuals, there are specific individual defenses.  And

2    perhaps some of the evidence applies to both pieces and there

3    may be evidence that's independent, applicable to one or the

4    other.

5              THE COURT:  How many individuals would you try in

6    the first case, first trial?

7              MR. GALLAGHER:  Again, I don't envision two

8    separate trials.  I think it's all part of one.

9              THE COURT:  So you have 112 claimants, you try

10   112 claimants together?

11             MR. GALLAGHER:  Yes.

12             THE COURT:  How long does it take us to do that?

13             MR. GALLAGHER:  I think a lot of the evidence is

14   going to apply to all or many of them.  I don't know -- I

15   can't give you an estimate as to a hypothetical group, but I

16   think in this case it's going to be less than two weeks,

17   maybe a week.

18             THE COURT:  Okay.  What's the EEOC think?

19             MS. PACK:  Your Honor, respectfully, we disagree.

20   You know, with these kind of cases, if you call all of those

21   people in, let's say we end up with a hundred claimants, I

22   think that it will probably last a little bit longer -- not

23   even a little bit.  You know, if you take, let's say, five

24   witnesses per day --

25             THE COURT:  No.  That's something we usually --

UNREDACTED TRANSCRIPT

53

```
1   we usually average 10, 12 to 20, but that's a little harder
2   with individuals who have a claim.  So it would probably be
3   -- let's say we're going to -- let's at least say we'd get 10
4   on.
5              MS. PACK:  If we could get 10 a day --
6              THE COURT:  Still a long time.
7              MS. PACK:  Yeah.  That's optimistic.
8              THE COURT:  Right.  That's why I want everybody
9   to think about it.  We don't have to decide that today.  I
10  just want you to all start thinking about the mechanics of
11  how we would handle it.
12             Okay.  I don't want to leave out -- you know,
13  Supreme, do you want to tell me about how we're going to get
14  the case resolved?
15             And I'm going to move on to your schedule.  I
16  think I've got enough to do it.  You're going to see some
17  numbers in there and dates that are going to be adjusted.  If
18  it turns out that one really doesn't work and you've got to
19  move it by three days to make it work because you're going to
20  be in Nashville for your daughter's graduation, then -- do
21  you have kids?
22             MR. BUSEY:  I don't, but if it's --
23             THE COURT:  Then we don't have to worry about
24  you.
25             MR. BUSEY:  I may have bigger issues if that was
```

**UNREDACTED TRANSCRIPT**

```
1   why I was on -- I have nieces, but they're local.

2               THE COURT:  Okay.  Okay.

3               MR. BUSEY:  So I echo the -- Aaron Thomas's

4   sentiments.  I think kind of one of the peculiar pieces of

5   the EEOC bringing essentially a multiparty 706 action --

6               THE COURT:  It's going to be a little

7   complicated.

8               MR. BUSEY:  -- is that you end up trying

9   individual's claims tacked in with each other and it is a

10  two-week process of kind of individual employment cases being

11  tried as much as they can be organized or grouped within the

12  trial itself, like a failure to hire begins for a few days of

13  evidence versus a failure to place.  I think you get that

14  kind of grouping, but --

15              THE COURT:  There was some possibility that we

16  might actually break each of the counts down into separate

17  trials.  I'm not sure that works well.  I couldn't figure

18  that out, either, because you still have the pattern and

19  practice question.  But we've been thinking about different

20  things, just so you'll know.  We're thinking about it.  We

21  haven't resolved it.

22              MR. BUSEY:  Yeah, and I just -- again, Supreme's

23  point, much like speaking about individuals in terms of

24  discovery, it's preserving the individual focus of each claim

25  versus each liability versus each recovery.  But yeah, agree
```

**UNREDACTED TRANSCRIPT**

1    with the Court, logistically I think that's a bit of a hurdle

2    in this 706 multiparty context that you don't see maybe in

3    some holdover collective actions where you're trying

4    individual theories of wage and hour recovery, but you don't

5    see it as often in the employment context.

