**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Civil Action No. 2:23-cv-02599-JPM-tmp** |
| **AARON THOMAS COMPANY, INC., and SUPREME STAFFING LLC** | ) ) ) | **JURY DEMAND** |
| **Defendants.** | ) ) ) | |

**SUPREME STAFFING'S BRIEF IN SUPPORT OF
OPPOSITION TO THE EEOC'S MOTION TO COMPEL**

**ZACHARY B. BUSEY**
Tennessee Bar No. 29763
zbusey@bakerdonelson.com

**WHITNEY M. DOWDY**
Tennessee Bar No. 24985
wdowdy@bakerdonelson.com

**EMMA J. REDDEN**
Tennessee Bar No. 33501
eredden@bakerdonelson.com

**MARY KATHERINE SMITH**
Tennessee Bar No. 35328
mkcampion@bakerdonelson.com

**DEAN J. SHAUGER**
Tennessee Bar No. 39746
dshauger@bakerdonelson.com

*Attorneys for Defendant Supreme Staffing*

4865-5042-5046

I.    **RELEVANT BACKGROUND**

Supreme Staffing does not contest the dates of events summarized by the EEOC. (*See generally* Brief, Doc. 126, PageID 1337-39.) But the EEOC's candor fades as it summarizes the substance of those events.

The EEOC issued discovery on March 14, 2024. Supreme Staffing served its responses on April 15, 2024. (Doc. 98-1, PageID 1073.) Supreme Staffing anticipated the need to discuss its responses and the scope of discovery:

> Once the EEOC has a chance to review—and once Supreme has had a chance to review the anticipated disclosures from the EEOC later this week—we can find a time to discuss. If we'd like to go ahead and get that scheduled, that works for us. Overall, we anticipate that we can subsequently agree on the scope with respect to the discovery requests, or at least agree to disagree in a way that allows partial responses without waiving broader objections. Supreme can then provide a timeline for supplementing, etc. We're working on our end in the meantime.

(*Id.*) Two days later, on April 17, 2024, the EEOC did not respond to Supreme Staffing's email requesting a time to discuss discovery but rather sent Supreme Staffing a short letter stating Supreme Staffing's responses were "wholly deficient" and demanded Supreme Staffing's supplemental responses in two days, or else the EEOC would "alert the Court." (Doc. 108-3, PageID 1250.)

On April 19, 2024, Supreme Staffing responded and pointed out the EEOC's letter did not address Supreme Staffing's previous email and request to confer regarding discovery. (Doc. 98-1, PageID 1073.) Supreme Staffing asked if the EEOC intended to proceed with its motion instead of discussing. (*Id.*) That same day, Supreme Staffing produced 625 pages of documents. (*Id.*) These documents included its staffing agreements/contracts with Aaron Thomas and employee documents regarding the individuals named in the Amended Complaint. (Doc. 108-4, PageID 1256-1257.)

Two weeks later, on May 3, 2024, the EEOC sent Supreme Staffing another short letter accusing Supreme Staffing of "refus[ing] to cooperate in discovery in good faith." (Doc. 108-5, PageID 1259.) "Nevertheless," the EEOC continued, "in the interest of good faith" the EEOC offered two dates the following week to confer. (*Id.*)

The Parties spoke on May 8, 2024. (Doc. 108-1, PageID 1071.) But the discussion was not about the EEOC's written discovery. It was about the issues Supreme Staffing needed to discuss in connection with its Motion for Protective Order. On May 14, 2024, Supreme Staffing summarized the discussions and asked the EEOC to confirm its position on several of the disputes. (Doc. 98-1, PageID1070-107.) On the written discovery, Supreme Staffing concluded, "once we get a confirmation, we'll get a timeline for supplementing responses to written discovery and, for example, identifying which of the documents are responsive to which request. In the meantime, those documents remain categorized on Supreme' second supplemental disclosures." (*Id.* at 1071.)

The EEOC responded, again by letter, on May 20, 2024. (Doc. 108-6, PageID 1260.) The EEOC took the position that Supreme Staffing's 600+ page document production was irrelevant since those documents were not produced in direct response to the EEOC's requests. (*Id.*) The EEOC again asserted Supreme Staffing must respond fully to its requests and requested the responses by the end of that week. (*Id.*)

Supreme Staffing responded, reminding the EEOC that it had offered from the start to set a schedule for supplementing, but that first required an understanding of the Parties' position on several items. (Doc. 98-1, PageID 1069.) Supreme Staffing continued to see if the Parties could agree on certain items, including responding without waiving stated objections and specific categories of documents not being logged. (*See, e.g.*, *id.*, PageID 169-70.) The EEOC responded

4865-5042-5046

by emailed letter on May 24, 2024, stating that there was no agreement on anything. (Doc. 98-1, PageID 1075-76.) In response, Supreme Staffing moved forward with its Motion for Protective Order. (Motion, Doc. 98.) It was briefed and argued at a hearing.

