IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT ) <br> OPPORTUNITY COMMISSION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> AARON THOMAS COMPANY, INC., ) <br> and SUPREME STAFFING, LLC ) <br> ) <br> Defendants. ) | Case No. 2:23-cv-02599-JPM-tmp |

**ORDER GRANTING MOTION TO DISMISS**

Before the Court is Defendant Supreme Staffing, LLC's ("Supreme's") Motion to Dismiss the First Amended Complaint ("FAC") and accompanying Memorandum, filed on December 11, 2023. (ECF Nos. 27-28.) For the reasons discussed below, the Motion is **GRANTED**.

I.     BACKGROUND

     A.     Factual Background[1]

The FAC asserts that Defendant Aaron Thomas Company, Inc. ("ATC" or "Aaron Thomas") is a manufacturer and contract packager. (ECF No. 16 ¶ 4.) Supreme is a staffing company that provides ATC with employees. (Id.) Francisco Alvarez ("Alvarez") is a former account supervisor for Supreme. (Id. ¶ 24.)

The FAC states that ATC and Supreme (collectively "Defendants") were "joint employers" for the aggrieved individuals in this action. (Id. ¶ 6.) Per their contractual arrangement, both

---

[1] For the purposes of this Motion to Dismiss, the Court takes the facts alleged in the First Amended Complaint as true. This section should not be construed as a finding on any listed fact.

Defendants had "the ability to assign, fire, direct, supervise [the] performance [of,] and discipline employees." (Id. ¶¶ 6(a), 88.) Aaron Thomas directly supervised all work of the Supreme "temporary workforce[,]" while Supreme recruited and hired these employees. (Id. ¶¶ 6(b), (d)-(e), 88(a).) Any reassignment of these employees required Supreme's prior authorization. (Id. ¶¶ 6(c), 88(b).) Aside from jointly-managed temporary workers, Aaron Thomas also directly employed workers who were not managed by Supreme. (See id. ¶101.)

The FAC alleges that ATC "preferred to place Hispanic applicants over African American applicants[.]" (Id. ¶ 26.) It argues that "hiring data" allegedly shows that, because of this preference, Supreme disproportionately "selected, referred, placed, and assigned Hispanic applicants" to ATC over Black applicants. (Id. ¶¶ 26, 29.) According to the FAC, between 2017 and 2020, ATC "terminated 63% of African Americans compared to only 35% of Hispanics and 2% of Whites." (Id. ¶¶ 89.) The FAC alleges disparate treatment of employees allegedly smelling of marijuana, where ATC allegedly fired Black workers on this ground but did not fire a Hispanic employee with the same issue. (Id. ¶ 95.) Other Black employees were allegedly terminated after one day of work or after having to leave for a medical emergency. (Id. ¶¶ 96-99.)

The FAC cites multiple examples of this discrimination, including:

- "Tandria Labranch, [an] African American [woman,]" was referred to ATC for employment and was told by ATC that there was "no more work," but saw ATC allow Hispanic workers inside after she was turned away. (Id. ¶¶ 33-35.)
- "Tyrus Braddox, [a] Black [man]" ("Braddox"), applied for employment as a forklift operator with Supreme and was told by Supreme that there were no openings, but then witnessed a Hispanic worker ask for and receive a job as a forklift operator. (Id. ¶¶ 36-38.)

2

- Two African American employees—Alan Humphreys and Jhamel Ivory—were originally assigned to be forklift operators but reassigned to lower-paying, non-forklift positions upon arrival, even though one later witnessed ATC give a Hispanic worker a forklift position. (Id. ¶¶ 62-70.)