6        **THE COURT:**  Right.  I think that -- I think we've

7    covered what we can.  Let me check.  I think we've covered

8    everything.  Everybody says I've covered everything on my

9    list.

10        Okay.  Well, look, we're always excited about

11    trying to move cases along, and we understand that parties

12    don't always agree on a lot of things.  We encourage you to

13    talk to each other.  I'm not talking about settlement.  I

14    don't -- I kind of believe in settlement but not really.

15        The vindication of our process through jury

16    trials is just critical, and I know that this group has not

17    necessarily gone through the jury selection process except

18    maybe one lawyer here with me, which is the prejudice jury

19    selection, if you've looked at it and talked to somebody

20    about it.  We really find that it's very -- usually very

21    reaffirming.  You'll typically find that you are pretty

22    comfortable with it.  Of course, it doesn't mean that you'll

23    like the result, depends on what the evidence is.  So I think

24    we've got enough to take care of that.

25        Well, thanks for coming over, not that you had a

**UNREDACTED TRANSCRIPT**

```
 1  lot of choice, but we really wanted to see you.  We wanted to

 2  see you because I hadn't -- you know, I hadn't touched base

 3  with you.  I knew you had really nice local counsel, but I

 4  don't know about, you know, these people.

 5          Are you actually located across the bridge?

 6          MS. PACK:  I am.  I'm in Jackson, Mississippi.

 7          THE COURT:  Oh, my goodness.  Okay.  Well, we're

 8  glad you came up today.

 9          MS. PACK:  I am very glad to be here.  Thank you

10  so much, Your Honor.

11          THE COURT:  And you were also closer to the

12  eclipse than you would have been if you'd been in Jackson, I

13  think.

14          MS. PACK:  Is that true?

15          THE COURT:  It is true.

16          MS. PACK:  It is true.  I believe it, Your Honor.

17  It was a beautiful thing.

18          THE COURT:  So everybody got to see a little bit

19  of everything.

20          And Mr. Busey, you didn't let your colleague say

21  a thing, so I don't know.

22          Ms. Dowdy, did he do okay today, you know?

23          MS. DOWDY:  I think so, Your Honor.  It was a

24  pleasure to be here.

25          THE COURT:  He did all right?
```

**UNREDACTED TRANSCRIPT**

57

1              **MS. DOWDY:**  Doing well, thank you.

2              **THE COURT:**  Glad to see you.

3              And Mr. O'Brien, did you have anything you wanted

4    to add?

5              **MR. O'BRIEN:**  I'm sorry, Your Honor?

6              **THE COURT:**  Did you have anything you wanted to

7    add?

8              **MR. O'BRIEN:**  No, I think we've covered it all.

9    I appreciate the Court's time.

10             **THE COURT:**  Well, I think this is -- we're all

11   excited about moving the case.  We think it's really

12   important in every case like this.  Thank you all very much

13   and we're going to let you be excused.

14

15                     (Adjournment.)

16

17

18

19

20

21

22

23

24

25

**UNREDACTED TRANSCRIPT**

58

1                    **C E R T I F I C A T E**

2

3

4          I, LISA J. MAYO, do hereby certify that the

5    foregoing 58 pages are, to the best of my knowledge, skill

6    and abilities, a true and accurate transcript from my

7    stenotype notes of the MOTION HEARING on 8th day of

8    April, 2024, in the matter of:

9

10

11   EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

12   vs.

13   AARON THOMAS COMPANY, INC., and SUPREME STAFFING, LLC

14

15   Dated this APRIL 15, 2024

16

17

18

19                          _____S/Lisa J. Mayo_____

20                          LISA J. MAYO, RDR, CRR
                            Official Court Reporter
21                          United States District Court
                            Western District of Tennessee
22

23

24

25

                    **UNREDACTED TRANSCRIPT**