Prior to the hearing the EEOC filed this Motion. Before filing, the Parties never discussed this Motion nor the EEOC's arguments, etc. The EEOC did not even advise that it was moving forward with the Motion. The EEOC does not claim otherwise.

During the hearing—held on July 23—the EEOC indicated that Supreme Staffing could respond to written discovery subject to other objections, and that the EEOC did not expect Supreme Staffing to log privileged/protected communications created after the filing of the charge. The hearing was the first time the EEOC ever expressed either position, despite Supreme Staffing working for more than six weeks to obtain the EEOC's confirmation on both points.[1]

## II.    APPLICABLE STANDARD

Rule 26 permits parties to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense," subject to several limitations. Fed. R. Civ. P. 26(b)(1). Any discovery sought must also be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the Parties' relative access to relevant information, the Parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Likewise, a court is under a duty to limit discovery if "the discovery sought is

---

[1] Also, the EEOC tells the Court, for example, that Supreme Staffing never asked the EEOC to revise any written discovery and never identified the presumptively privileged categories that need not be logged. (*See* Doc. 125-1, PageID 1334-35.) Supreme Staffing not only did both, but it did so in writing. Supreme Staffing's communications are on the Docket—for example, Document 98-1, PageID 1070-71.

unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C).

When a party seeks discovery, it "is obliged to demonstrate relevance." *Johnson v. CoreCivic, Inc.*, 2019 WL 5089086, at *2 (W.D. Tenn. Oct. 10, 2019) (citation omitted). Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Bledsoe v. FCA US LLC*, 2021 WL 1720833, at *1 (E.D. Mich. Apr. 30, 2021). Once a party demonstrates relevance, "the burden shifts to the party opposing discovery to show, with specificity, why the requested discovery is not proportional to the needs of the case." *Johnson.*, No. 18-cv-1051-STA-tmp, 2019 WL 5089086, at *2. With respect to proportionality, courts consider the six factors outlined in Rule 26: (1) "the importance of the issues at stake in the action;" (2) "the amount in controversy;" (3) "the Parties' relative access to relevant information;" (4) "the Parties' resources;" (5) "the importance of the discovery in resolving the issues;" and (6) "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* (quoting Fed. R. Civ. P. 26(b)(1)); *see also E.E.O.C. v. Ford Motor Credit Co.*, 26 F.3d 44, 47 (6th Cir. 1994) (limiting subpoena document request because EEOC's request for employment records of all employees sought documents with "extremely tenuous" relevance while the burden on defendant was substantial).

"Instead of facilitating costly and delay-inducing efforts to look under every stone in an e-discovery world populated by many stones, the new rule crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality." *Helena Agri-Enterprises, LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 273-74 (6th Cir. 2021) (internal citation and quotation omitted). "It is now the power—and duty—of the district courts

actively to manage discovery and to limit discovery that exceeds its proportional and proper

bounds." *Id.* (citing *In re State Farm Lloyds*, 520 S.W.3d 595, 614 (Tex. 2017) (the

proportionality requirement in Rule 26 sought "to chang[e] the existing mindset that relevance is

enough, restoring proportionality as the collective responsibility of the Parties and the court.")).

Courts, in turn, have since cautioned that "[d]iscovery. . .[is] not limitless, and parties

must be prohibited from taking 'fishing expeditions' in hopes of developing meritorious claims."

*Adkisson v. Jacobs Eng'g Grp., Inc.,* 2020 WL 8254452, at *3 (E.D. Tenn. Dec. 10, 2020)

Courts, of course, "have broad discretion under the rules of civil procedure to manage the

discovery process." *Marie v. Am. Red Cross,* 771 F.3d 344, 366 (6th Cir. 2014). Rule

26(b)(2)(C), in fact, empowers the Court to limit even the frequency and extent of discovery for

various reasons. Ultimately, "[a] court must balance the right to discovery with the need to

prevent fishing expeditions." *In re Ohio Execution Protocol Litigation*, 845 F.3d 231, 236-37

(6th Cir. 2016) (internal quotations and citation omitted). "[T]he desire to allow broad

discovery," the Sixth Circuit has affirmed, "is not without limits and the trial court is given wide

discretion in balancing the needs and rights of both plaintiff and defendant." *Surles v. Greyhound

Lines, Inc.*, 474 F. 3d 288, 305 (6th Cir. 2007) (quoting *Scales v. J. C. Bradford*, 925 F. 2d 901,

906 (6th Cir. 1996)).