- "Samantha Kelly, [an] African American [woman]" ("Kelly"), overheard an ATC lead worker say "she did not want African Americans on her line." (Id. ¶¶ 39-41.) Kelly also allegedly "witnessed African Americans assigned to lower skilled jobs" while at ATC. (Id. ¶ 42). Kelly's termination in 2022 is the FAC's most recent allegation of wrongful termination. (Id. ¶¶ 39, 100, 104.) The FAC asserts that Kelly had worked for ATC long enough to be "rolled over," or hired directly by ATC instead of as a joint employee of both ATC and Supreme. (Id. ¶ 101.) The FAC alleges that ATC chose not to roll her over, despite rolling over many Hispanic employees, and instead terminated her "without warning or reason." (Id. ¶¶ 102-04.)

**B.     Procedural Background**

This case is one of three involving Alvarez, the Equal Employment Opportunity Commission ("EEOC" or "Commission"), and one or both Defendants. Each is addressed in turn.

> *i.     Alvarez's Discharge, First Charge Filed, and Supreme I*

On March 22, 2019, Alvarez was discharged from his work as an On-Site Supervisor[2] at one of Supreme's clients, the Barrett Distributions Center ("Barrett"). (ECF No. 35-1 at PageID 216.)

---

[2] The Charge of Discrimination does not specify whether Supreme or Barrett was responsible for Alvarez's assignment and termination as an On-Site Supervisor.

3

On April 11, 2019, Alvarez filed Charge of Discrimination 490-2019-801 ("First Charge") against Supreme with the EEOC and the Tennessee Human Rights Commission ("THRC"). [3] (Id.) According to the First Charge, Alvarez was removed from his position in January 2019 because he complained about racial discrimination, alleging that open jobs were given to Hispanic over Black applicants. (Id.) Alvarez believed he was discriminated against because of his national origin (in his case, Hispanic) and retaliated against for his complaints. (Id.)

The EEOC issued a Letter of Determination on July 7, 2022, and a Notice of Failure of Conciliation[4] on August 22, 2022. (ECF No. 27-2 at PageID 109-10.)

On September 1, 2022, the EEOC filed the complaint in EEOC v. Supreme Staffing, LLC, Better Placements Personnel, LLC, and Inspire Hotel Staffing, LLC ("Supreme I"). (Complaint, Supreme I, No. 2:22-cv-02668-SHL-tmp (W.D. Tenn. Sep. 1, 2022), ECF No. 1.) On March 20, 2023, the EEOC filed an amended complaint, which became the operative complaint in Supreme I. (ECF No. 27-2.) The amended complaint in Supreme I cited the First Charge. (Id. at PageID 109.)

The amended complaint alleged that: (1) Supreme discriminated against Black applicants and employees in selection, referral, and placement, in violation of Section 703(a)(1) of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 2000e-2(a)(1); (2) Supreme segregated Black employees and placed them in less desirable and lower-paying positions, in

---

[3] All three Charges of Discriminations filed by Alvarez assert that he wanted the charges therein "filed with both the EEOC and the State or local Agency, if any." (ECF Nos. 35-1 – 35-3.) The Sixth Circuit Court of Appeals has acknowledged that the THRC is responsible for race-discrimination charges like those made here, insofar as timely filing a charge with the THRC entitles the complainant to the extended filing period in § 2000e-5(e)(1). See Jones v. Fed. Express Corp., 952 F.3d 815, 817-18 (6th Cir. 2020).
[4] A Notice of Failure of Conciliation advises the recipient that the EEOC could not obtain an acceptable conciliation agreement.

violation of Title VII, 42 U.S.C. § 2000e-2(a), and Title I of the Civil Rights Act of 1991 ("Title I"); and (3) Supreme failed to "preserve records relevant to the determination of whether unlawful employment practices have been or are being committed" in violation of Title VII, 42 U.S.C. § 2000e-8(c), and 29 C.F.R. § 1602.14. (Id. at PageID 110, 116-17).