The balance and limits of discovery apply to the EEOC, too. "When the government or

one of its agencies comes into court (with very few exceptions), it is to be treated in exactly the

same way as any other litigant." *E.E.O.C. v. Los Alamos Constructors, Inc.*, 382 F. Supp. 1373,

1375 (D.N.M. 1974). The EEOC "cannot make up special procedural or substantive rules for

itself to suit its circumstances." *E.E.O.C. v. Summer Classics, Inc.*, 41 F. Supp. 3d 1287, 1289

(N.D. Ala. 2011), *aff'd*, 471 F. App'x 868 (11th Cir. 2012). This is especially true where the

EEOC seeks to restart (or expand) its administrative, pre-suit investigation, as it appears to want to do in this case. *See, e.g.*, *E.E.O.C. v. ABM Indus. Inc.*, 2008 WL 5385618, at *8 (E.D. Cal. Dec. 23, 2008) (rejecting the EEOC's "fishing expedition" to "search for other employees with colorable claims"); *E.E.O.C. v. Target Corp.*, 2007 WL 1461298, at *3 (E.D. Wis. May 16, 2007) ("The EEOC may not use discovery in the resulting lawsuit "as a fishing expedition" to uncover more violations." (internal quotation and citation omitted)).

III.    <u>ARGUMENTS & AUTHORITIES</u>

  A.    **This Motion is premature—failure to confer or discuss—and should be denied without prejudice.**

  "Merely going through the 'exercise of consulting' is not sufficient to satisfy the requirements of the rules." *Aldridge v. City of Memphis*, 2007 WL 9706237, at *2 (W.D. Tenn. May 25, 2007) (holding plaintiff failed to confer in good faith when his letter failed to identify with specificity the deficiencies in each request and provided only one business day to respond). The requirement is familiar in district courts across Tennessee. *See, e.g.*, *Brady v. LTD Parts, Inc.*, 2009 WL 2224172, at *1 (M.D. Tenn. July 22, 2009) (finding it unclear whether parties had conferred in good faith when the last correspondence left open "further considerations to whether there was any more room for compromise" and invited plaintiff's thoughts on remaining unresolved issues). "To satisfy the 'conferral' requirement, the moving party must meaningfully discuss *each* contested discovery dispute in a genuine effort to avoid judicial intervention." *Neale v. Coloplast Corp.*, , 2020 WL 8771652, at *1 (E.D. Tenn. Sept. 3, 2020) (quotation marks and citation omitted) (holding plaintiff failed to confer in good faith when parties had one five-minute call and plaintiff merely asked whether Defendant was going to answer all the requests); *see also Banerjee v. Univ. of Tennessee*, 2019 WL 1062378, at *1 (E.D. Tenn. Mar. 6, 2019)

(holding plaintiff failed to confer in good faith when she did not respond to plaintiff's most recent letter prior to filing motion to compel).

The EEOC has not shown the Court that it met the spirit of these requirements, much less actually complied with them. The EEOC cannot because it did not. The pre-filing exchanges between the Parties were regarding Supreme Staffing's Motion for Protective Order. They were not about this Motion. The Parties have never discussed this Motion. The EEOC did not even tell Supreme Staffing that it was going to file it. Had it done so, the Parties could have discussed, for example, Supreme Staffing's productions to date and whether they alleviate the need to move forward with some or all of this Motion. But the EEOC stayed silent and filed the Motion. This Motion is premature. It should be denied without prejudice.

**B.      This Motion is also premature—still waiting on information—and should be denied without prejudice.**

This Motion is also premature given what information remains outstanding from the EEOC. Supreme Staffing is working to obtain details regarding the individuals on behalf of whom the EEOC seeks relief, as well as their claims. The EEOC has this information but will not volunteer it. Supreme Staffing needs this information to frame and argue discovery disputes. Additionally, now that the EEOC has confirmed that partially responding does not waive stated objections, Supreme Staffing can and will respond where it does not have any objection. It has always told the EEOC that it will do so. The EEOC just waited until the recent hearing to confirm that it will not subsequently claim waiver: "We don't anticipate any issues later on with waiver because they have objected." (Hearing Recording, 1:39:10:00-1:40:00.[2]) Once again, this Motion is premature. It should be denied without prejudice.

---

[2] The citation to the hearing recording is the hour, minute, and second.