The amended complaint also alleged that "[h]iring data" shows that the "Employer Defendants" in that case "selected, referred, placed, and assigned Hispanic applicants and employees to clients at a disproportionately higher rate than Black applicants and employees." (Id. at PageID 106, 112-13.) As one of several examples, the amended complaint cites the discrimination against Braddox. See supra Section I.A.

   ii.  Second Charge and Barrett

On April 17, 2019, Alvarez filed Charge of Discrimination 490-2019-1594 ("Second Charge"). (ECF No. 35-2 at PageID 218.) The Second Charge was based on the same facts—namely, that Alvarez was removed from his supervisor position in January 2019, and was discharged on March 22, 2019, because he complained of race discrimination. (Id.) In the Second Charge, Alvarez stated that he was discriminated against because of his national origin and retaliated against for his complaints. (Id.)

For the Second Charge, the EEOC issued a Letter of Determination on August 30, 2022, and a Notice of Failure of Conciliation on September 27, 2022. (ECF No. 27-3 at PageID 125; ECF No. 35-2 at PageID 218.)

On August 15, 2023, the EEOC filed the complaint in EEOC v. Barrett Distribution Centers, LLC and Supreme Staffing, LLC, ("Barrett") alleging retaliatory transfer and discharge. (ECF No. 27-3 at PageID 126, 129 (Complaint, Barrett, No. 2:23-cv-02507-SHL-tmp (W.D.

Tenn. Aug. 15, 2023), ECF No. 1).)  The Barrett complaint cited the Second Charge.  (Id. at PageID 125.)

The Barrett complaint alleged that Supreme replaced Alvarez as an On-Site Supervisor for Barrett in retaliation for reporting discriminatory treatment to his general manager in February 2019.  (Id. at PageID 128.)  It also alleged that on March 22, 2019, upon learning that Supreme still allowed Alvarez to work on Barrett's account, Barrett told Supreme it did not want Alvarez to continue doing so.  (Id. at PageID 129.)  Supreme then terminated Alvarez.  (Id.)  In the count for retaliatory discharge in the Barrett complaint, the Commission alleged that while at Supreme, "Alvarez worked an account with Aaron Thomas, LLC."  (Id.)  Further, the Barrett complaint states that "[w]hile working the account, Alvarez discovered Aaron Thomas preferred Hispanic employees over African American employees."  (Id.)

   iii. *The Current Action, Charge Three, and ATC*

On December 19, 2019, Alvarez filed Charge of Discrimination 490-2020-578 ("Third Charge").  (ECF No. 35-3.)  While the Third Charge names ATC, it is based on the same operative facts as the first two—namely, that Alvarez was removed from his supervisor position in January 2019, and was discharged on March 22, 2019, because he complained of race discrimination.  (Id. at PageID 220.)  The Third Charge also included details that the January 2019 internal complaint with Supreme was specifically about "Aaron Thomas, a client, preferr[ing] and insist[ing] that Supreme Staffing place Hispanic applicants over African American applicants" and that "Supreme Staffing complied with Aaron Thomas['] request."  (Id.)

For this Third Charge, the EEOC issued a Letter of Determination on April 19, 2023, and a Notice of Failure of Conciliation on May 17, 2023.  (ECF No. 16 at PageID 42–43.)

6

The EEOC filed its Complaint in this action on September 21, 2023, and its FAC on October 26, 2023. (ECF Nos. 1, 16.) The FAC cites both the First Charge and the Third Charge. (ECF No. 16 at PageID 42-43.) The FAC alleges that Defendants discriminated against Black applicants and employees in selection, referral, and placement, in violation of Section 703(a)(1) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a)(1); segregated Black employees and placed them in less desirable and lower-paying positions, in violation of Title VII, 42 U.S.C. § 2000e-2(a), and Title I of the Civil Rights Act of 1991 ("Title I"); and terminated Black employees because of race, in violation of Title VII and Title I (ECF No. 16 at PageID 43, 46-47, 50.) Each cause of action alleged a "pattern or practice" of discrimination against Black employees (Id. ¶¶ 21, 46, 51, 82, 87) and identified alleged examples of such discrimination. See supra Section I.A.