**C.    The missing identification and claim information is critical, especially with respect to shaping the scope of discovery.**

This third lawsuit is split from the first lawsuit. The EEOC no longer tries to conceal this. In opposing Defendant ATC's Motion for Protective Order, for example, the EEOC plainly acknowledged that Defendant ATC is one of the client companies at issue in the first lawsuit: "Supreme's client companies, including Aaron Thomas." (Response in Opposition, Doc. 70, PageID 645.) The EEOC goes on to oppose any restriction on its ability to use this third lawsuit to source discovery for the first lawsuit. (*Id.*) Because this lawsuit is split from the first lawsuit, it has brought with it the first lawsuit's disputes. Supreme Staffing admittedly borrows much of what immediately follows from the briefing in the first lawsuit.[3]

**1.    The EEOC sues under Section 706 to seek an individual's relief.**

Under Section 706, formally 42 U.S.C. § 2000e-5, an individual charge of discrimination is required. The EEOC may then bring a civil action against "any respondent . . . named in the charge," *see* § 2000e-5(f)(1), and it does so on behalf of the person "aggrieved." When the EEOC brings suit "under Section 706 of Title VII for the purpose of recovering individual relief, including compensatory and punitive damages, on behalf of aggrieved individuals," like the EEOC has in this case, "there must be individualized proof for every element of each claim." *E.E.O.C. v. Vill. at Hamilton Pointe LLC*, 2020 WL 13568924, at *2 (S.D. Ind. Sept. 29, 2020). That is what the EEOC does in a Section 706 action, it "stands in the shoes" of the individual and seeks the individual's relief.[4] The EEOC even "takes the position that it may pursue a claim on

---

[3] *See* Case No. 2:22-cv-2668-SHL-tmp, Start/Scope of Discovery Briefing, Docs. 32-35.

[4] *See, e.g.*, *E.E.O.C. v. CRST Van Expedited, Inc.*, 611 F. Supp. 2d 918, 929 (N.D. Iowa 2009) ("[T]he EEOC stands in the shoes of those aggrieved persons in the sense that it must prove all of the elements of their sexual harassament claims to obtain individual relief for them.").

4865-5042-5046

the employee's behalf even after the employee has disavowed any desire to seek relief."

*E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 291 (2002).[5] Finally, as the Supreme Court has

recognized, there is a "manifest" difference between a claim of individual discrimination and a

pattern-or-practice claim. *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 876 (1984).

### 2. This case involves claims of individual discrimination; there is no pattern-or-practice claim.

This is a Section 706 action, not a Section 707 action. This case involves claims of

individual discrimination, not a pattern-or-practice claim. Under Section 707, formally 42 U.S.C.

§ 2000e-6, whenever the EEOC "has reasonable cause to believe that any person or group of

persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights

secured by this subchapter, and that the pattern or practice is of such a nature and is intended to

deny the full exercise of the rights herein described," the EEOC may file suit and request

injunctive relief to ensure "the full enjoyment of rights herein described." 42 U.S.C. § 2000e-

6(a). "This type of action is designed to eradicate systemic, company-wide discrimination . . . ."

*E.E.O.C. v. Pitre, Inc.*, 908 F. Supp. 2d 1165, 1171 (D.N.M. 2012) (quotation and citation

omitted). "Thus," in Section 707 actions, "the focus is whether the unlawful employment action

constituted the standard operating procedure or regular practice of the company, and the EEOC

brings the case on behalf of the public interest rather than an individual aggrieved person." *Id*.

Also, Section 707 actions "do not require the filing of any individual charge." *E.E.O.C. v. JBS*

*USA, LLC*, 2011 WL 3471080, at *4 (D. Colo. Aug. 8, 2011). This is not a Section 707 action. It

was a Section 706 action when the EEOC filed the Complaint (Doc. 1, ¶ 1). It remained a

---

[5] There are situations where the EEOC does not "stand in the employee's shoes," like
compliance with Rule 23, as *Waffle House* recognized, *see* 534 at 297-98, but "proof" is not one
of those situations.

Section 706 action when the EEOC filed the Amended Complaint (Doc. 16, ¶ 1). This is a

Section 706 action, and this case involves claims of individual discrimination.

### 3. Although it often is, the *Teamsters* evidentiary framework should not be conflated with a Section 707 action.

There are three evidentiary frameworks for a plaintiff to prove a workplace

discrimination claim, including those filed under Title VII. The first is "direct evidence" of

discrimination. Direct evidence of discrimination is that evidence which, if believed, requires the

conclusion that unlawful discrimination was at least a motivating factor in the employer's

actions." *See Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (quoting *Wexler v.*

*White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003)). The second and third, by

comparison, are evidentiary frameworks that utilize circumstantial evidence.

"Circumstantial evidence is proof that does not on its face establish discriminatory

animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred."

*See Geiger*, 579 F.3d. at 620. The most common framework used with circumstantial evidence is

the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

(1973)—known, not surprisingly, as the *McDonnel Douglas* burden-shifting framework. While

*McDonnell Douglas* is the most common, it is not the only framework that can be used with

circumstantial evidence. The other is the *Teamsters* framework.

The *Teamsters* framework was judicially created and promulgated as an evidentiary

framework for pattern-or-practice claims filed by the government under Title VII. True to its

name, the *Teamsters* framework was first set forth in *Teamsters v. United States*, 431 U.S. 324

(1977). Like *McDonnell Douglas*, the *Teamsters* framework is a burden-shifting framework.