On December 11, 2023, Supreme filed this Motion to Dismiss based on Title VII's statute of limitations and the claim-splitting doctrine. (ECF No. 27 at PageID 101.) The EEOC filed a Response in Opposition on January 8, 2024. (ECF No. 35.) Supreme filed its Reply on January 22, 2024. (ECF No. 39.)

    iv.    *Summary Timeline*

A summary timeline of the major events in Supreme I, Barrett, and this case is below:

| Date | Event |
|---|---|
| January 2019 | Alvarez allegedly complains of racial discrimination |
| March 22, 2019 | Alvarez's discharge |
| April 11, 2019 | Alvarez files First Charge (Charge No. 490-2019-801) |
| April 17, 2019 | Alvarez files Second Charge (Charge No. 490-2019-1594) |
| December 19, 2019 | Alvarez files Third Charge (Charge No. 490-2020-578) |
| July 7, 2022 | EEOC issues Letter of Determination for First Charge |

| | |
|---|---|
| August 22, 2022 | EEOC issues Notice of Failure of Conciliation for First Charge |
| August 30, 2022 | EEOC issues Letter of Determination for Second Charge |
| September 27, 2022 | EEOC issues Notice of Failure of Conciliation for Second Charge |
| September 29, 2022 | Supreme I filed, based in First Charge; claims of:<br>1. Discrimination Against Black Applicants and Employees in Selection, Referral, and Placement<br>2. Discrimination Against Black Employees by Assigning Them into Less Desirable and Lower-Paying Positions<br>3. Record Keeping Violation |
| August 15, 2023 | Barrett filed, based in Second Charge; claims of:<br>1. Retaliatory Transfer<br>2. Retaliatory Discharge |
| April 19, 2023 | EEOC issues Letter of Determination for Charge Three |
| May 17, 2023 | EEOC issues Notice of Failure of Conciliation for Charge Three |
| September 21, 2023 | Complaint filed in this case |
| October 26, 2023 | FAC filed in this case, based in First Charge and Third Charge; claims of:<br>1. Discrimination Against African American Applicants and Employees in Selection, Referral, and Placement<br>2. Discrimination Against African American Employees by Segregating Them and Placing them in Less Desirable and Lower-Paying Positions<br>3. Discrimination Against African American Employees by Terminating them because of their Race |
| December 11, 2023 | Supreme files motion to dismiss |
| January 8, 2024 | EEOC's response to motion to dismiss |
| January 22, 2024 | Supreme's reply in support of motion to dismiss |

## II.     LEGAL STANDARD

### A.     Motions to Dismiss

8

A complaint is dismissed when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. Pro. 12(b)(6). A motion to dismiss "only tests whether the plaintiff has pleaded a cognizable claim." Brown v. City of Memphis, 440 F.Supp.2d 868, 872 (W.D. Tenn. 2006).

When reviewing a motion to dismiss, courts accept the complaint's factual allegations as true. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). Courts construe the complaint's factual allegations "in the light most favorable to the plaintiff." Brown, 440 F.Supp.2d at 872 (quoting Windsor v. The Tennessean, 719 F.2d 155, 158 (6th Cir. 1983)). The pled facts must be sufficient to render a claim "plausible on its face[,]" such that the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556, 570).

Courts, however, "need not accept as true legal conclusions or unwarranted factual inferences." DirecTV, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007) (quoting Gregory v. Shelby Cnty., 220 F.3d 433, 446 (6th Cir. 2000)). "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice [to survive a motion to dismiss]." Bishop v. Lucent Techs., Inc., 520 F.3d 516, 519 (6th Cir. 2008).