Under *Teamsters*, a plaintiff has a higher initial burden and must establish "that unlawful

discrimination has been a regular procedure or policy followed by an employer or a group of

employers." *Teamsters*, 431 U.S. at 360. The framework then shifts burdens between the parties. *See id*. at 632.

At present, the *Teamsters* framework has also been adopted and utilized by private plaintiffs. The most well-known example of this is *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Nearly fifty years since *Teamsters* and more than ten years since *Dukes*, cases are now littered with references to "pattern or practice claims" and convoluted discussions about whether and when "*Teamsters*" can be used to establish a "pattern or practice" claim. It is a linguistic minefield.

For a Section 706 action, *Teamsters*, on its face, does not even apply. It does not recommend it, and it does not speak to the factors to consider nor standards to apply with respect to bifurcation. Congress could have codified *Teamsters* as part of Section 706 when it amended Title VII in 1991. It declined. Instead, when addressing the 1991 amendments to Title VII, including those to Section 706, the Congressional record makes clear that Congress intended to supersede *Teamsters*: "In fact, there are an additional twenty cases, not usually named by the proponents of the legislation which are either overturned or modified by the bill. These are: . . . *Teamsters v. United States*, 431 U.S. 324 (1977) . . . ." *See* H.R. REP. 102-40, 81, 1991 U.S.C.C.A.N. 694, 767, n.5.

Despite Congress making clear its view of *Teamsters*, the question of using any *Teamsters*-style framework in a Section 706 action continued to persist. In other words, could the government—the EEOC—utilize the evidentiary framework if it did not file under Section 707, but under Section 706. Could the *Teamsters* evidentiary framework be used to prove an individual claim of discrimination in a Section 706 action? The Sixth Circuit decided this very question in 2012 in *Serrano*. The Sixth Circuit did not apply the *Teamsters* model in a Section

706 action. Rather, the Sixth Circuit simply affirmed that no earlier Sixth Circuit decision had

forbidden it. "[T]here appear to be no Sixth Circuit decisions to date," recognized the Sixth

Circuit, "holding that *Teamsters* may not be applied in the § 706 context." *Serrano v. Cintas*

*Corp.*, 699 F.3d 884, 895 (6th Cir. 2012). The Sixth Circuit thus considered "whether the EEOC

may employ the *Teamsters* framework only when it acts pursuant to § 707" and concluded "that

the EEOC's enforcement authority is not so limited." *Id*. at 894.[6] In fact, the ultimate holding

from *Serrano* is simply that the EEOC was not required to plead in the complaint the evidentiary

framework on which it would rely; the EEOC did not have to make reference to *Teamsters*. *See*

*generally id*. at 896-899 (discussing pleading requirements).

In sum, there is no pattern-or-practice claim in this case. Any reference to *Teamsters* or

"pattern or practice"—at best—is a reference to an evidentiary framework.[7]

    **4.**    **The *Serrano* decision underscores the importance of individual claim information.**

On remand, the *Serrano* district court addressed identification information and, for

example, chastised the EEOC for continuing to rely on a "class description" and not providing

the names of the individuals. "[T]o be clear," the district court was forced to explain, "the

EEOC's interrogatory response is insufficient because it does not identify the names of the

individual claimants on whose behalf it intends to seek monetary damages in this action."

*E.E.O.C. v. Cintas Corp.*, 2015 WL 13021471, at *2 (E.D. Mich. Aug. 20, 2015). "Even if the

---

[6] The *Serrano* decision is hotly debated and critiqued within other Circuits. Supreme Staffing disagree with it—and note its objection to it—but accepts it as a published decision from the Sixth Circuit.

[7] "Importantly, 'Teamsters provides an evidentiary framework pursuant to which the EEOC may seek to prove its allegations of intentional discrimination, **not an independent cause of action**." *Glass v. Tradesmen Int'l, LLC*, 505 F. Supp. 3d 747, 759 (N.D. Ohio 2020) (quoting Serrano, 699 F.3d at 893) (emphasis in original).

EEOC intends to establish discrimination on the basis of statistics and statistical shortfall . . .

even if trial is ultimately bifurcated into separate liability and damage phases," another district

court explained, "the EEOC must ultimately prove the identities of the specific women the

EEOC claims suffered damages . . . [the employer-defendant] is entitled to know such

information in discovery . . . ." *E.E.O.C. v. Presrite Corp.*, 2012 WL 4434055, at *14 (N.D. Ohio

Sept. 24, 2012). Section 706's focus remains on the individuals on behalf of whom the EEOC

seeks relief. *Teamsters*, *Serrano*—they do not change that. In fact, *Serrano* reinforces it.