### B.   Scope of a Title VII Action

Title VII "should not be construed narrowly", and "federal courts should not allow procedural technicalities to preclude Title VII complaints." Tipler v. E. I. Du Pont de Nemours & Co., 443 F.2d 125, 131 (6th Cir. 1971); see also Hinds v. Grand Traverse Cnty., Civ. No. 1:08–cv–393, 2010 WL 910705 at *6–7 (W.D. Mich. 2010) (applying this principle to hold that the plaintiff can bring a Title VII action for retaliation based on an EEOC complaint against a former employer). Accordingly, the Supreme Court has held that "EEOC enforcement actions are not limited to the claims presented by the charging parties. Any violations that the EEOC ascertains

9

in the course of a reasonable investigation of the charging party's complaint are actionable." Gen. Tel. Co. v. EEOC, 446 U.S. 318, 331 (1980) (citing EEOC v. General Electric Co., 532 F.2d 359, 366 (4th Cir. 1976); EEOC v. McLean Trucking Co., 525 F.2d 1007, 1010 (6th Cir. 1975); see also Tipler, 443 F.2d at 131 (holding "that the exact wording of the charge of discrimination need not 'presage with literary exactitude the judicial pleadings which may follow.'")

This Court has held that this policy underlies an exception to the "general rule…[that] failure to name a party in an EEOC complaint precludes later civil action against that individual in court." Newsome v. Holiday Inn Express, 803 F. Supp. 2d 836, 842 (W.D. Tenn. 2011) (quoting Lynn v. JER Corp., 573 F. Supp. 17, 19 (M.D. Tenn. 1983) (citing EEOC v. MacMillan Bloedel Containers, Inc., 503 F.2d 1086, 1092 (6th Cir. 1974))). The exception applies "when the unnamed party in the EEOC charge has a 'clear identity of interest' with the party actually sued." Newsome, 803 F. Supp. 2d at 842 (quoting Szoke v. United Parcel Svs. of Am., Inc., 398 F. App'x 145, 153–54 (6th Cir. 2010)). This "exception acknowledges the reality that laymen, unassisted by trained lawyers, initiate the process of filing a charge with the EEOC, and accordingly prevents frustration of the remedial goals of Title VII by not requiring procedural exactness in stating the charge." Newsome, 803 F. Supp. 2d at 842 (quoting Romain v. Kurek, 836 F.2d 241, 245 (6th Cir. 1987)).

### III.    ANALYSIS

Supreme argues that all causes of action in the Amended Complaint are barred by both claim-splitting (ECF No. 28 at PageID 144-50) and Title VII's statute of limitations (Id. at PageID 150-55). Supreme also argues that the third cause of action, alleging discrimination against Black employees through racially-motivated termination, should be dismissed as against Supreme because none of the factual allegations therein are against Supreme. (ECF No. 28 at PageID 144 (citing ECF No. 16 at PageID 50-53).)

A. **Preliminary Issues**

Courts may consider "exhibits attached [to the complaint], public records, items appearing in the record of the case[,] and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein," without converting a motion under 12(b)(6) into one for summary judgment. Rondigo, LLC v. Twp. of Richmond, 641 F.3d 673, 681 (6th Cir. 2011) (quoting Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008) (change in original)); see also FED. R. CIV. P. 12(d). Courts may also consider "concessions" a plaintiff makes in its response to the motion. Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). Courts may, for example, consider a document if the complaint cites it, the moving party attaches an incomplete version, and plaintiffs submit a complete copy in response. Wilson v. Columbia Gas of Pa., 676 F.Supp.3d 424, 434 (W.D. Penn. 2023).

Here, Supreme submits a redacted copy of the First Charge. (ECF No. 27-1 at PageID 104.) The charge number on the First Charge matches one of the two Charges of Discriminations cited in the FAC to assert that "[a]ll conditions precedent to the institution of this lawsuit have been fulfilled." (Id.; ECF No. 16 at PageID ¶¶ 9, 19.) The EEOC submits in response an unredacted copy of the First Charge, along with the Second and Third Charges. (ECF Nos. 35-1–35-3.) The Court will therefore consider all three Charges. See Wilson, 676 F.Supp.3d at 434.