> **5.    Finally, the EEOC's use of the word "class" has no legal or procedural significance.**

When a private litigant pleads or uses the word "class" it has significance and invokes

Rule 23, much like the word "collective" invokes the Fair Labor Standards Act. But when the

EEOC uses the word "class" it has no procedural or legal relevance. It just means "more than one

person." "'Class' cases," according to the EEOC, are simply "suits on behalf of multiple

aggrieved individuals who were victims of discriminatory employment practices as well as suits

on behalf of one or more individuals who were victims of discriminatory employment policies."[8]

The EEOC use of "class" does not mean there is "a class." It just means there is more than one

(allegedly) aggrieved individual. But the EEOC is not free to use a class description to identify

those one or more individuals. The EEOC's use of the word "class" has no legal or procedural

significance.

---

[8] *See* U.S. Equal Employment Opportunity Comm'n, A Study of the Litigation Program Fiscal
Years 1997–2001, at § B.2 ("Tables III – VII"), https://web.archive.org/web/20021023165009/
http://www.eeoc.gov/litigation/study/study.html, lass accessed August 12, 2024; *accord Serrano
v. Cintas Corp.*, 699 F.3d 884, 907 (6th Cir. 2012) (Gibbons, J., concurring) (citing same).

**6.      The identification and claim information is critical to framing any discovery dispute, and Supreme Staffing remains without it.**

Discovery should proceed first on the individuals known to the EEOC. The EEOC completed its investigation and identified specific individuals on behalf of whom it filed this lawsuit. This lawsuit seeks relief for those individuals. The EEOC knows the identity of those individuals and the nature of their claims. Supreme Staffing does not. Supreme Staffing is working to learn not only their identity, but for each the claimed or suffered harm and relief sought. While this might not be the extent of discovery in this matter, it should be the start. Supreme Staffing should be able to learn this information before needing to frame and argue broader discovery disputes, like those raised in this Motion. The Motion is again premature. It should be denied without prejudice.

**D.      Should the Court nevertheless decide the Motion on its merits, it should be denied.**

**1.      This Motion amounts to a fishing expedition, and it should be denied.**

"The role of discovery is to find support for properly pleaded claims, not to find the claims themselves." *Damsi v. Tarpstop*, LLC, 2023 WL 9186657, at *4 (N.D. Ohio Oct. 19, 2023) (internal quotation and citation omitted). "This is because the discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable *without discovery*, not to find out if it has any basis for a claim." *Id.* (internal quotation and citation omitted) (emphasis in original). Moreover, specific to the EEOC, "[w]here the scope of its pre-litigation efforts are limited—in terms of geography, number of claimants, or nature of claims—the EEOC 'may not use discovery in the resulting lawsuit 'as a fishing expedition' to uncover more violations.'" *E.E.O.C. v. CRST Van Expedited, Inc*., 679 F.3d 657, 675 (8th Cir. 2012); *see also, e.g.*, *E.E.O.C. v. ABM Indus. Inc.*, 2008 WL 5385618, at *8 (E.D. Cal. Dec. 23, 2008) (rejecting the

EEOC's "fishing expedition" to "search for other employees with colorable claims"); *E.E.O.C. v. Target Corp.*, 2007 WL 1461298, at *3 (E.D. Wis. May 16, 2007) ("The EEOC may not use discovery in the resulting lawsuit 'as a fishing expedition' to uncover more violations." (internal quotation and citation omitted)).

This is exactly what the EEOC wants from this Motion. It admits this: "[T]he Commission is allowed to use discovery to identify aggrieved parties during litigation." (Doc. 126, PageID 1343.) But the EEOC does not cite anything in support of this position. It does not because it cannot.

There also was no earlier order or instruction permitting the fishing expedition the EEOC now seeks. To the contrary, the Court has already acknowledged that the EEOC being required to identify individuals does not mean it is entitled to broad discovery:

> **THE COURT:** Right. You've got a group already.
> **MR. BUSEY:** I don't believe that we do, Your Honor.
> **THE COURT:** I disagree with you, so that takes care of that, because you have individuals who are named in the Amended Complaint.
> **MR. BUSEY:** But I still don't know what happened to them and when.
> **THE COURT:** Well, they're going to tell you that.
> **MR. BUSEY:** And Supreme's position is that should come before we begin open-ended discovery to identify others.
> **THE COURT:** Well, not open-ended discovery, but they're -- you're going to tell them the basis for each of these individuals' claim. I think. Is that right?
> **MS. PACK:** That's correct, Your Honor.

(Doc. 85, PageID 788.)

> **MR. BUSEY:** I understand. But even in that example, we are participating in substantive discovery and having that discussion --
> **THE COURT:** No, you're not. You're participating in 26(a)(1) disclosures, which is a substitute in part for subsequent discovery. I mean, it's a way to advance the case in an organized way at the early stages of the case.