Supreme submits copies of the complaints in Supreme I and Barrett, filed on April 6 and August 15, 2023, in support of this Motion. (ECF Nos. 27-2, 27-3.) Because the complaints are public filings, the Court will consider them. Rondigo, 641 F.3d at 681; see also Jankovic v. Int'l Crisis Grp., 494 F.3d 1080, 1088 (D.C. Cir. 2007) (upholding a decision granting a motion to

11

dismiss based on "public record information from…filings in New York seeking discovery in [a]…Belgian action").

### B. Claim Splitting

#### i. Governing Law

"[A] plaintiff must join all claims arising from the same set of facts in a single proceeding and cannot split them across multiple fora." Ellis v. Gallatin Steel Co., 390 F.3d 461, 479 (6th Cir. 2004) (citing Restatement of Judgments (Second) § 24 (1982)). This doctrine does not preclude "claims that were not ripe at the time of the first suit." Waad v. Farmers Ins. Exch., 762 Fed. App'x 256, 260 (6th Cir. 2019) (quoting Rawe v. Liberty Mut. Fire Ins. Co., 462 F.3d 521, 530 (6th Cir. 2006)).

The Sixth Circuit treats the doctrines of claim-splitting and res judicata as "[e]ssentially . . . the same[.]" Waad, 762 Fed. Appx. at 260. Res judicata precludes a claim when "the following elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." Bittinger v. Tecumseh Prod. Co., 123 F.3d 877, 880 (6th Cir. 1997) (emphasis removed). The same four-step analysis applies to claim-splitting, but with a final decision presumed. See Waad, 762 Fed. Appx. at 260 (citing Katz v. Gerardi, 655 F.3d 1212, 1218 (10th Cir. 2011).)

#### ii. Analysis

The parties do not dispute that the EEOC and Supreme are parties in the current action, Supreme I, and Barrett. (See ECF No. 28 at PageID 146.) At issue is whether (1) the issues currently before the Court were or could have been litigated in either Supreme I or Barrett, and (2)

12

the claims in this action share an identity with claims in the prior actions.  See Bittinger, 123 F.3d at 880.

      1.  Issues Were or Could Have Been Litigated

Supreme argues that the first two claims in this FAC, "failure to hire" and "failure to place" based on race, are also being litigated in Supreme I.  (ECF No. 28 at 146 (citing ECF No. 27-2).)  Supreme also argues that although the operative complaint in Supreme I did not allege termination based on race, the third claim in this FAC should be barred because the EEOC presumably could have pled that cause of action as another form of Title VII race discrimination.  (ECF No. 28 at 146–47.)  Supreme notes that the EEOC alleged wrongful termination based on race discrimination in both Barrett and the third claim in this action.  (ECF No. 28 at 147 (citing ECF No. 27-3).)

At issue is whether the FAC pleads sufficient facts to base claims against Supreme on the Third Charge, and whether the claims were ripe for enforcement at the time of either Supreme I or Barrett. Each is addressed in turn.

      a.  The Third Charge and its Application to Supreme

Supreme posits two arguments as to why the FAC does not plead sufficient facts to base claims against Supreme on the Third Charge.  (See ECF No. 39 at PageID 316.)  Both arguments fail.

Supreme's first argument is that the FAC does not allege that Supreme received a Letter of Determination or partook in conciliation efforts following the Third Charge.  (ECF No. 39 at PageID 316; ECF No. 16 ¶¶ 14-18.)  However, the EEOC did not need to specifically plead these facts.  The FAC's general allegation that "[a]ll conditions precedent to the institution of this lawsuit have been fulfilled" meets the pleading standard under Fed. R. Civ. P. 9(c).  (ECF No. 16 ¶ 19); Std. Forge, 496 F.2d at 1393, 1395.  Supreme had the burden of denying this "with particularity,"

13

which they have failed to do.  Fed. R. Civ. P. 9(c).  Supreme failed to raise this argument until the reply brief for this motion, which is untimely.  See ADT Servs., AG v. Brady, No. 10-2197, 2013 WL 1450924, at *1 (W.D. Tenn. Apr. 9, 2013) ("An argument introduced by a reply is waived."); see also Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 553 (6th Cir. 2008).