(Doc. 8, PageID 806.) The EEOC now twists this and argues that it permits it to conduct broad discovery. (Brief, Doc. 126, PageID 1341.) As shown, this argument is without merit.

This argument is also contradicted by the position the EEOC took during the July 23 hearing, where it maintained that the above discussions with the Court were about disclosures, not substantive discovery. (Hearing Recording, 1:01:30-1:02:10) (**EEOC:** "Judge McCalla said several times during that hearing that he was specifically talking about initial disclosures.") The EEOC cannot have it both ways. This Motion, on the whole, amounts to a fishing expedition, and it should be denied.

### 2.    Supreme Staffing has not asserted any boilerplate objection.

The EEOC states throughout its Motion that Supreme Staffing has asserted or relied on boilerplate objections. This is not true. In responding to the EEOC's written discovery, Supreme Staffing first defined specific objections, and then referred to an objection in response to each interrogatory or request to which it applied. Both Supreme Staffing's Objections & Answers to Interrogatories and Responses to Requests for Production have detailed "Objections Explained" sections. (*See* Objs. to Int., Doc 108-1, PageID 1226; Objs. To Req. for Prof., Doc. 108-2, PageID 1239.) The EEOC just ignores this. It then uses the phrase "boilerplate objection" to imply Supreme Staffing has done something improper or impermissible. It does so because it cannot provide any basis for overruling Supreme Staffing's stated objections. The EEOC does not engage with the substance of Supreme Staffing's objections, and its summary conclusion that Supreme Staffing's objections are "boilerplate" is without merit. The EEOC's failure to address the substance of Supreme Staffing's stated objections should be fatal to its Motion. The Motion should be denied in full.

### 3.    The EEOC seeks information not tied to any claim or allegation and that is otherwise disproportional to the current needs of the case.

"Requests which are worded too broadly or are too all inclusive of a general topic function like a giant broom, sweeping everything in their path, useful or not. . . . The court does

not find that reasonable discovery contemplates that kind of wasteful effort. *Damsi v. Tarpstop, LLC*, 2023 WL 9186657, at *6 (N.D. Ohio Oct. 19, 2023). This sentiment aptly describes the EEOC's written discovery. The EEOC does not limit its written discovery to any particular claim or allegation. The written discovery is not overly broad and, on its fact, disproportional to any current need of the case, for example:

- Interrogatory Number 6 asks for *every* electronic device Supreme Staffing "use or have used to communicate or store anything concerning Supreme Staffing" for over six years.

- Interrogatory Number 10 asks if *any* document "relating to applicants' attempt to secure employment with Supreme Staffing" has been destroyed in the last five years.

- Interrogatory Number 12 asks about *all* training and documents regarding "personnel matters."

- Interrogatory Number 13 asks for "*any* experience, characteristics, qualifications, factors, skills, or lack thereof, that Supreme Staffing required, favored, or preferred in applicants or used to exclude, reject, or disfavor applicants." There is no time limitation nor is this interrogatory limited to any client or position.

- Interrogatory Number 8 asks for *every* client that expressed and interest in "certain characteristics."

- Interrogatory Number 14 seeks all sites and emails that anyone from Supreme Staffing used or has used to discuss anything "concerning Aaron Thomas, Francisco Alvarez, this lawsuit, and/or any of the Claimants."

- Request for Production Number 4 seeks any communications to or from anyone at Aaron Thomas regarding job announcements, staffing requests, or recruitment or placement requests but provides no relevant time period.

- Requests 5 and 6 seek "all" job applications and "applicant/client placement lists."

- Request 15 seeks any recordings of Francisco Alvarez with no time period or subject matter.

- Request for Production 20 requests all "call and text message logs" since January 1, 2018.

None of the above—nor any of the EEOC's written discovery as a whole—is tied to anything specific to this case. On its face, the written discovery is overly broad and disproportional to the

current needs of the case. That may change as the case progresses. But at present, the EEOC has

not met its burden. This Motion should be denied in full.

### 4.    The EEOC has not met its burden to force creation of any database or data compilation.

This Motion seeks to compel Supreme Staffing to create multiple "electronic database[s]"

containing extensive information regarding its employees, job assignments, and clients. (Doc.

126, PageID 1350-51, Requests 17-19). This is improper. It is well settled that a party

responding to discovery does not have to create a document that does not exist. *Solly v. Mausser*,

2017 WL 4280935, at *1 (S.D. Ohio Sept. 27, 2017) (citing cases). Supreme Staffing objected on

this ground and others. The EEOC ignores those objections and has not otherwise met its burden

to compel creation of any database or data compilation. This Motion should be denied.