Supreme's second argument is that the Third Charge only named ATC and not Supreme. (ECF No. 39 at PageID 316.)  This argument is unavailing because "EEOC enforcement actions are not limited to the claims presented by the charging parties[,]" but rather to "[a]ny violations that the EEOC ascertains in the course of a reasonable investigation" into the charges.  Gen. Tel., 446 U.S. at 331.  This reflects the general policy of "prevent[ing] frustration of the remedial goals of Title VII by not requiring procedural exactness in stating the charge[,]" particularly because "laymen, unassisted by trained lawyers," file Charges of Discrimination.  Newsome, 803 F. Supp. 2d at 842 (quoting Romain, 836 F.2d at 245).  In light of this policy, when a Charge of Discrimination alleges that one company participated in another's discriminatory practice, as here, that company is named for purposes of establishing jurisdiction under Title VII.

Here, the Third Charge does not list Supreme as an entity, but it does name Supreme in the Particulars section as complicit with ATC's request to "place Hispanic applicants over African American applicants." (ECF No. 35-3 at PageID 220.)  Thus, Supreme is "named" in the Third Charge.

Supreme has failed to show that relying on the Third Charge raises procedural defects in the pleadings.

      b.   <u>Ripeness Based on Charges of Discrimination</u>

Claim-splitting cannot preclude "claims that were not ripe at the time of the first suit." Waad, 762 Fed. Appx. at 260 (quoting Rawe, 462 F.3d at 530).  At issue is whether the claims

14

underlying the FAC in this action became ripe before or after the EEOC initiated Supreme I or Barrett.

The facts discovered in the "reasonable investigation" that follows a Charge of Discrimination and precedes a Letter of Determination define the scope of the civil action. See 42 U.S.C. §§ 2000e-5(b), (f)(1); Gen. Tel., 446 U.S. at 331. If the EEOC discovered the facts underlying the FAC in this action during the same investigation as in Supreme I or Barrett, the current case's claims became ripe at the same time because EEOC could have raised them in the respective complaint. See Rawe, 462 F.3d at 529–30.

Here, the Commission's claims became ripe during the Barrett investigation. In the count for retaliatory discharge in the Barrett complaint, the Commission alleged that at Supreme, "Alvarez worked an account with Aaron Thomas, LLC."[5] (ECF No. 27-3 at PageID 129.) Further, the Barrett complaint states that "[w]hile working the account, Alvarez discovered Aaron Thomas preferred Hispanic employees over African American employees." (Id.) While the complaint in Barrett cited the Second Charge (ECF No. 27-3 at PageID 125) and the FAC here cites both the First Charge and the Third Charge (ECF No. 16 at PageID 42–43), all three Charges of Discrimination come from the same operative facts. (See supra Section I.) Thus, a "reasonable investigation" into the Second Charge (on which Barrett is based) would lead to uncovering facts on ATC and Supreme's involvement, which the EEOC could have raised in an earlier complaint.[6]

---

[5] Given this statement and the statement that "Alvarez discovered Aaron Thomas preferred Hispanic employees over African American employees," the Court assumes that this is a typo and the EEOC meant to type Aaron Thomas, Co. (ECF No. 27-3 at PageID 129.) Further, a search of the Tennessee Secretary of State's Business Records yielded no other companies with the name "Aaron Thomas." See Business Information Search, TENN. SEC. OF STATE, https://tnbear.tn.gov/Ecommerce/FilingSearch.aspx [https://perma.cc/75JN-XYWP]. The Court resolves this typo by assuming the EEOC meant to type Aaron Thomas, Co. See Duren v. Byrd, No. 1:18-CV-00084, 2021 WL 3848105, at *2 (M.D. Tenn. Aug. 26, 2021) (construing a typo to be consistent with the overall claims in the complaint).