### 5.    The EEOC has not met its burden to obtain financial documents.

The Court should deny the EEOC's blanket request for "financial documents" in

Requests 10-11. (Brief, Doc. 126, PageID 1352-1353.). Although there are admittedly authorities

on all sides of this issue, the majority of courts tend to require a plaintiff to provide some factual

basis for punitive damages before allowing general discovery on the claim. "[A] plaintiff may

discover a defendant's financial condition . . . once the plaintiff has established some factual

basis for a punitive damage claim." *Smith v. First Century Bank*, 2006 WL 8442307, at *3 (E.D.

Tenn. Jan. 30, 2006) (citation omitted). This is because, it is only once liability is established

"will a defendant's 'financial affairs' and 'financial condition' be relevant to assess punitive

damages." *Id.* (quoting *Cook v. Caywood*, 2004 WL 3142221, at *2 (W.D. Tenn. Dec. 15, 2004);

*see also Gresh v. Waste Servs. of Am., Inc*., 2004 WL 7333736, at *2 (E.D. Ky. Oct. 6, 2004),

aff'd, 189 F. App'x 359 (6th Cir. 2006) (finding defendants' financial information only

potentially relevant to damages, and therefore, request was at best premature); *Wells v. Epes*

*Transp. Sys., Inc*., 2006 WL 1050670, at *2 (E.D. Tenn. Apr. 20, 2006) (denying discovery of

defendant's financial information when plaintiff had not set forth a sufficient factual or legal

basis for punitive damages claim); *Auston v. Home Realty Co. of Memphis, Inc*., 2011 WL

13162043, at *2 (W.D. Tenn. Feb. 22, 2011) (holding discovery regarding defendant's financial

well-being for punitive damages unnecessary as the burden and expense outweighed benefit prior

to establish factual basis for punitive damages).

      Supreme Staffing argues that in this case, at this time, the majority position should

control. There should at least be some factual basis for punitive damages established—or, at a

minimum, proffered—before Supreme Staffing's financial condition becomes relevant. The

EEOC has neither established nor proffered any factual basis at all to make relevant Supreme

Staffing's financial condition. In this Motion, moreover, the only basis the EEOC provided for

needing financial information was the then-upcoming mediation. (Brief, Doc. 126, PageID

1353.) That mediation has come and gone. Whatever the EEOC's claimed need in connection

with it, the need evaporated when the mediation concluded. The EEOC has not met its burden.

This Motion should be denied.

      **6.**     **The EEOC has conceded it is not seeking presumptively privileged
and protected communications and documents, but its written
discovery as drafted continues to do so.**

      The EEOC's written discovery, as drafted, plainly seeks privileged and protected

communications—whether between Supreme Staffing and its counsel or work product created in

connection with the defense of these matters. Request No. 3, for example, seeks any document or

request to/from Supreme Staffing's owner regarding "the EEOC." There is no basis for

propounding written discovery that—as drafted—includes plainly privileged and protected

communications and documents, at least not in this case. The EEOC appeared to concede as

much during the July 23 hearing. (Hearing Recording, 1:26:15-1:27:17 (**COURT:** "If there are communications between Mr. Busey and the president of company that in his belief falls squarely within work product because it deals with the allegations and the defense of this case… during this lawsuit…is it your expectation he needs to log that? **EEOC:** No, your Honor… We don't expect them to log anything post litigation."). As drafted, the EEOC's written discovery plainly seeks privileged and protected communications and documents. Those communications and documents are irrelevant. The EEOC has not met its burden. This Motion should be denied.

## IV.    CONCLUSION

Whether because it is premature or because the EEOC has not met its burden, this Motion should be denied in full. Supreme Staffing requests any additional relief the Court deems warranted under the circumstances.

Respectfully submitted, this, the 12th day of August 2024.

*s/ Zachary B. Busey*
**ZACHARY B. BUSEY**
Tennessee Bar No. 29763
zbusey@bakerdonelson.com

**WHITNEY M. DOWDY**
Tennessee Bar No. 24985
wdowdy@bakerdonelson.com

**EMMA J. REDDEN**
Tennessee Bar No. 33501
eredden@bakerdonelson.com

**MARY KATHERINE SMITH**
Tennessee Bar No. 35328
mkcampion@bakerdonelson.com

**DEAN J. SHAUGER**
Tennessee Bar No. 39746
dshauger@bakerdonelson.com

BAKER, DONELSON, BEARMAN,

CALDWELL & BERKOWITZ, P.C.
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
(901) 526-2000 – telephone

*Attorneys for Defendant Supreme Staffing*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the

Court using the ECF system, which sent notification of such filing to all counsel of record.

This, the 12th day of August 2024.

*s/ Zachary B. Busey*
**ZACHARY B. BUSEY**

4865-5042-5046