[6] The EEOC's argument that a final adjudication in Barrett would not preclude the current claims (ECF No. 35 at PageID 205-06) is unavailing for the same reason.

15

Gen. Tel., 446 U.S. at 331; see also White v. Mid-S. Trans. Managerment, Inc., No. 06-2281-STA-TMP, 2010 WL 2985709, at *4 (W.D. Tenn. July 26, 2010).

       2. Shared Identity

Claims share an identity where the facts and events creating the right of action and the evidence necessary to sustain each claim are the same. Heike v. Cent. Mich. Univ. Bd. of Trs., 573 F. App'x 476, 483 (6th Cir. 2014). The "now-accepted test in preclusion law for determining whether two suits involve the same claim or cause of action *depends on factual overlap*." Id. (quoting United States v. Tohono O'odham Nation, 563 U.S. 307, 316 (2011)) (emphasis in original). "Two suits are for or [are] in respect to the same claim…if they are based on substantially the same operative facts, regardless of the relief sought in each suit." Heike, 573 F. App'x at 483 (quoting Tohono, 563 U.S. at 317).

Here, all three Charges of Discrimination are based in the same operative facts: that Alvarez was removed from his supervisor position in January 2019, and was discharged on March 22, 2019, because he complained of race discrimination. (Compare ECF No. 35-1 at PageID 216 with ECF No. 35-2 at PageID 218 with ECF No. 35-3 at PageID 220.) In this way, this case is like Turner v. DeJoy, where this element is met because there is a "substantive overlap of [the] claims and factual allegations." No. 221CV02223SHLATC, 2022 WL 1817752, at *5 (W.D. Tenn. Mar. 15, 2022), report and recommendation adopted, No. 221CV02223SHLATC, 2022 WL 1813910 (W.D. Tenn. June 2, 2022); see also Palka v. City of Chicago, 662 F.3d 428, 437 (7th Cir. 2011 (finding "an identity of the causes of action because the Title VII claims are premised on [Plaintiff's] termination by its respective municipal employers—the same transaction[] at issue in [the previous] cases").

16

While the Commission argues that Turner is inapposite because "this action is not a mere regurgitation" of the previous case (ECF No. 35 at PageID 207), this argument is unavailing because claims share an identity when their basis is on "substantially the same operative facts." Heike, 573 F. App'x at 483.  It does not matter that the action is not the same as the previous one.

Thus, because each claim stems from separate Charges of Discrimination which are based on the same operative facts (see supra Section I.B.iii), the claims share an identity. Because these claims could have been litigated in the two previous cases and share a common identity, the claim splitting doctrine precludes the Complaint in this case.  See Waad, 762 Fed. App'x at 263.

### 3. Claim III in the FAC

The parties dispute Claim III in the current action, which alleges that "Defendants Aaron Thomas and Supreme Staffing Discriminated Against African American Employees by Terminating them because of their Race."  (ECF No. 16.)  Supreme argues that Claim III "contains no factual allegations," or in the alternative, should be dismissed for claim splitting.  (ECF No. 28 at PageID 144.)  Assuming that Claim III states enough facts on which a claim could be found, it is included in this dismissal for claim splitting. Claim III meets the standard for "could have been litigated" because a claim for termination based on race against ATC and Supreme could have been uncovered via "reasonable investigation" in Barrett.  See supra Section III.B.ii.1.b.  Further, Claim III shares an identity with the previous claims because it arises from the same allegations brought in the First, Second, and Third Charge.  See supra Section III.B.ii.2.

### iii. Conclusion

All claims against Supreme are dismissed.[7]

## IV. CONCLUSION

---

[7] Because none of EEOC's claims survive, the Court does not address the Statute of Limitations argument.

For the reasons discussed above, the Court **GRANTS** Supreme's Motion to Dismiss.

**IT IS SO ORDERED**, this 12th day of September, 2024.

/s/ Jon P. McCalla
JON P. MCCALLA
UNITED STATES DISTRICT JUDGE